UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : Criminal Case No. 06-357 (CKK) |
| KHAN MOHAMMED | : |

FILED
NOV 0 5 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

The United States respectfully moves this court to order the pretrial detention of defendant Khan Mohammed pursuant to 18 U.S.C. § 3142(e). As set forth herein, there is a statutory presumption in favor of detention because the defendant is charged with the distribution of one kilogram or more of heroin, knowing and intending that it would be imported into the United States, an offense which carries a maximum penalty of more than ten years imprisonment. Moreover, the defendant has no lawful ties to the United States, an ability to flee if released from custody, and would pose a danger to the community unless he is detained.

I) Factual Background

Khan Mohammed is a local tribal chief from Nangarhar Province, Afghanistan, located east of Kabul. This investigation began in August 2006, when agents with the Drug Enforcement Administration (DEA) were contacted by a confidential source (CS) who advised them that another source had been given Mohammed's name by a Taliban commander as a contact involving a plan to obtain rockets for an attack on a coalition military facility in Jalalabad, Afghanistan. This source knew Mohammed to be an opium trafficker capable of selling 200-300 kilograms of opium at a time.

Early recorded conversations between a CS and Mohammed concerned the existence of

1

weapons for use against military and other non-Muslim targets in Afghanistan and Taliban plans for such attacks.[1] However, in late August and into early September 2006, Mohammed was asked by the CS if he knew where opium could be purchased, and replied that he'd have no problem getting opium through a friend. While Mohammed claimed that he no longer sold opium because the profit wasn't sufficient, he told CS2 that he would meet with an opium source of supply, and could obtain thousands of kilograms of opium for the CS if he needed it.

Subsequently, a CS and Mohammed traveled to a local drug bazaar, where Mohammed negotiated with several opium vendors before brokering an agreement for the purchase of opium between the CS and one particular seller. Several days later, Mohammed accompanied the CS to the seller's house, where Mohammed was videotaped inspecting 11 kilograms of opium before it was purchased by the CS.

After this initial purchase, the CS told Mohammed that his customer was pleased with the opium, and that he wanted to purchase more of it. He further explained that the customer sent drugs to the United States, the United Kingdom and France. Mohammed replied that he was pleased that drugs were going to the United States, as this was part of the Jihad, and stated that he could provide more drugs to CS's customer.

In late September 2006, the CS met with Mohammed. In a recorded conversation, the CS told Mohammed that his friend now wanted 2 kilograms of heroin to send to the United States, and

---

[1] The subject of weapons and attack plans would frequently come up, even as the investigation focused on drug trafficking. Based on the instructions from the Taliban commander, the two sources purchased 4 Chinese-made rockets. One of the sources had recorded conversations with Mohammed concerning how to hide these rockets until the time for their use. The sources ultimately turned over these rockets to DEA agents. As an explanation for their disappearance, a source reported to Mohammed that they had been stolen, which led to additional recorded conversations concerning the need for their replacement.

asked Mohammed if he could help with that. Mohammed replied that he could find as much as they wanted, and that sending the heroin was good because it helps the jihad to send it.

In a recorded conversation in October 2006, the CS told Mohammed that his friend was ready to ship 2 kilos of heroin to the United States. Mohammed told the CS to get the money ready and quoted him a price, claiming that he was buying heroin for a lot of people and that he would get the CS good quality heroin.

Additional discussions and down payments paid to Mohammed culminated in a videotaped meeting at his residence in October 2006. At the meeting, Mohammed removed 2 kilograms of heroin from a bag and handed them to the CS, noting that if the quality was poor they could be returned for an exchange. The CS reminded Mohammed that quality was important because the drugs were destined for America. Mohammed stated that he could find any amount of drugs the CS might need in the future.

II) <u>Legal Analysis</u>

The federal bail statute authorizes a defendant's pretrial detention when no "condition or combination of conditions will reasonably assure the appearance of the person ... and the safety of any other person and the community." 18 U.S.C. § 3142(e). The statute further provides that there is a rebuttable presumption that the defendant should be detained if there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed under the Controlled Substances Act, 18 U.S.C. § 3142(e).

The existence of the indictment in this case establishes probable cause as a matter of law. <u>See e.g.</u>, <u>United States v. Quartermaine</u>, 913 F.2d 910, 916 (11th Cir. 1990). Moreover, the Government is permitted to proceed by proffer to establish other facts relevant to the bail decision. <u>United States</u>

v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996).

Several other factors in the detention statute also support the Government's request for pretrial detention. As an initial matter, the nature and circumstances of the offense are compelling. See 18 U.S.C. § 3142(g)(1). The defendant has been a willing source of supply of heroin he knew to be destined for the United States. While not particularly unusual, what makes the matter more sinister is his motive- not a traditional one of profit, though the evidence indicates that benefits of the transaction would include obtaining funds for himself, as well as the use of drugs or drug funds to purchase additional weapons - but his desire to inflict harm on people in the United States.

Second, the weight of the evidence against the defendant is substantial. 18 U.S.C. § 3142(g)(2). The indictment in this case is based upon an investigation in which the majority of contacts between a CS and the defendant were either video or audio recorded. These conversations clearly set out the defendant's involvement in the scheme to sell heroin, and knowledge that the heroin was destined for the United States.

Third, the fact that the defendant is an Afghan citizen with no known ties to the United States argues in favor of his detention pending trial. 18 U.S.C. § 3142(g)(3)(A). Several courts have ordered pretrial detention of foreign defendants without any contacts to the United States. E.g., United States v. Vargas, 804 F.2d 157 (1st Cir. 1986) (Chilean defendant in drug importation case who had no family ties to U.S. was properly detained when no conditions or combination of conditions would reasonably assure his appearance at trial); United States v. Geerts, 629 F.Supp. 830 (E.D. Pa. 1985) (defendant was citizen of Netherlands who faced possibility of approximately fifty years imprisonment on customs related charges and had no significant ties to United States; he thus

presented a serious risk of flight which justified pretrial detention). [2]

Finally, the defendant constitutes a clear and present danger to the community. The defendant is an associate of the Taliban who has shown a strong desired to kill or otherwise harm "infidels," whether it be through armed attack or the poisoning effect of heroin. His release in the United States would create a substantial risk of harm to our citizens.

III) Conclusion

For all of the foregoing reasons, the Government respectfully requests that the motion to detain the defendant without bond pending trial be granted.

Respectfully submitted

KENNETH A. BLANCO, Chief
Narcotic and Dangerous Drug Section

_____
Matthew Stiglitz
Trial Attorney
Narcotics and Dangerous Drug Section
U.S. Department of Justice
1400 New York Avenue, N.W.
8th Floor
Washington, D.C. 20530
(202) 305-3646
matthew.stiglitz@usdoj.gov

---

[2] A further issue is the defendant's immigration status. He has been permitted in the country by virtue of parole to face criminal prosecution. As such, a detainer has been lodged against him by the Department of Homeland Security, which would be triggered upon his release on the criminal case, resulting in his removal from the United States.

Certificate of Service

I hereby certify that a copy of the foregoing motion was hand-delivered to counsel of record in open court on this 5th day of November, 2007.

_____
Matthew Stiglitz