UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Case No. 06-357 (CKK) |
| | : | |
| KHAN MOHAMMED | : | |

**GOVERNMENT'S MOTION FOR ANONYMOUS JURY**

The United States of America, by and through its attorney, the United States Department of Justice, respectfully moves this Court to impanel an anonymous jury for the trial in the above-captioned matter. As grounds for this motion, the government relies on the following points and authorities, and any other points and authorities that are permitted at a hearing on this motion.

**FACTUAL SUMMARY**

The defendant is charged in a two-count indictment, charging him with distributing one kilogram or more of heroin knowing or intending that it be imported into the United States (Count One), and with committing a drug trafficking offense and intentionally providing pecuniary support to terrorism or terrorist activities (Count Two). The indictment in this case resulted from an investigation conducted primarily by the Drug Enforcement Administration ("DEA") in conjunction with Afghan authorities. In the Fall of 2006, agents of the DEA stationed in the Washington, D.C. area, Kabul and Jalalabad, Afghanistan began an investigation into the illegal narcotics trafficking and terrorist activities of the defendant, Khan Mohammed, a tribal leader in the Nangahar Province of Afghanistan. The investigation revealed that one of the defendant's motivations to commit these crimes was to bring "Jihad" upon the American people by his association with Taliban leaders in Pakistan and Afghanistan.

The defendant came to the attention of the DEA when a confidential source and an Afghan police official approached them with information. The confidential source, a local Afghan citizen who was willing to work undercover, reported that a Taliban commander in Peshawar, Pakistan recruited him to obtain rockets in Afghanistan and make contact with the defendant, who would help the source arrange attacks on coalition forces there. With the assistance of this undercover source, investigators obtained audio and video-recorded conversations with the defendant which demonstrated his willingness to participate in attacks using the missiles and other weapons. Frequently, these same conversations included negotiations to obtain opium and heroin.

The DEA's investigation of the defendant and his associates revealed the defendant's connection to arms suppliers, opium traffickers, heroin manufacturers, heroin distributors, and money launderers throughout Afghanistan and in Pakistan. The investigation of the defendant culminated in the DEA making undercover purchases of approximately 11 kilograms of opium and two kilograms of heroin which the defendant believed was intended for importation to the United States. The DEA also seized four Chinese-made rockets which the defendant intended to use for attacks upon U.S. soldiers at Jalalabad Airfield in Afghanistan.

The Court has scheduled a trial that will commence on February 25, 2008.

## ARGUMENT

I.   AN ANONYMOUS JURY SHOULD BE IMPANELED

The government requests that the Court impanel an "anonymous jury." Specifically, the government requests that the Court limit voir dire so as to prevent the disclosure of the name, address, place of employment, and any other identifying information of potential jurors in the

venire. In addition to withholding the identifying information of the jurors, the government requests that the Court (1) order the jury to remain together during lunch recesses and to remain with a Deputy U.S. Marshall escort; and (2) instruct the jury that these administrative procedures are routine and have no impact on the defendant's guilt or innocence. See United States v. Edelin, 128 F.Supp.2d 23, 45 (D.D.C.2001) (Lamberth, J.).

The use of an anonymous jury is authorized by 28 U.S.C. §1863(b)(7). This statute provides that the district court may keep confidential the names of jurors "in any case where the interests of justice so requires." Every circuit that has addressed the issue has concluded that, in appropriate circumstances, the impanelment of an anonymous jury does not violate any right of the defendant (only the fourth and tenth circuits have not yet squarely addressed the issue). See Wilson v. United States, 160 F.3d 732, 747 (D.C. Cir. 1998), cert. denied, 528 U.S. 828 (1999); United States v. Marrero-Ortiz, 160 F.3d 768, 776 (1st Cir. 1998); United States v. Aulicino, 44 F.3d 1102, 1116-17 (2nd Cir. 1995); United States v. Thornton, 1 F.3d 149, 154 (3rd Cir. 1993), cert. denied, 510 U.S. 982 (1993); United States v. Brown, 303 F.3d 582, 602-03 (5th Cir. 2002), cert. denied, 537 U.S. 1173 (2003); United States v. Dakota, 197 F.3d 821, 827 (6th Cir. 2000); United States v. DiDomenico, 78 F.3d 294, 301 (7th Cir. 1996), cert. denied, 519 U.S. 1006 (1996); United States v. Darden, 70 F.3d 1507, 1532 (8th Cir.1995), cert. denied, 517 U.S. 1149 (1996); United States v. Fernandez, 388 F.3d 1199, 1244 (9th Cir. 2004), cert. denied, United States v. Sanchez, 544 U.S. 1009 (2005); United States v. Ochoa-Vasquez, 428 F.3d 1015, 1033-34 (11th Cir.).

In United States v. Edmond, 52 F.3d 1080, 1089-94 (D.C. Cir.1995), cert. denied, 516 U.S. 998 (1995), the Court of Appeals for the D.C. Circuit first examined the issue and held that

it is constitutionally permissible for a district court to impanel an anonymous jury "where necessary to protect the integrity of the jury's decision making process." In deciding whether it is appropriate to take such action, the court must "balance the defendant's interest in conducting meaningful voir dire and in maintaining the presumption of innocence, against the jury member's interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict." Id. at 1090. The Edmond Court adopted the following test: the district court may impanel an anonymous jury if it (1) concludes that there is a strong reason to believe the jury needs protection, and (2) takes reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected. Id. at 1090 (citing United States v. Paccione, 949 F.2d 1183, 1192 (2d Cir. 1991), cert. denied, 505 U.S. 1220). "Within these parameters, the decision whether or not to impanel an anonymous jury is left to the district court's discretion." Id. at 1090-91.

Courts in this jurisdiction have used anonymous juries for high profile conspiracy and narcotics trials. For example, anonymous juries were used in the trials of the "Rayful Edmond Organization." See Edmond, 52 F.3d at 1094 (affirming use of anonymous jury in trial of Group I defendants); United States v. Childress, 58 F.3d 693, 704 (D.C. Cir. 1995), cert. denied, 516 U.S. 1098 (1996) (affirming use of anonymous jury in trial of Group II defendants). Indeed, this Court has impaneled anonymous juries in the trials of the "Tommy Edelin Organization" and the trial of the "Kevin Gray Organization." Edelin, 128 F.Supp.2d at 43-45; United States v. Gray, 254 F.Supp.2d 1, 2 (D.D.C. 2002) (Lamberth, J.).

### A.     There Is Strong Reason To Believe That The Jury Needs Protection

In determining whether to impanel an anonymous jury, the district court must first

consider whether there is strong reason to believe that the jury needs protection. Edmond, 52 F.3d at 1090-91. This requirement is satisfied where "some combination" of the following five factors are present: (1) the defendant's involvement in organized crime; (2) the defendant's participation in a group with the capacity to harm jurors; (3) the defendant's past attempts to interfere with the judicial process; (4) the potential that, if convicted, the defendant will suffer a lengthy incarceration and substantial monetary penalties; and (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation or harassment. Id. at 1091 (citing United States v. Ross, 33 F.3d 1507, 1520 (11th 1994)). "None of these factors is dispositive, rather, the decision to impanel an anonymous jury should be made on the totality of the circumstances." Brown, 303 F.3d at 602. The court may rely solely on the allegations in the indictment, or in conjunction with in camera representations by the government, in analyzing these factors. See Edelin, 128 F.Supp.2d at 44 (basing decision to impanel anonymous jury on indictment alone); Edmond, 52 F.3d at 1091 (basing decision to impanel anonymous jury on indictment and in camera government submission). No evidentiary hearing is required. Wilson, 160 F.3d at 747 ("an evidentiary hearing was unnecessary inasmuch as the government was relying principally on the charges in the indictment and the prosecutor's affidavit.").

      Here, the allegations in the indictment – which were proved by at least a probable cause level before the grand jury – by themselves establish most of the Edmond factors. First, the defendant was involved in organized crime. The defendant was a long-time heroin and opium manufacturer and distributor. He had widespread knowledge of the entire process of heroin and opium production and distribution. In order for the defendant to commit the offense in the

indictment, he needed to know all aspects and participants in the production and distribution of heroin. He associated and conspired with farmers who could grew the opium, the opium wholesale sellers who sold pads of opium to the labs and manufacturers of heroin, the sellers and transporters of heroin, and the money launderers or hawalladars. The facts supporting the indictment demonstrate that the defendant played key roles in this particular "Jihad" which included acquiring and distributing large quantities of opium and heroin destined for the United States, laundering money, and planning attacks against U.S. military personnel stationed in Afghanistan at the behest of the Taliban. See Edmond, 52 F.3d at 1091 ("The indictment charged that appellant Edmond and the other defendants below were the primary participants in a large scale criminal organization that distributed massive amounts of cocaine in Washington, D.C. and used violent acts to achieve its goals."); Edelin, 128 F.Supp.2d at 44 (indictment alleges that the defendants were involved in a large-scale drug conspiracy, though it falls short of the intricacies of the mafia).

     Additionally, the defendant's associates have the capacity to harm jurors. The undercover audio and videotapes demonstrate the defendant's disdain for the American people, both soldiers in Afghanistan and citizens in the United States. The defendant was designated by the Taliban, a terrorist organization, to coordinate the use of rockets obtained during the investigation to kill members of the U.S. armed forces in Afghanistan. In recorded conversations, the defendant also stated his pleasure that the heroin was destined for the United States because he also considered heroin a weapon to destroy the lives of Americans in the United States. Although the Taliban concentrate their activities in South Asia, their ties to global terrorists such as Al-Qaeda, Islamic Jihad, and other terrorist organizations present security concerns for the jury and the Court in this

case. This prosecution involves an Afghan with ties to the Taliban for narcotics importation. The superseding indictment now alleges that the defendant also supported terrorism. Accordingly, the defendant and his associates have the capacity to harm jurors.

Furthermore, the defendant, if convicted, will face the possibility of a lengthy sentence and substantial monetary penalties. In this case, the defendant faces maximum penalties of life imprisonment. Considering the severity of the possible punishment, the defendant certainly has a strong incentive to avoid conviction by whatever means possible.

Lastly, this case is likely to generate significant publicity. The allegations in this indictment will likely generate publicity because of the facts and the charges in this case. Surely, the public will have an interest in this case given the severity of the offenses and the defendant's involvement. See United States v. Gray, 254 F.Supp.2d 1 (D.D.C. 2002), United States v. Edelin, 128 F.Supp.2d 23, 43 (D.D.C. 2001); see also United States v. Sumler, 136 F.3d 188 (D.C. Cir. 1998) (the "Fern Street" case); United States v. Hoyle, 122 F.3d 48 (D.C. Cir. 1997) (the "Newton Street" case); United States v. White, 116 F.3d 903 (D.C. Cir. 1997) (the "First Street" case); United States v. Childress, 58 F.3d (D.C. Cir. 1995) (Edmond Group II defendants); United States v. Edmond, 52 F.3d 1080 (D.C. Cir. 1995). The government submits that the incidents alleged in the indictment are sufficient to satisfy the Edmond factors. If the Court is unconvinced that an anonymous jury is warranted based solely on the indictment, the government requests leave to supplement this motion with an in camera submission regarding threats made by associates of the defendant to a suspected government witnesses. See Edmond, 52 F.3d at 1091 ("Before ordering juror anonymity in this case, the trial judge received from the Government an in camera submission describing threats to witnesses."); Edelin, 128 F.Supp.2d at

44 ("On the basis of the strength of the indictment, the Court does not find it necessary to request an in camera submission by the government of evidence related to the potential danger to jurors.").

The government does not routinely request for the impanelment of an anonymous jury. In fact, the government in this District has made such a request in less than a dozen trials. Each of the prior cases also involved violent organizations, usually in the business of trafficking dangerous narcotic drugs. In United States v. Scarfo, 850 F.2d 1015, 1023 (3d Cir. 1988), the Court upheld a District Court's decision in utilizing an anonymous jury in a non-capital case. The Third Circuit wrote:

> Juror's fears of retaliation from criminal defendants are not hypothetical; such apprehension has been documented. [citations omitted]. . . As judges, we are aware that, even in routine criminal cases, veniremen are often uncomfortable with disclosure of their names and addresses to a defendant. . . If, in circumstances like those in *Barnes* [604 F.2d 121 (2d Cir.1979)], jury anonymity promotes impartial decision making, that result is likely to hold equally true in less celebrated cases. . . Because the system contemplates that jurors will inconspicuously fade back into the community once their tenure is completed, anonymity would seem entirely consistent with, rather than anathema to, the jury concept. In short, we believe that the probable merits of the anonymous jury procedure are worthy, not of a presumption of irregularity, but of disinterested appraisal by the courts.

Jurors' fears and concerns for the disclosure of their identities in cases such as these are an all too common issue that Courts need to consider in cases such as these.

### B.    The Court May Take Reasonable Precautions to Minimize Any Prejudicial Effects on the Defendants and to Ensure That Their Fundamental Rights Are Protected.

An anonymous jury in this case is appropriate because the Court can take reasonable precautions to minimize any prejudicial effects on the defendants and to ensure that their

fundamental rights are protected, including a full and meaningful voir dire. To protect the defendants' fundamental rights, the district court may compensate for the withholding of juror names and other identifying information with a extensive and meaningful voir dire that can inquire "into a broad variety of personal information, including the quadrant of the city in which jurors reside[], their educational history, marital status, military service, employment status and work description, their spouse's and children's employment, and their experience with crime, drugs, and law enforcement." Edmond, 52 F.3d at 1092. Although the D.C. Circuit found that the voir dire questionnaire used by the district court in Edmond was more than adequate to compensate for the information that was withheld in impaneling the anonymous jury, there is no reason why the defendant cannot request special voir dire questions and appropriate follow-up questions in a more traditional voir dire process. See Edmond, 52 F.3d at 1092.

To minimize any prejudicial effect of impaneling an anonymous jury, the Court should also give the series of jury instructions that were approved in Edmond, 52 F.3d at 1093. Prior to the voir dire process, the district court explained that "it is common practice followed in many cases in the Federal court to keep the names and the identities of the jurors in confidence. This is in no way unusual. It is a procedure being followed in this case to protect your privacy even from the Court." Id. at 1093. The district court further instructed the jurors that the defendants enjoyed a presumption of innocence, and then repeated this instruction at the beginning and end of the trial. Id. Juries are assumed to follow their instructions, including the presumption of innocence. Edelin, 128 F.Supp.2d at 45. By employing similar procedures and instructions, the Court will adequately minimize any potential prejudice to defendants. See Edmond, at 1094; Childress, 58 F.3d at 703 (approving district court's extensive juror questionnaire and juror

instructions to minimize potential prejudice of impaneling anonymous jury).

## **CONCLUSION**

In sum, considering the circumstances of this case and the allegations in the indictment, the requested procedures, including the impanelment of an anonymous jury, are appropriate security precautions that will not violate any of the defendants' rights.

        Respectfully submitted

        KENNETH A. BLANCO, Chief
        Narcotic and Dangerous Drug Section


        _____/s/ Julius Rothstein_____
        JULIUS ROTHSTEIN, Deputy Chief
        Narcotic and Dangerous Drug Section
        D.C. Bar No. 4500036
        U.S. Department of Justice
        1400 New York Avenue, N.W.
        8th Floor
        Washington, D.C. 20530
        (202) 514-5540
        julius.rothstein@usdoj.gov


        _____/s/ Matthew Stiglitz_____
        Matthew Stiglitz
        Trial Attorney
        Narcotics and Dangerous Drug Section
        U.S. Department of Justice
        1400 New York Avenue, N.W.
        8th Floor
        Washington, D.C. 20530
        (202) 305-3646
        matthew.stiglitz@usdoj.gov

## **CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing motion was electronically filed this 30th day of January 2008 via ECF, which will forward a copy to Carlos Vanegas, Esq., counsel for the defendant.

                                     */s/ Julius Rothstein*
                                      JULIUS ROTHSTEIN

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Criminal Case No. 06-357 (CKK) |
| | : | |
| **KHAN MOHAMMED** | : | |

PROPOSED ORDER FOR ANONYMOUS JURY

Based on the government's Motion for Anonymous Jury, and any opposition and arguments presented to the Court, the Court finds that the government's motion shall be **GRANTED**.

The Court **ORDERS** that the jury office shall not disclose the names, and home or business addresses of any potential juror summonsed in this case; the Court

**FURTHER ORDERS** that no party shall seek such information; the Court

**FURTHER ORDERS** that order the jury to remain together during lunch recesses and to remain with a Deputy U.S. Marshall escort; the Court

**FURTHER ORDERS** that it will instruct the jury that these administrative procedures are routine and have no impact on the defendant's guilt or innocence.

_____
Colleen Kollar-Kotelly
United States District Judge
District of Columbia

Dated: _____