UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>KHAN MOHAMMED )<br>) | Criminal No.: 06-357(CKK) |

**DEFENDANT'S MOTION FOR LEAVE TO LATE FILE
HIS OPPOSITION FOR AN ANONYMOUS JURY**

Defendant, Khan Mohammed, through undersigned counsel, respectfully moves the Court to grant his Motion for Leave to Late File his Opposition to the Government's Motion for an Anonymous Jury.

As grounds for this Motion undersigned states:

1. Mr. Mohammed is before the Court charged in a two count indictment with Distribution of One Kilogram or More of Heroin intending and knowing that the Heroin will be unlawfully imported in the United States in violation of 21 U.S.C. § 959 960, Aiding and Abetting in violation of 18 U.S.C. § 2 and distribution of heroin and opium knowingly or intending to provide anything of pecuniary value to a person or organization engaged in terrorist activities in violation of 21 U.S.C. 960(a), 841(a), 841(b)(1)(A)(I) and 18 U.S.C. § 2.

2. Pursuant to the Court's Scheduling Order, undersigned counsel was to submit Mr. Mohammed's response to the Government's Motion for an Anonymous Jury by February 8, 2008.

3. Undersigned counsel was unable to meet the Court's deadline on account of work relating to three cases that had pending plea deadlines. Each case required consulting with

clients in order to review the plea agreements and to explain the application of the federal sentencing guidelines. Another case required travel to Petersburg, Virginia for a meeting with a client involved in a cooperation agreement. As a result, undersigned counsel was unable to submit Mr. Mohammed's opposition to the government's Motion for an Anonymous Jury within the Court's deadline.

    4.    Undersigned counsel apologizes to the Court and Government for any inconvenience caused by the late filing of Mr. Mohammed's Opposition Memorandum.

WHEREFORE, undersigned counsel respectfully moves the Court to grant his Motion for Leave to Late file Mr. Mohammed's Opposition Memorandum.

A.J. KRAMER  
FEDERAL PUBLIC DEFENDER

    /s/  
Carlos J. Vanegas  
Assistant Federal Public Defender  
625 Indiana Avenue, N.W.  
Suite 550  
Washington, D.C. 20004  
(202) 208-7500

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>KHAN MOHAMMED ) | Criminal No.: 06-357(CKK) |

### ORDER

That upon consideration of defendant's Khan Mohammed's Motion for Leave to Late File his Opposition to the Government Motion for an Anonymous Jury; it is hereby

**ORDERED** that the Motion For Leave to Late File the Opposition Memorandum is hereby **GRANTED**; and it is

**SO ORDERED**

_____                                                           _____
DATE                                                                       COLLEEN KOLLAR-KOTELLY.
                                                                                        UNITED STATES DISTRICT JUDGE

Carlos J. Vanegas
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C.  20004

Matthew Stiglitz
Julius Rothstein
Trial Attorney
United States Department of Justice
1400 New York Ave., The Bond Building
8th Floor
Washington, D.C. 20530

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>KHAN MOHAMMED ) | Criminal No.: 06-357(CKK) |

DEFENDANT'S OPPOSITION TO GOVERNMENT'S
MOTION FOR ANONYMOUS JURY

Defendant, Khan Mohammed, through undersigned counsel, respectfully moves the Court to deny the government's Motion for an Anonymous Jury. As grounds for his opposition, Mr. Mohammed states the following;

1.   Mr. Mohammed is before the Court charged in a two-count indictment with Distribution of One Kilogram or More of Heroin intending and knowing that the Heroin will be unlawfully imported in the United States in violation of 21 U.S.C. § 959, 960, Aiding and Abetting in violation of 18 U.S.C. § 2 and distribution of heroin and opium knowingly or intending to provide anything of pecuniary value to a person or organization engaged in terrorist activities in violation of 21 U.S.C. § 960(a), 841(a), 841(b)(1)(A)(I) and 18 U.S.C. § 2.

2.   Mr. Mohammed has been in United States custody since October 19, 2006 when he was arrested by a combined law enforcement unit of the United States and Afghanistan.  Mr. Mohammed was detained in Afghanistan until sometime in October 2007 when he was transferred to the United States.  Mr. Mohammed was presented in Magistrate Court on November 5, 2007.

3.   The government has moved for the selection of anonymous jury. Because the request is extraordinary and the government's basis is without merit the Court should deny the government's motion.

## ARGUMENT

I. **THE IMPANELMENT OF AN ANONYMOUS JURY IS NOT WARRANTED BASED ON THE COMPLETE ABSENCE OF THE REQUIRED FACTS**

A court may permit an anonymous jury in cases:

(1) with very dangerous persons who were participants in large scale organized crime, and who participated in mob-style killings and had previously attempted to interfere with the judicial process; (2) where defendants have had a history of attempted jury tampering and serious criminal records; or (3) where there have been allegations of dangerous and unscrupulous conduct by the defendant, coupled with extensive pre-trial publicity. United States v. Talley, 164 F.3d 989(6th Cir. 1999) (citing United States v. Paccione, 949 F.2d 1183, 1192 (2d Cir. 1992)).

The government finds support for its request in the case of United States v. Edelin 128 F.Supp.2d, 23, 45 (D.D.C. 2001) see Gov. Mot. at 3. Thereafter it moves into a summary and citations of cases affirming a trial courts empaneling anonymous juries. However, the government fails to provide the relevant and verifiable factors in support of the extraordinary request to empanel an anonymous jury. Remarkably the government while citing Edelin, completely ignores the fundamental facts which led Judge Lamberth to rule that an anonymous jury was warranted. The request is all the more perplexing in light of Judge Lamberth's introduction to his opinion which is summarized in toto;

> "The charges in this case stem from an alleged large drug conspiracy in the District of Columbia. The violence associated with this alleged conspiracy is remarkable. The

conspirators allegedly <u>committed fourteen murders and multiple counts of assault with intent to murder</u>." <u>Id</u> at 28. (emphasis added)

Judge Lamberth then quotes liberally from the multi-count indictment which charged every conceivable violent conduct that is prosecuted by the United States Attorney's Office for the District of Columbia. Tommy Edelin was the lead defendant among fourteen who were charged with a RICO indictment, which included 14 murders, 13 assaults and approximately 20 shootings. Edelin and his co-defendants were accused of running a narcotic distribution organization which had its center of operation in the Stanton Dwellings housing complex in Southeast D.C. Tommy Edelin was alleged to have run his large scale and violent drug operation from 1988 until November of 1998. Lost or ignored in the government's unpersuasive and unsupported request is that in <u>Edelin</u> the government was seeking the death penalty[1].

In denying the defendants request for discovery of sealed plea agreements and related information, Judge Lamberth again referred to the defendants' verified proclivity for violence;

> "The Court has come to the conclusion that the defendants here are dangerous and a threat to government witnesses on the basis of the indictment in this case and the information provided by the government to this Court." <u>Id</u> at 29

Similarly when faced with defense requests for early disclosure of the names of government witnesses, Judge Lamberth painted a broad but detailed picture of the violent nature of the defendants and the realistic possibility that they could obstruct justice.

The dangerousness of the defendants, their access to other individuals who are willing to

---

[1] The government' also cites <u>United States v. Gray</u>, 254 F. Supp. 2d 1 (D.D.C. 2002), in support of an anonymous jury. As in <u>Edelin</u>, the government sought the death penalty for Kevin Gray.

act on their behalf, and their willingness to approach potential witnesses in this case in order to alter or prevent damaging testimony all indicate that the defendants should not be provided with the information they seek in the discovery motions and the requests for witness and informant names. If the Court were to provide this information to the defendants here, it would needlessly jeopardize the safety of potential witnesses and government informants. Id at 31

It is undisputed that 28 U.S.C. § 1863(b)(7) authorizes the selection of anonymous jury. However, the government has not presented a single compelling factor that such an extraordinary request should be granted. Courts have empaneled anonymous juries based on verifiable evidence. See United States v. Thomas 757 F.2d 1359, 1364 (2d Cir. 1985) ("The defendants were alleged to be very dangerous individuals engaged in large-scale organized crime who had participated in several "mob-style" killings. Charges in the indictment accused defendants of attempts to interfere with the judicial process by murdering government witnesses.").

Here, the government has not presented the Court with any concrete, reliable, or verifiable evidence that goes beyond mere generalizations of what is alleged to have taken place on the other side of the planet, and more than eighteen months ago. Cf United States v. Melendez, 743 F.Supp 134, 136 (the Government allege[d] that since their arrests, certain of the defendants, and their relatives and friends, have made threats of violence to law enforcement personnel, various witnesses and even prosecutors."); United States v. Shakur, 623 F.Supp. 1, 3(S.D. N.Y. 1983) (anonymous jury request granted were the government proffered that the evidence would "include descriptions of the murders of four persons and [] recorded conversations in which the defendants discuss killing two government witnesses.").

Undeterred in its mission of creating a climate of fear, and blaming Mr. Mohammed for it, the government leaps and flails to generate phantom evidence to suggest that the presiding jury

4

will need to be protected from Mr. Mohammed. In support of the claim that "There is Strong Reason To Believe That The Jury Needs Protection", the government points to the "allegations in the indictment" Gov. Mt. at 5. It is nothing less then sheer fiction to aver that Mr. Mohammed "was a long-time heroin and opium manufacturer and distributer" and that he "had widespread knowledge of the entire process of heroin and opium production and distribution." Based on these unsupported allegations the government references and relies on United States v. Edmond 52 F.3d 1080 (D.C. Cir. 1995).

     Conveniently, the government fails to mention that Edmond was the leader of a notorious and violent gang that ran a large scale drug operation from 1985 through 1989. Unlike, Mr. Mohammed, Edmond was charged in a 43-count indictment with the rarely seen crime of leading a Continuing Criminal Enterprise. Although, the government cites Edmond, it ignores that among Edmond's crimes were homicides and a litany of crimes of violence. Also omitted but critical to Judge Richey's decision in Edmond to select an anonymous jury was the information that the government provided to the Court "[d]escribing threats to witnesses." Id at 1092.

     Unlike Mr. Edmond, Mr. Mohammed did not run a criminal enterprise. Unlike Mr. Edmond, Mr. Mohammed did not lead a vast vertical operation that collected revenues in the millions of dollars. Id at 1086. As the government will concede, the search of Mr. Mohammed's house did not result in the recovery of any drugs, paraphernalia, weapons, munitions, or any currency beyond nominal amounts of the very weak Afghani and Pakistani Rupee. In the absence of any actual evidence to support its extraordinary request, the government relies on unbridled exaggerations and hype. There is no proof to back up the charge that Mr. Mohammed "associated and conspired with farmers who could grew the opium, the opium wholesalers who

5

sold pads of opium to the labs and manufacturers of heroin, the sellers and transporters of heroin, and the money or hawalladars.". See Gov. Mt at 6.  Certainly at this point, the government has not provided any evidence suggesting that Mr. Mohammed was involved in this smorgasbord of criminal activity.  On the contrary the government's evidence will show that in the one instance when opium was exchanged, the exchange took place in a bazaar.

After this foray, the government delves into the unreal in claiming that Mr. Mohammed's "associates have the capacity to harm jurors."  The question that beckons to be answered is, who are these "associates"? .  There is no such evidence of any "associates."  Whereas, Edmond, Edelin and Gray had known associates who were related to them, who worked for them, who were charged with them, who had the capacity to identify witnesses and jurors, who could come to the Courthouse to make first hand observations and who could easily monitor the movements of jurors and witnesses, Mr. Mohammed does not have a single "associate."

As an initial matter, for all the government's bark regarding Mr. Mohammed's extensive associations, and its efforts in transforming him into an Afghani Pablo Escobar, no one has been charged with Mr. Mohammed.  He has been charged alone.  He was charged in a superceding indictment only after he rejected the government's plea and exercised his right to proceed to trial. Conveniently left out of the government's over the top exaggerations is the fact that Mr. Mohammed was arrested in October 2006.  Thereafter he was held incommunicado for approximately a year in Bagram Airforce Base.

If anyone was able to communicate any message for Mr. Mohammed, it was the Red Cross in Afghanistan. However, there has not been any allegation that a Red Cross volunteer communicated any messages for Mr. Mohammed beyond greetings to his family. Since he was

6

removed from his native Afghanistan no one, including his family, has any knowledge of his current whereabouts. Since he was brought to the nation's capital, Mr. Mohammed has lead a disoriented and essentially kafkaesque existence in the maximum security wing of the District of Columbia Jail without the means to communicate with <u>anyone</u>. Undeterred the government urges the spectre of a Taliban styled calvary that will surmount borders, oceans, deserts and mountains from Mr. Mohammad's Afghanistan to the District of Columbia with the goal of "harm[ing] jurors."

    As the government motion fails to satisfy the criteria for empaneling an anonymous jury, its request for such an extraordinary relief is without and merit and should be denied. The flip side of the request is to impute on Mr. Mohammed a reckless and unlimited capacity for violence. The net result will be that jurors will fear that the villager whose fate they have to decide, who hails from a country associated with endless war and horror will have the wherewithal, the resources, the intent and desire to inflict violence and retribution on them.

    In short the empanelment of an anonymous jury can have only one result, which is that the jury will believe that Mr. Mohammed is a dangerous man from whom they must be protected, a tangible inference that eviscerates Mr. Mohammed's right to the presumption of innocence. The presumption of innocence is "undoubted law, axiomatic and elementary," and its enforcement "lies at the foundation of the administration of our criminal law." <u>Coffin v. United States</u>, 156 U.S. 432, 453 (1895). See, e.g., <u>Estelle v. Williams</u>, 425 U.S. 501, 503 (1976). The selection of an anonymous jury in Mr. Mohammed's case will undermine this fundamental and elementary principle of law.

**CONCLUSION**:

Given the substantial prejudice to Mr. Mohammed in which the jury will logically infer that the Court has found it necessary to keep their identities a secret from Mr. Mohammed, empaneling an anonymous jury is a drastic remedy which is not supported by the facts of the case. Because the government cannot prove that Mr. Mohammed or his unnamed and unknown "associates" will attempt or have attempted to harm jurors an anonymous jury is not warranted. United States v. Sanchez 74 F.3d 562, 565 (5th Cir. 1996).

Respectfully submitted,

A.J. Kramer
Federal Public Defender

_____/s/_____
Carlos J. Vanegas
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** )<br>)<br>v. )<br>)<br>**KHAN MOHAMMED** )<br>) | Criminal  No.: 06-357(CKK) |

**ORDER**

That upon consideration of defendant's Khan Mohammed's Motion in Opposition of the Government's Motion for an Anonymous Jury;  it is hereby

**ORDERED** that the Government's Motion for an Anonymous Jury is hereby **DENIED**;

and it is

**SO ORDERED**

_____                                                                           _____
DATE                                                                                        COLLEEN KOLLAR-KOTELLY.
                                                                                                   UNITED STATES DISTRICT JUDGE

Carlos J. Vanegas
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C.  20004

Matthew Stiglitz
Julius Rothstein
Trial Attorney
United States Department of Justice
1400 New York Ave., The Bond Building
8th Floor
Washington, D.C. 20530