UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>KHAN MOHAMMED<br><br>  Defendant. | Criminal Action No. 06-357 (CKK)<br><br>**FILED**<br><br>MAR 1 9 2008<br><br>NANCY MAYER WHITTINGTON, **CLERK**<br>U.S. DISTRICT **COURT** |

**MEMORANDUM OPINION**
(March 19, 2008)

Defendant Khan Mohammed is an Afghan citizen who has been extradited from Afghanistan and charged in a two-count indictment for violations of 21 U.S.C. § 959 (distribution of one kilogram or more of heroin intending and knowing that the heroin will be unlawfully imported into the United States) and 21 U.S.C. § 960a (engaging in conduct violating 21 U.S.C. § 841(a) and knowing and intending to provide anything of pecuniary value to a person or organization engaged in terrorism or terrorist activity). Currently pending before the Court is the Government's Motion for an Anonymous Jury filed on January 30, 2008. Defendant filed an Opposition to the Motion on February 25, 2008, and the Government filed a Reply on March 7, 2008. After thoroughly reviewing the Parties' submissions, applicable case law and statutory authority, the Court shall deny without prejudice the Government's [19] Motion on the present record, for the reasons that follow.

**I. LEGAL STANDARD**

The use of an anonymous jury is authorized by 28 U.S.C. § 1863(b)(7) (authorizing a court to "keep [juror names] confidential in any case where the interests of justice so require").

1



In this district, a court may exercise its discretion to empanel an anonymous jury where: (1) there is strong reason to believe the jury needs protection and (2) the court has taken reasonable precautions to minimize any prejudicial effects on the defendant and ensures his fundamental rights are protected. *See United States v. Edmond*, 52 F.3d 1080, 1090 (D.C. Cir. 1995). Because the use of an anonymous jury implicates a defendant's constitutional rights to a presumption of innocence and to exercise peremptory challenges, a court must consider whether an anonymous jury is appropriate by examining the factorial methodology adopted by the D.C. Circuit in *Edmond*. *See* 52 F.3d at 1091. Pursuant to this methodology, juror anonymity is warranted upon a showing of "some combination" of five factors:

> (1) the defendant's involvement in organized crime;
> (2) the defendant's participation in a group with the capacity to harm jurors;
> (3) the defendant's past attempts to interfere with the judicial process;
> (4) the potential that, if convicted, the defendant will suffer a lengthy incarceration; and
> (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation and harassment.

*Id.*

## II. DISCUSSION

The Government's Motion argues that this case implicates all of the *Edmond* factors except for the third factor. *See* Gov't Mot. at 5-8. Defendant argues that this case implicates none of the factors except for the fourth factor. *See* Def.'s Opp'n at 27. The Court shall discuss the Parties' arguments in the context of each of the factors.

A.   *Organized Crime*

The Government argues that Defendant was involved in organized crime:

> Defendant was a long-time heroin and opium manufacturer and distributor. He had widespread knowledge of the entire process of heroin and opium production and distribution. In order for [Defendant] to commit the offense[s] in the indictment, he needed to know all aspects and participants in the production and distribution of heroin.

2

Gov't Mot. at 5-6. According to the Government, Defendant "played key roles in this particular 'Jihad' which included acquiring and distributing large quantities of opium and heroin destined for the United States, laundering money, and planning attacks against U.S. military personnel stationed in Afghanistan at the behest of the Taliban." *Id.* at 6 (citing *Edmond*, 52 F.3d at 1091).

Although the Government has described an organization operating in Afghanistan that is allegedly built around the manufacturing and distribution of drugs, it has failed to show how this organization threatens the safety of jurors in Washington, D.C. Specifically, the lack of a nexus between the drug farmers and other participants identified by the Government and the region where the jurors are located distinguishes this case from those on which the Government relies. For example, the *Edmond* court found that "organized crime" posed a risk to jurors because the defendants in that case were "the primary participants in a large-scale criminal organization that distributed massive amounts of cocaine in Washington, D.C., and used violent acts to achieve its goals." *Edmond*, 52 F.3d at 1091. *See also United States v. Edelin*, 128 F. Supp. 2d 23, 28, 30 (D.D.C. 2001) (describing an organization accused of fourteen murders and multiple counts of assault with intent to murder, including threats to kill two witnesses in a case proceeding in the Superior Court for the District of Columbia); *United States v. Eiland*, 2006 U.S. Dist. LEXIS 6546 *9, *11-*12 (D.D.C. Jan. 21, 2006) (finding that defendants' organization, which distributed large amounts of narcotics in the District of Columbia, had both the capacity and willingness to harm others to further the interests of their enterprise).

In the present case, all of the acts identified by the Government relate to conduct and participants in Afghanistan, not Washington D.C. That distinction is critical, as the methodology adopted by the *Edmond* Court is designed to aid the determination of whether a jury needs protection, not whether defendant is associated with organized crime in the abstract. On this

3

record, and in the absence of any concrete examples as to how the organized crime identified by the Government has any proximity to the potential jurors in this case, the Court cannot find that the first *Edmond* factor is implicated.

B. *Group with a Capacity to Harm Jurors*

The Government argues that Defendant's "associates" have the capacity to harm jurors based on Defendant's affiliation with the Taliban:

> [Defendant] was designated by the Taliban, a terrorist organization, to coordinate the use of rockets obtained during the investigation to kill members of the U.S. armed forces in Afghanistan. In recorded conversations, the defendant also stated his pleasure that the heroin was destined for the United States because he also considered heroin a weapon to destroy the lives of Americans in the United States. Although the Taliban concentrate their activities in South Asia, their ties to global terrorists such as Al-Qaeda, Islamic Jihad, and other terrorist organizations present security concerns for the jury and the Court in this case.

Gov't Mot. at 6-7.

It is true that anonymous juries have been ordered in cases where defendants have associated with groups that have the capacity to harm jurors. Such instances, however, occur where the organization has a violent history of performing certain crimes suggesting the jurors in a particular case may be harmed. *See, e.g., Edmond* (43-count indictment concerning a vast criminal enterprise accused of multiple homicides, crimes of violence, and history of threatening witnesses); *United States v. Edelin*, 128 F. Supp. 2d 23, 45 (D.D.C. 2001) (observing that the "violence associated with [the] alleged conspiracy is remarkable," and noting that the conspirators allegedly committed fourteen murders, thirteen assaults, and approximately 20 shootings, with a center of operation in Washington D.C.). *See also United States v. Thomas*, 757 F.2d 1359, 1364 (2d Cir. 1985) (explaining that the defendants were alleged to be involved in large-scale organized crime who had participated in several "mob-style" killings, and charges in the indictment included attempts to interfere with the judicial process by murdering

4

government witnesses).

In the present case, the Court agrees with Defendant that "the [G]overnment has not presented the Court with any concrete, reliable, or verifiable evidence that goes beyond mere generalizations . . ." concerning threats to jurors in Washington, D.C. Def.'s Opp'n at 4. The first example provided by the Government–the use of rockets in Afghanistan–does not suggest the same acts will occur as to jurors in Washington, D.C. The second example provided by the Government was presented *in camera* and relates to a threat to a witness who was not located in the United States. Although the Government argues by extension that if there are security concerns for a witness, there are security concerns for the jury, *see* Gov't Reply at 2, that argument is too speculative and too remote to implicate juror safety. The Government does not allege that threats have been made to persons in Washington, D.C., nor describe how persons affiliated with Defendant would likely to carry out such threats. Moreover, unlike the cases described above, Defendant in this case was charged individually, not as a co-defendant in a conspiracy; Defendant was charged in a two-count indictment, not a 43-count racketeering-type indictment; Defendant was charged with drug-related offenses, not multiple counts of murder and assault; and Defendant's alleged "associates" are unidentified, rather than known persons based on their prior conduct aimed at jurors and witnesses. Defendant rightfully highlights the fact that he was arrested in October 2006, and has since been held "incommunicado for approximately a year in Bagram Airforce Base," and then extradited and placed in the maximum security wing of the District of Columbia jail without the capacity to talk with any "associates" from Afghanistan.[1] Def.'s Opp'n at 7. On this record, the Court cannot find that the second *Edmond*

---

[1] Defendant also adds, and the Government fails to dispute, that a search of Defendant's house "did not result in the recovery of any drugs, paraphernalia, weapons, munitions, or any currency beyond nominal amounts of the very weak Afghani and Pakistani Rupee." Def.'s

factor is implicated.

    C.    *Interference with the Judicial Process and Lengthy Incarceration*

The Court addresses these two factors together because they are each uncontested. The Government does not argue that Defendant has previously interfered with the judicial process, and accordingly, the Court finds that this factor is not implicated by the present record. The Government argues that Defendant faces a lengthy incarceration, and Defendant does not argue otherwise. *See* Gov't Mot. At 7 (explaining that Defendant faces maximum penalties of life imprisonment, and as a result, he "has a strong incentive to avoid conviction by whatever means possible"). Accordingly, the Court finds that the fourth factor is implicated by this record.

    D.    *Extensive Publicity*

This is the first case in the United States proceeding to trial under 18 U.S.C. § 1960a. *See* Def.'s Reply at 2. Although the Government concedes that it "is not aware of any media coverage about this case," it argues that the case may ultimately generate some media coverage. *Id.* The Court finds that the possibility of media attention (which has not occurred to date) does not necessitate an anonymous jury in this case. The Government relies on *United States v. Koubriti, et al.* for the proposition that media coverage, by itself, may warrant the empaneling of an anonymous jury. 252 F. Supp. 2d 418 (E.D. Mich. 2003). In that case, the defendants were "arrested on September 17, 2001, i.e., within a week of the September 11 attacks on the World Trade Center and the Pentagon . . . [resulting in] a great deal of media attention, both locally and nationally." *Id.* at 419. The Court found that "particularly in the aftermath of the events of September 11, public emotions concerning 'terrorism' [were] still highly charged [and] . . . to protect potential jurors from undue harassment by the media and other curiosity-seekers, it would

---

Opp'n at 5.

be in the best interest of the jurors and the parties that the jury in this case remain anonymous." *Id.* Needless to say, this case does not arise in the immediate aftermath of the September 11, 2001 terrorist attacks, nor has it drawn national or local attention, or any attention at all. Notwithstanding the novel application of Title 18 of the United States Code, the Government has not provided the Court with any justification for finding that the possibility of media attention justifies an anonymous jury on this record. Should information come to the attention of the Government that raises these concerns, this issue can be revisited.

### III. CONCLUSION

Based on the reasons set forth above, it appears that only one of the *Edmund* factors is implicated by this case (the defendant may suffer a lengthy incarceration if found guilty). That single factor is insufficient, standing alone, to justify empaneling an anonymous jury on this record. Accordingly, the Court shall deny the Government's [19] Motion for an Anonymous Jury without prejudice. Should the Government become aware of information giving rise to concern that is not presently included in the record before the Court, it may address those concerns at a later date.[2] An appropriate Order accompanies this Memorandum Opinion.

Date: March 19, 2008

                                               /s/ COLLEEN KOLLAR-KOTELLY
                                               COLLEEN KOLLAR-KOTELLY
                                               United States District Judge

---

[2] The Court notes that counsel will not be permitted to remove from the Courtroom the materials containing juror background information provided to them for purposes of the voir dire. The Deputy Courtroom Clerk shall collect this information at the conclusion of the voir dire, or at the end of each day if the voir dire lasts multiple days.