## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **Criminal  No.: 06-357(CKK)** |
| v. | ) | |
| | ) | |
| **KHAN MOHAMMED** | ) | |
| | ) | |
| _____) | | |

## DEFENDANT'S MOTION TO EXCLUDE GOVERNMENT'S
## EXPERT TESTIMONY

Defendant, Khan Mohammed, through undersigned counsel, respectfully moves the Court

to exclude the government's proposed expert testimony. As grounds for his Motion, Mr.

Mohammed states the following;

1.      Mr. Mohammed is before the Court charged in a two-count indictment with

Distribution of One Kilogram or More of Heroin intending and knowing that the Heroin will be

unlawfully imported in the United States in violation of 21 U.S.C. § 959, 960, Aiding and

Abetting in violation of 18 U.S.C. § 2 and distribution of heroin and opium knowingly or

intending to provide anything of pecuniary value to a person or organization engaged in terrorist

activities in violation of 21 U.S.C. § 960(a), 841(a), 841(b)(1)(A)(I) and 18 U.S.C. § 2.

2.      The government has provided notice that it intends to introduce expert testimony

through a veteran DEA Officer.  According to the government's notice the expert will testify in

reference to the following:

 "(1) the manner of distribution of narcotics in the Afghanistan, including the illegal
distribution of heroin and morphine based raw resources which are further refined in to heroin;
(2) the exportation of heroin to countries outside Afghanistan; (3) the composition of typical

1

heroin distribution organizations, and the different roles in such organizations; (4) the wholesale distribution of illegal narcotics; (5) the processing and packaging of narcotics, including different packaging materials, the use of additives, the preparation of narcotics for sale, the use of tools, the use of bazaars for the distribution of raw and finished products; the use of labs and storehouses to process and safeguard the finished product; (6) the cost of narcotics--both wholesale and retail, profits, distribution of profits, and record keeping; (7) the terminology of narcotics trafficking in Afghanistan, including codes, special vocabulary, weights; (8) the purchase of narcotics by users and their use; (9) the methodology of narcotics investigations in Afghanistan, including the use of undercover officers, foreign agencies, military and other special operations, informants, confidential sources, observation posts, surveillance, search warrants, audio and video surveillance; (10) the role the Taliban has in supporting, safeguarding drug trafficking and the support of the Taliban by the drug traffickers, and how that relationship affects narcotics investigations in Afghanistan; and (11) procedures used by law enforcement for handling and safeguarding narcotics evidence, including chain of custody."[1]

　　　　Mr. Mohammed opposes the introduction of the proffered testimony.

### ARGUMENT

I.　**THE GOVERNMENT'S PROPOSED EXPERT TESTIMONY SHOULD BE DENIED PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 16(a)(1)(D).**

　　　　The government's request to introduce expert testimony should be denied pursuant to

Federal Rule of Criminal Procedure 16(a)(1)(D).  The government provided notice on April 25,

2008 of the proposed testimony of two experts in the areas described in the preceding paragraphs.

The breadth of the government's proposed expert evidence is wide ranging, detailed and

susceptible to counter arguments.  The defense put the government on notice that it was seeking

Rule 16(a)(1)(D) disclosure on November 20, 2007 - approximately five months ago, and two

weeks after Mr. Mohammed was arraigned.  In his November 20, 2007 letter, counsel for Mr.

Mohammed specifically requested the following information:

　　　　"(13)　Production of any and all reports of any examinations or tests, is requested
　　　　　　　　pursuant to Rule 16(a)(1)(D).  In addition, it is requested that the government

---

[1]　　　　The government's notice is attached as exhibit 1.

disclose a written summary of testimony the government intends to use under FRE 702, 703, or 705.  As required by Rule 16(a)(1)(E), the summaries must describe the witnesses' opinions, the bases and the reasons therefore, and the witnesses' qualifications.  See Fed.R.Crim.P. 16(a)(1)(E).

In order to adequately prepare for any motions hearing and for trial, I would appreciate it if you could produce this information as soon as possible.  Please notify me if special arrangements are necessary.  I also request that no material subject to discovery under Fed. R. Crim. P. 16 be forwarded to the Court in this case except under seal unless the Court orders otherwise." (Defendant's November 20, 2007 Discovery Letter).

For expert testimony to be admissible the government must comply with Federal Rule of Criminal Procedure 16. Fed. R. Crim. P. 16.  The government has a duty to disclose, upon the defendant's request, a written summary of expert opinion testimony that the government intends to use during its case-in-chief at trial. Fed. R. Crim. P. 16 (a)(1)(E). The summary "shall" include the witnesses' opinions, the bases and the reasons for those opinions, and the witnesses' qualifications. Id.

Rule 16 contemplates that the parties will accomplish discovery without court intervention. See Fed. R. Crim. P. 16, advisory committee's notes of 1975 enactment. The court is to intervene in the discovery process only to the extent a party fails to comply with a discovery request. Id. If the court determines a party violated the discovery rules by wrongfully withholding discoverable material, the court may enter an order requiring the party to produce the material by a certain time and specifying the other terms and conditions for production of the wrongfully withheld material. See Fed. R. Crim. P. 16(d)(2)(A). The court may also grant a continuance, enter an order prohibiting the party from introducing the wrongfully withheld material, or enter any other order justice requires. See Fed. R. Crim. P. 16(d)(2)(A), (B), and (D).

The Court is authorized under Rule 16(d)(2), Federal Rules of Criminal Procedure, to remedy failures to comply with discovery requests. The most appropriate remedy is for the Court to exclude the proposed testimony in light of the overwhelming Mr. Mohammed has been placed by the government's last minute disclosure concerning expert witnesses and testimony. Rule 16(d)(2), Federal Rules of Criminal Procedure, provides that in the event a party fails to comply with the discovery rules the court may 1) order the party to permit the discovery or disclosure; 2) grant a continuance; 3) prohibit the introduction of the evidence not disclosed; 4) or the court may enter any such order as the court deems appropriate.

The government's late disclosure is in violation of Fed. R. Crim. P. 16. The late disclosure is inexcusable in light of the November 20, 2007 specific request for expert notice. Additionally, the late disclosure puts Mr. Mohammed in a severe disadvantage.

## II.    THE GOVERNMENT'S REQUEST TO INTRODUCE EXPERT TESTIMONY SHOULD BE DENIED PURSUANT TO FEDERAL RULES OF EVIDENCE 702 401, AND 403 AND DAUBERT v. MERRELL DOW PHARMACEUTICALS

Mr. Mohammed also moves to exclude the proposed expert testimony pursuant to Federal Rules of Evidence 702, 704, 403 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Kumho Tire v. Carmichael, 526 U.S. 137 (1999). When faced with a proffer of expert testimony, the court must make a preliminary determination as to all of these Rule 702, requirements. Daubert 509 at. 592. Pertinent to the instant case, is Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999) where the Supreme Court made it clear that the district court's duty to act as gatekeeper and to assure the reliability of expert testimony before admitting it applies to all expert testimony, not merely scientific expert testimony.

Rule 702 of the Federal Rules of Evidence provides:

If scientific, technical or other specialized knowledge will assist the trier of fact to

understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The government's first task, then, is to show that the expert possesses "specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Thus, the government must establish that its expert's testimony will address an issue beyond the common knowledge of the average layperson.  The government's burden before the jury is to prove that Mr. Mohammed had the specific and knowing intent that the narcotics he was distributing was going to be exported to the United States.  Count one of the indictment charges a discrete crime, distribution of heroin,  that took place on a specific date, October 18, 2006.

It is anticipated that the government will introduce witness testimony, video evidence and tangible evidence (the heroin), all which is available to the government, to show that Mr. Mohammed satisfied the elements of the charged criminal offense.  Seen in that light, the expert's proposed testimony will not "assist the trier of fact to understand the evidence or to determine a fact in issue."  Id. In fact, the operative facts count one are such that  "[t]he jury [will be] just as capable of drawing correct conclusions as the witness possessed with special training, [thereby making the] expert testimony [] unnecessary." United States v.Washington, 106 F.3d 983, 1009 (D.C. Cir. 1997) (quoting United States v. Fadayini, 28 F.3d 1236, 1241 (D.C.Cir.1994)).

While expert testimony may be adduced pursuant to Fed. R. Evid. 702. Such evidence must, however, be relevant. Fed. R. Evid. 401. Specifically, with respect to experts, their

testimony must be relevant to a material fact. See, e.g., Unrein v. Timesavers,Inc., 394 F.3d 1008, 1011 (8th Cir. 2005). "'Relevant evidence'" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; United States v. Doe, 903 F.2d 16, 20-21 (D.C. Cir. 1990). Far from being relevant the proposed testimony regarding the entire universe of narcotic trafficking in Afghanistan would be highly prejudicial in violation of Fed. R. Evid. 403.

Detailed opinions and conclusions regarding the narcotic distribution trade, network, manner of production, refinement, packaging, pricing, and export, among the other topics that the government included in their notice are not "facts of consequence." Similarly, opinions and conclusions regarding "[t]he role the Taliban has in supporting, safeguarding drug trafficking and the support of the Taliban by the drug traffickers, and how that relationship affects narcotics investigations in Afghanistan;" are not "facts of consequence."

Similarly, because drug trafficking committed within Afghanistan is not an offense over which this Court has jurisdiction and because the charged offense "requires proof of actual, not constructive, knowledge" United States v. Chan Chun-Yin, 958 F.2d 440, 443 (D.C. Cir. 1992) (addressing § 959 offense); accord United States v. Londono-Villa, 930 F.2d 994, 998 (2d Cir. 1991)(reversing conviction, holding that to establish a violation of § 960, "the government is required to prove that the defendant knew or intended that the destination of the narcotics would be the United States."), opinions regarding the Taliban's the role "in supporting, safeguarding drug trafficking and the support of the Taliban by the drug traffickers, and how that relationship affects narcotics investigations in Afghanistan" are also irrelevant. The Taliban is not on trial in this case.

The opinion evidence the government seeks to introduce concerning The Taliban's alleged activities is akin to the expert opinion that the D.C. Circuit held inadmissible in United States v. Doe, 5 supra, 903 F. 3d at 20 (expert's testimony that "Jamaicans were taking over the retail drug trade had no bearing upon any claimed defense or other issue at trial, and was openly allusive in linking the drug charges to appellants solely on the basis of the ancestry of two of them"). Doe also held other segments of the expert evidence inadmissible on Rule 403 grounds because its prejudicial value far outweighed its probative value. Doe, 903 F.3d at 21-23; see also United States v. Layeni, 90 F.3d 514, 521 (D.C. Cir. 1996).

> The government here asserts that, contrary to Doe, "[t]he scope of Operation Wild Horse, as well as the evidence of appellant's involvement in the Nigerian heroin trade, made the expert's testimony both relevant and necessary." But the scope of Operation Wild Horse was at most background information and Layeni was not on trial based on his involvement in the Nigerian heroin trade; he was charged with conspiracy to distribute (and to possess with intent to distribute) heroin in the United States and ten specific acts of distribution in the United States. We have difficulty with the government's assertion that "Nigeria, and appellant's link to it, was *directly* relevant to appellant's participation in the conspiracy to possess and distribute heroin in the United States." *Id.* at 21 (emphasis added).

In particular, the government's proffered "expert" testimony regarding The Taliban's role with drug traffickers, and their participation in the execution of the drug trade are irrelevant. The proposed expert should, therefore, be precluded from testifying.

Mr. Mohammed is charged with a specific intent crime, distribution of heroin knowing or intending that it would imported to the United States. Testimony about the Taliban's participation in the narcotics trafficking is irrelevant. The central – but simple – issue here is: Did Mr. Mohammed unlawfully, knowingly and intentionally distribute heroin knowing that it would be imported to the United States. This proposed "expert" testimony will result in confusion of the jury by injecting irrelevant and highly inflammatory and prejudicial matters into the trial.

The universe of drug distribution in  Afghanistan is completely irrelevant to the charged offenses.

Mr. Mohammed here is not on trial for being a member of a trafficking organization or of being a

member of the Taliban, of which there is no evidence.  He has a constitutional right to "be tried

for what he did, not for who he is." United States v. Linares, 367 F.3d 941, 945 (D.C. Cir. 2004)

(quoting United States v. Daniels, 770 F.2d 1111, 1116 (D.C. Cir. 1985).

The government's expert testimony is neither relevant, needed and is instead highly

prejudicial in its effort to link Mr. Mohammed to the pervasive and extensive world of narcotics

trafficking in Afghanistan and in its intended goal of associating Mr. Mohammed with Taliban's

participation in the illegal drug trade.  Because,  the government's proposed testimony is

prohibited by the Federal Rules of Evidence, the substantive law and by our Constitutional

guarantees to due process of law, the Court should denied the government's proposed expert

testimony.

Respectfully submitted,

A.J. Kramer
Federal Public Defender


_____/s/_____
Carlos J. Vanegas
Dani Jahn
Assistant Federal Public Defenders
625 Indiana Ave., N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

EXHIBIT NO. 1

**U.S. Department of Justice**

Criminal Division
Narcotic and Dangerous Drug Section

Julius Rothstein
Deputy Chief

1400 New York Avenue, N.W.
Bond Building, 8th Floor
Washington, D.C.  20530
Phone: (202) 514-5540
Fax: (202) 305-9825
E-mail: julius.rothstein@usdoj.gov

April 23, 2008

Mr. Carlos Vanegas, Esq.
Ms. Dani Jahn, Esq.
625 Indiana Avenue, NW
Washington, D.C.

Re: Khan Mohammed
(Expert Notices)

Dear Counsel:

In accordance with Rule 16(a)(1)(G), Fed. R. Evid., this notification informs you of the government's intention to offer the testimony of Special Agent Edward Follis of the Drug Enforcement Administration (DEA), as an expert witness regarding drug trafficking investigations in Afghanistan.  S/A Follis has been a special agent for the DEA for 20 years.  All of his time with the DEA has been in investigating and supervising investigations of drug traffickers, both domestic and international.  He is an expert in bi-lateral investigations dealing with investigations conducted with foreign police agencies.  He was assigned to supervise the DEA operations in Afghanistan for the maximum tour of twelve months.  Although his office was based out of the U.S. Embassy in Kabul, Afghanistan, his operations and investigations included the entire country and operations which took investigations into neighboring countries surrounding Afghanistan.  He has held the various positions with the DEA: Special Agent, Group Supervisor, Staff Coordinator, Country Attache, Assistant Special Agent in Charge, Associate Special Agent in Charge.  As an agent who has served in these capacities, he is trained and experienced in criminal investigations, the supervision of criminal investigations, collecting evidence, conducting surveillance, evidence analysis, conducting electronic intercepts and analysis of intercepted conversations, as well as

undercover operations, and money laundering.

Special Agent Follis has served as an expert witness in the filed of narcotics trafficking. Special Agent Follis is familiar with the investigation in the Khan Mohammed case because he supervised the DEA Kabul office at the time that it supported other DEA units in the investigation, but he will not serve as a fact witness in this case.  Based upon his knowledge, experience and participation in investigations in Afghanistan, he is prepared to testify regarding the following topics in the trial: (1) the manner of distribution of narcotics in the Afghanistan, including the illegal distribution of heroin and morphine based raw resources which are further refined in to heroin; (2) the exportation of heroin to countries outside Afghanistan; (3) the composition of typical heroin distribution organizations, and the different roles in such organizations; (4) the wholesale distribution of illegal narcotics; (5) the processing and packaging of narcotics, including different packaging materials, the use of additives, the preparation of narcotics for sale, the use of tools, the use of bazaars for the distribution of raw and finished products; the use of labs and storehouses to process and safeguard the finished product; (6) the cost of narcotics--both wholesale and retail, profits, distribution of profits, and record keeping; (7) the terminology of narcotics trafficking in Afghanistan, including codes, special vocabulary, weights; (8) the purchase of narcotics by users and their use; (9) the methodology of narcotics investigations in Afghanistan, including the use of undercover officers, foreign agencies, military and other special operations, informants, confidential sources, observation posts, surveillance, search warrants, audio and video surveillance; (10) the role the Taliban has in supporting, safeguarding drug trafficking and the support of the Taliban by the drug traffickers, and how that relationship affects narcotics investigations in Afghanistan; and (11) procedures used by law enforcement for handling and safeguarding narcotics evidence, including chain of custody.

Sincerely,

_____
Julius Rothstein
Deputy Chief
Narcotic and Dangerous Drug Section
Criminal Division
Department of Justice

11

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| ) | |
| **UNITED STATES OF AMERICA** ) | **Criminal No.: 06-357(CKK)** |
| ) | |
| v. ) | |
| ) | |
| **KHAN MOHAMMED** ) | |
| ) | |
| _____) | |

**ORDER**

That upon consideration of Khan Mohammed's Motion to Exclude the Government's

Proposed Expert Testimony in relation to the above-captioned case it is hereby,

**ORDERED** that the Defendant's Motion is hereby **GRANTED**;


**SO ORDERED**



_____                          _____
DATE                                          COLLEEN KOLLAR-KOTELLY.
                                              UNITED STATES DISTRICT JUDGE

Carlos J. Vanegas, Dani Jahn
Assistant Federal Public Defenders
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004

Matthew Stiglitz
Julius Rothstein
Trial Attorneys
United States Department of Justice
1400 New York Ave., The Bond Building
8th Floor
Washington, D.C. 20530