**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : |
| v. | : Criminal Case No. 06-357 (CKK) |
| | : |
| **KHAN MOHAMMED** | : |

**OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE GOVERNMENT'S EXPERT TESTIMONY**

The United States, by and through Matthew Stiglitz and Julius Rothstein, Trial Attorneys with the U.S. Department of Justice, Criminal Division, Narcotic and Dangerous Drug Section, respectfully opposes Defendant's Motion to Exclude Government's Expert Testimony. Defendant Khan Mohammed argues that the testimony of a Special Agent Edward Follis, a Government expert on drug trafficking in Afghanistan, should be excluded because: (1) the Government's expert notice, provided on April 23, 2008, is untimely; and (2) the expert testimony is irrelevant, unnecessary, and prejudicial. Defendant's arguments are without merit and should be dismissed for the reasons stated below.

I.   Background

    A.   Defendant is Charged with Violating 21 U.S.C. §§ 959 and 960a

Contrary to defendant's characterization of this case, Mohammed is in fact charged with violating two separate statutory provisions: 21 U.S.C. § 959 (extraterritorial manufacture or distribution of heroin knowing or intending the drugs were destined for the United States) and 21 U.S.C. § 960a (narcotics trafficking violation with the intent to provide pecuniary support to a

1

person or group of persons engaging in terrorism or terrorist activities).  As to the § 959 drug trafficking charge, the Government expects its evidence to establish that defendant – acting entirely within Afghanistan – distributed approximately 2 kilograms of heroin and 11 kilograms of opium to a confidential informant who was working for the Drug Enforcement Administration (DEA).  The Government will also establish that defendant knew that these drugs were destined for the United States.  As to the § 960a narco-terrorism charge, the Government will show that the defendant was willing to commit the drug trafficking offenses for remuneration and that the defendant was willing to conduct an attack upon the Jalalabad Airfield at the direction of known Taliban commanders who were operating from Pakistan.

  B. <u>Proposed Drug Expert Testimony</u>

In its notice dated April 23, 2008, the Government notified the defense that it intends to call Associate Special Agent in Charge Edward Follis of the DEA as a narcotics expert involving the investigations of drug traffickers in Afghanistan.  Special Agent Follis has been involved in law enforcement for approximately twenty years.  He has experience in all phases of drug investigations and enforcement of the drug laws.  He also has formal training regarding the importation, distribution, production, storage, and use of illegal drugs.  He has testified as an expert in a United States District Court regarding heroin trafficking.  He is also the highest ranking DEA agent ever to serve in Afghanistan and supervised operations in that country for a full one-year tour of duty.

Special Agent Follis is familiar with the investigation in the Khan Mohammed case because he supervised the DEA Kabul office at the time that it supported other DEA units in the investigation, but he will not serve as a fact witness in this case.  Based upon his knowledge, experience, and participation in investigations in Afghanistan, he is prepared to testify regarding the following topics

at trial: (1) the manner of distribution of narcotics in the Afghanistan, including the illegal distribution of heroin and morphine based raw resources, which are further refined into heroin; (2) the exportation of heroin to countries outside Afghanistan; (3) the composition of typical heroin distribution organizations, and the different roles in such organizations; (4) the wholesale distribution of illegal narcotics; (5) the processing and packaging of narcotics, including different packaging materials, the use of additives, the preparation of narcotics for sale, the use of tools, the use of bazaars for the distribution of raw and finished products; the use of labs and storehouses to process and safeguard the finished product; (6) the cost of narcotics – both wholesale and retail, profits, distribution of profits, and record keeping; (7) the terminology of narcotics trafficking in Afghanistan, including codes, special vocabulary, weights; (8) the purchase of narcotics by users and their use; (9) the methodology of narcotics investigations in Afghanistan, including the use of undercover officers, foreign agencies, military and other special operations, informants, confidential sources, observation posts, surveillance, search warrants, audio and video surveillance; (10) the role the Taliban has in supporting, safeguarding drug trafficking and the support of the Taliban by the drug traffickers, and how that relationship affects narcotics investigations in Afghanistan; and

(11) procedures used by law enforcement for handling and safeguarding narcotics evidence, including chain of custody.

II.     The Government's Expert Notice is Sufficient Under Fed. R. Crim P.16

Defendant Mohammed claims, as an initial matter, that Special Agent Follis' testimony should be excluded because sufficient notice of the government's intent to call this witness and introduce evidence related to narcotics trafficking in Afghanistan was late and in violation of Fed.R.Crim.P. 16. However, at a hearing on Tuesday, April 22, 2008, the Government promised that

3

it would disclose the names and any internet-accessible publications of the two expected Afghanistan experts with a more fulsome notice of expected topics of testimony the following day. The Government complied with that promise, as well as supplying additional publications for the expected "cultural" Taliban expert throughout the week. The Government advised that the "cultural" Taliban expert may have scheduling conflicts, but would advise the Defendant if the "cultural" Taliban expert was able to testify. Out of an abundance of caution, the Government also provided the expected topics of that witness' testimony to the defendant. Currently the Government intends to call only one expert who can testify to drug trafficking in Afghanistan and other topics listed above.

Pursuant to Fed.R.Crim.P. 16(a)(1)(G), the Government is required to disclose, at the defendant's request, a written summary of expert testimony that the Government intends to use. However, as noted in the Advisory Committee Notes for the 1993 Amendment requiring such disclosure, "no specific timing requirements are included, it is expected that the parties will make their requests and disclosures in a timely fashion." The Government provided the notice in a timely fashion as soon as practicable after determining the identity of the relevant expert witness. The Government did not seek to unfairly surprise the defense and did not engage in gamesmanship by the disclosure. It should be noted that the Government could have called one of the fact witnesses as an expert in these matters which is allowed under the Federal Rules. See, e.g., United States v. Catlett, 97 F.3d 565, 571 (1996) ("every federal court to consider the issue of dual testimony as both a fact and expert witness has concluded that the Federal Rules of Evidence permit such testimony"; citing cases); United States v. Thomas, 74 F.3d 676, 682 (6th Cir.) ("it is 'not improper for the government to elicit ... expert testimony from law enforcement officers who also testified as fact witnesses'"; citation omitted), cert. denied, 517 U.S. 1162 (1996); United States v. Foster, 939 F.2d 445, 452 (7th Cir.

1991) ("[a] witness may testify as both an eyewitness and an expert witness during the course of the same trial"'; citation omitted); United States v. de Soto, 885 F.2d 354, 360 (7th Cir. 1989) (same); United States v. Young, 745 F.2d 733, 759 (2d Cir. 1984) (same; citing cases), cert. denied, 470 U.S. 1084 (1985). However, the Government chose a less controversial approach in seeking to find an expert who would not also be a fact witness in the case. There are limited law enforcement agents who have the experience to testify to such matters about trafficking in Afghanistan, and it simply took longer than expected to find the right witness who was available.

Furthermore, the defendant has failed to establish good cause for exclusion, has failed to establish that he has been prejudiced by the disclosure, and has failed to establish that alternative remedies, short of exclusion, are insufficient to cure any alleged prejudice. See Fed.R.Crim.P. 16 (d). Accordingly, this Court should exercise its discretion and deny the defendant's motion to exclude. See United States v. Lathern, 488 F.3d 1043, 1046 (D.C. Cir. 2007) (district court's decision regarding admissibility of evidence is reviewed for abuse of discretion).

III.  The Government Expert Witness Will Provide Relevant, Admissible Testimony on the Modus Operandi of Drug Trafficking Organizations in Afghanistan

Defendant Mohammed claims that Special Agent Follis' testimony should be excluded because: (1) the testimony does not satisfy the standards of Fed. R. Evid. 702, Daubert v. Merrel Dow Pharmaceuticals, Inc., 509 U.S. 579 (1973), and Kumho Tire v. Carmichael, 526 U.S. 137 (1999) (Mot. at 4); (2) the evidence is irrelevant and unnecessary (Mot. at 5-6); and (3) the evidence will be prejudicial. Mot. at 6-7. Defendant's arguments ignore well-established jurisprudence regarding the admissibility of expert testimony in drug trafficking cases and rely upon the incorrect assumption that he is charged only with a drug trafficking offense under 21 U.S.C. § 959.

5

Accordingly, his arguments are without merit and his motion to exclude the expert testimony should be denied.

    A.    <u>Defendant's Arguments Conflict with Well-Established Jurisprudence</u>

As a general principle, "there is a well-established practice of law enforcement officers testifying, on the basis of their experience, as experts in the modus operandi of drug trafficking organizations." <u>United States v. Mejia</u>, 448 F.3d 436, 449 (D.C. Cir. 2006). Indeed, the use of "expert testimony about the methods of drug organizations is common in drug cases," <u>United States v. Martinez</u>, 476 F.3d 961, 967 (D.C. Cir. 2007), as evidenced by the plethora of cases affirming the admissibility of expert testimony for precisely the same purposes as offered in this case.[1] Noticeably

---

[1] <u>See</u>, e.g., <u>United States v. Watson</u>, 171 F.3d 695 (D.C. 1999) (expert testimony regarding the modus operandi of drug dealer, even if elicited through mirroring hypotheticals, does not violate Fed. R. Evid. 704(b)); <u>United States v. Toms</u>, 136 F.3d 176 (D.C. 1998) (allowing expert testimony regarding roles in a narcotics operation); <u>United States v. Conyers</u>, 118 F.3d 755, 758 (D.C. Cir. 1997) ("An expert witness may testify about an established practice among individuals involved in the drug trade."); <u>United States v. White</u>, 116 F.3d 903, 922 (D.C. Cir.1997) (expert testimony concerning modus operandi of drug traffickers, "including drug packing and roles that individuals play in drug distribution" admissible); <u>United States v. Moore</u>, 104 F.3d 377 (D.C. Cir. 1997) (allowing expert testimony regarding presence of a drug operation); <u>United States v. (Joseph) Spriggs</u>, 102 F.3d 1245, 1258 (D.C. Cir. 1997) (upholding admission of expert testimony to "help the jury understand drug terminology"); <u>In re Sealed Case</u>, 99 F.3d 1175 (D.C. Cir. 1996) (allowing expert testimony regarding characteristics of narcotics distribution); <u>United States v. Walls</u>, 70 F.3d 1323, 1326 (D.C. 1995) ( "Jurors as well as judges often need help deciphering the jargon of those engaged in the drug trade."); <u>United States v. Robinson</u>, 59 F.3d 1318 (D.C. Cir. 1995) (allowing expert testimony regarding composition and source of narcotics); <u>United States v. Clark</u>, 24 F.3d 257, (D.C. Cir. 1994)  (allowing narcotics expert testimony regarding "description of the likely roles of the described individuals, something 'not within the common knowledge of the average juror."); <u>United States v. Thorne</u>, 997 F.2d 1504 (D.C. 1993) (allowing narcotics expert testimony regarding ledgers and pager numbers); <u>United States v. (Terrance) Spriggs</u>, 996 F.2d 320 (D.C. Cir. 1993) (allowing expert testimony regarding use of narcotics); <u>United States v. Lincoln</u>, 992 F.2d 356 (D.C. Cir. 1993) (allowing expert testimony regarding division of money in narcotics operation); <u>United States v. Chin</u>, 981 F.2d 1275, (D.C. Cir. 1992) ("In accord with the commodious standard of Fed. R. Evid. 702, expert testimony on the modus operandi of criminals 'is commonly admitted,' particularly regarding the methods of drug dealers."); <u>United States v. Williams</u>, 980 F.2d 1463 (D.C. 1992)

6

absent from defendant's motion is any reference to Mejia and Martinez, two recent D.C. Circuit cases addressing the admissibility of similar expert testimony in § 959 cases. Taken together, these two cases directly refute most of defendant's arguments.

      B.     The Expert Testimony Satisfies Rule 702 and Daubert

In Martinez, the D.C. Circuit summarily rejected a very similar argument that expert testimony on foreign drug trafficking organizations violated Rule 702 and Daubert. Martinez, 476 F.3d at 967. More specifically, the Martinez Court rejected the specific argument raised here by defendant – to wit, his argument that expert testimony is unnecessary because the Government will present factual evidence regarding his involvement in the drug trafficking conspiracy. Mot. at 5. In rejecting this argument, the Martinez Court drew a distinction between general testimony regarding the operating methods of a drug trafficking organization and the specific evidence about the defendant's particular conspiracy, holding that the expert testimony serves a different function. Id. In the instant case, that same distinction applies and, thus, defendant's argument cannot succeed.

      C.     The Expert Testimony is Relevant.

As the overwhelming case law indicates, including Martinez and Mejia, modus operandi testimony is undeniably relevant in drug cases. See, e.g. United States v. Dunn, 846 F.2d 761, 763 (D.C. Cir. 1988) ("Federal Courts often permit experts to testify on narcotics operations because jurors are commonly unfamiliar with the methods by which drug dealers attempt to conceal their

---

(allowing narcotics expert testimony regarding modus operandi); United States v. Boney, 977 F.2d 624 (D.C. Cir. 1992) (allowing expert testimony regarding particular roles in narcotics organization); United States v. Johnson, 952 F.2d 1407 (D.C. Cir. 1992) (allowing expert testimony roles of participants in a narcotics operation). In addition to ignoring two relevant § 959 cases directly on point, Defendant Mohammed blithely asks the Court to ignore this wealth of authority.

7

activities."). Such testimony is especially relevant in § 959 cases, because these cases involve <u>foreign</u> drug trafficking organizations operating in foreign countries and using methods that are often not within the common knowledge of an American jury.

None of the more general cases cited by defendant justifies departure from <u>Martinez</u>, <u>Dunn</u>, and numerous other cases admitting similar expert testimony. In particular, defendant's reliance on <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999), is unavailing. In <u>Kumho Tire</u>, the Supreme Court held that all expert testimony – not only that given by scientists – must be both relevant and reliable. <u>Id</u>. at 141-42. Special Agent Follis' practical experience and formal training satisfy the <u>Kumho Tire</u> reliability requirement. The Government has provided defendant with Agent Follis' qualifications and assignments. At the time of trial, we expect Agent Follis to testify in great detail regarding his expert qualifications and understand that defendant will be afforded a full opportunity for voir dire before the Court determines whether to qualify him as an expert.

Aside from these countervailing legal authorities, defendant's arguments on relevance must fail because he simply ignores that he is charged with violating 21 U.S.C. § 960a, which requires the Government to establish that the defendant supported an individual or organization engaged in terrorism. Thus, the defendant is patently incorrect when he claims that expert testimony regarding the Taliban or drug trafficking in Afghanistan is irrelevant. Mot. at 6-7. Under § 960a, "the Taliban's role with drug traffickers, and their participation in the execution of the drug trade," Mot. at 7, are relevant and helpful to the jury, as the trier of fact.

D.      <u>The Testimony is not Prejudicial</u>.

Defendant relies on <u>United States v. Doe</u>, 903 F.2d 16, 20-21 (D.C. Cir. 1990), for the proposition that the expert witness testimony is prejudicial. Mot. at 6. <u>Doe</u>, however, involved a

8

very different case in which the evidence was not relevant and raised the specter of racial discrimination. Id. at 21. Doe concluded that this testimony should not have been admitted at trial, but it did not require that the admissibility decision be made before trial by excluding all of the expert testimony. Nor does defendant offer any argument as to why this Court should deviate from the general rule, reiterated in Martinez and Mejia, admitting modus operandi testimony. There is nothing to suggest that the expert testimony in this case will raise the same discriminatory concerns as in Doe, nor is there any argument as to why exclusion of the testimony before trial is justified. Should the testimony at trial raise concerns of prejudice or discrimination, this Court can address those concerns at that time.

WHEREFORE, the Government respectfully opposes defendant Mohammed's motion to exclude testimony by a narcotics expert.

Respectfully submitted

KENNETH A. BLANCO, Chief
Narcotic and Dangerous Drug Section


_____/s/ Julius Rothstein_____
JULIUS ROTHSTEIN, Deputy Chief
Narcotic and Dangerous Drug Section
D.C. Bar No. 4500036
U.S. Department of Justice
1400 New York Avenue, N.W.
8th Floor
Washington, D.C. 20530
(202) 514-5540
julius.rothstein@usdoj.gov


_____/s/ Matthew Stiglitz_____
Matthew Stiglitz
Trial Attorney
Narcotics and Dangerous Drug Section
U.S. Department of Justice
1400 New York Avenue, N.W.
8th Floor
Washington, D.C. 20530
(202) 305-3646
matthew.stiglitz@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing motion was electronically filed this 29th day of April 2008 via ECF, which will forward a copy to Carlos Vanegas, Esq., and Dani Jahn, counsel for the defendant.

_____/s/ Julius Rothstein_____
JULIUS ROTHSTEIN