# UNITED STATES DISTRICT COURT
# FOR THE  DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **Criminal Case No. 06-357 (CKK)** |
| | : | |
| KHAN MOHAMMED | : | |

## OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF MISSILES, THE TALIBAN INSURGENCY, TALIBAN CELLS, AND ALLEGATIONS OF A PRIOR HISTORY OF DRUG TRAFFICKING

The United States, by and through Matthew Stiglitz and Julius Rothstein, Trial Attorneys with the U.S. Department of Justice, Criminal Division, Narcotic and Dangerous Drug Section, respectfully opposes Defendant's motion in limine to exclude evidence relevant to Khan Mohammed's participation in terrorist activity and prior drug trafficking intertwined with terrorist activity.  Additionally, pursuant to the Court's direction, the government sets out the nature of the evidence concerning the inception of the investigation, and why the evidence surrounding it is admissible.  Lastly, while the government does not believe that the proffered evidence amounts to evidence requiring notice pursuant to Fed. R. Evid. 404(b), should the Court rule otherwise, then the government would request permission to treat this filing as notice, as there is little prejudice to the defense.

## FACTUAL BACKGROUND

In August of 2006, the Drug Enforcement Administration (DEA) was approached by a police officer with the Afghan National Police, who introduced them to a Confidential Source (CS) who had information that he wanted to provide.  According to the CS, he had been summoned to a meeting with Abdul Rahman, a Taliban commander from Nangarhar Province then located in

Peshawar, Pakistan.  At this meeting, the CS was recruited, albeit involuntarily, to return to Afghanistan for the purpose of obtaining rockets to conduct attacks there.  When the CS complained that he had no knowledge concerning the use of rockets and engaging in these attacks, Rahman identified the defendant as his point of contact and someone who could help.  The CS returned to Afghanistan and reported this information to Afghan authorities.

In the period of time between his report of information to Afghan authorities and his meeting with the DEA, the CS had a meeting with the defendant at which the CS told him that he had been sent by Rahman to find missiles but wasn't sure he could find any.  The defendant told the witness that he was aware that Rahman was sending the CS, but that it would be up to the CS to obtain the rockets to build up trust with them.[1]

After meeting with the CS, the DEA, with the assistance of the local police, obtained 4 rockets with the initial idea that they would be provided to the defendant, who would then be arrested.  The CS was provided with a recording device, and asked to return to the defendant to tell him that he had obtained the rockets, and he did so.[2]  During the conversation, the defendant is heard discussing at length the rockets, where to hide the rockets, the plan for the use of the rockets, and his knowledge of and association with Abdul Rahman and Habib Zai, who was another Taliban commander from Nangarhar Province then living in Pakistan.  Of particular note are the following passages (where JW is the CS and KM is the defendant):

Line 25:      JW:    Look!  The fact that I agreed to this operation, I swear that I

---

[1]In addition to this information, the CS has indicated that during the time that the Taliban was in power in Afghanistan, the defendant had fought for the Taliban, and had led a small unit of men.

[2]A copy of the resulting transcript of this meeting is attached as Exhibit 1.

did this because of you. My friend, if you were not with me in here, I would not have done this work at all and I would have been working to earn my living. Based on the instruction of these people when they told me to work together with Khan Mohammed and I said Khan Mohammed is my long time friend. I said if Khan Mohammed keep my secret and I keep his secret. When two people work together they can do anything. . .

Line 26:      KM:    Yes . . .

Line 45:      JW:    You and Habibzai. You, Habibzai and Qari Abdul Rahman (all three) are together in this?

Line 46:      KM:    Abdul Rahman, Habibzai and our word [sic] are the same. We are his people and with him we make our program.[3]

Subsequent to this meeting, the plan concerning the provision of the rockets to the defendant was ultimately dropped out of security concerns, and so the rockets were later turned in to the DEA. The CS was instructed to tell the defendant that the rockets had been stolen, which he did in a recorded conversation. In several other conversations throughout the investigation the two men discussed what to tell Abdul Rahman and Habib Zai concerning the lack of rockets, arrangements for obtaining new rockets, as well as plans for their use.[4]

During the course of the investigation, the DEA agents asked the CS if the defendant was involved with drugs. The CS indicated that he was, and described the defendant's prior involvement in growing poppy and buying and selling opium as well as heroin that had been converted from his opium. With this understanding, the DEA asked the CS to return to the defendant, and request his

---

[3]"Program" is a euphemism for an attack.

[4]The defendant was provided with a draft copy of the transcripts of all of the recorded calls on or before January 2, 2008.

assistance in obtaining opium (and later heroin) for a purported customer.  The CS did this, and in this and other recorded conversations, the defendant acknowledged his experience in the drug trade, and often mentioned this as proof that he was knowledgeable and reliable as a drug broker, and could supply the witness with any amount of opium or heroin that he needed.[5]

After the conclusion of the investigation, the defendant was arrested.  He was questioned by the DEA, and admitted to the agents that he had previously grown poppy, and that on occasion he had sold opium.[6]

<u>ARGUMENT</u>

I.    <u>The government's evidence is not excludable under Fed. R. Evid. 401, 403, or 404(b).</u>

The Defendant proceeds from a fundamental misunderstanding of 21 U.S.C. § 960a, which criminalizes precisely this type of activity under the concept of "narco-terrorism."  Because the defendant's drug trafficking and his participation and support of a terrorist/terrorist activity are elements of § 960a, the evidence he challenges is not "other crimes" evidence but, rather, is relevant evidence of *the charged crime*.  Nor is the evidence excludable under Fed. R. Evid. 403 as prejudicial merely because it is damaging evidence of his guilt.  Accordingly, the government was not obligated to provide notice of the evidence, which defendant received by January 2, 2008, and this evidence is not excludable under Fed. R. Evid. 401, 403, or 404(b).  For the reasons explained more fully below, defendant's motion in limine should be denied.

---

[5]At the status hearing on April 30, 2008, the defense stated that they were not seeking redaction of the various recordings at issue.

[6]A copy of the DEA report recounting the substance of the interview was provided to the defendant on the date of his initial arraignment- November 5, 2007.  At the April 30, 2008 status hearing, the defense stated that they were not seeking to preclude the government from using this statement.

4

A.    The Evidence is Relevant Under Fed. R. Evid. 401

Although defendant combines his arguments under Rules 401, 403, and 404, the government will address each issue independently.  It is essential, in any analysis under these rules, to begin with the elements of the charged crime.  Section 960a, enacted in March 2006, provides that:

> Whoever engages in conduct that would be punishable under section 841(a) of this title if committed within the jurisdiction of the United States, or attempts or conspires to do so, knowing or intending to provide, directly or indirectly, anything of pecuniary value to any person or organization that has engaged or engages in terrorist activity (as defined in section 1182(a)(3)(B) of Title 8) or terrorism (as defined in section 2656f(d)(2) of Title 22), shall be sentenced to a term of imprisonment of not less than twice the minimum punishment under section 841(b)(1) of this title, and not more than life, a fine in accordance with the provisions of Title 18, or both. Notwithstanding section 3583 of Title 18, any sentence imposed under this subsection shall include a term of supervised release of at least 5 years in addition to such term of imprisonment.

21 U.S.C. § 960a.  Thus, the elements of this crime include: (1) commission of a drug-related crime punishable under 21 U.S.C. § 841(a); (2) the direct or indirect provision of anything of pecuniary value; (3) to a person or organization who has engaged in or is engaging in terrorist activity.

Given the elements of § 960a, defendant's arguments regarding relevance, Mot. at 3, are simply untenable.  In order to meet its burden of proof, the government must prove that Mohammed provided something of pecuniary value to a person or organization engaged in terrorism/terrorist activity.  In this case, the evidence will establish that: (1) Mohammed funneled or intended to funnel drug proceeds to himself individually and as a member of the Taliban; (2) he has engaged in terrorist activity; (3) he was a member of the Taliban; (4) the Taliban is a terrorist organization; and (5) Mohammed personally conspired to commit terrorist activity on behalf of the Taliban.  Defendant's decision, at the direction of a Taliban superior, to help the CS purchase missiles/rockets for use in a terrorist attack *to be coordinated by the defendant* is evidence of terrorist activity.

Similarly relevant is Mohammed's membership in the Taliban, the operation of the Taliban as a terrorist organization, and the Taliban's structure. This evidence demonstrates that the Taliban generally, and Mohammed specifically, satisfy the statutory definition of an organization and/or individual having engaged in, or engaging in "terrorist activity."

Finally, Mohammed's prior drug trafficking is relevant in this case. The bulk of the evidence of Mohammed's prior drug trafficking comes directly from Mohammed during the recorded conversations; defendant made multiple statements in furtherance of the distributiion regarding his drug trafficking experience to assure the CS and an opium seller that he was an established, reliable, and knowledgeable drug trafficker who could provide the requested material. Mohammed provided similar comments to DEA agents in a post-arrest statement. Moreover, Mohammed's prior drug trafficking is intertwined with his terrorist activity, as the Taliban has historically funded its terrorist activity with drug proceeds. In this context, Mohammed's own boasting of his drug trafficking prowess is relevant evidence.

B.    The Probative Value of the Evidence is Not "Substantially Outweighed by the Danger of Unfair Prejudice"

Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair evidence." Rule 403 "tilts . . . toward the admission of evidence in close cases," even when other crimes evidence is involved. United States v. Cassell, 292 F.3d 788, 795 (D.C. Cir. 2002). The balance should generally be struck in favor of admission when the evidence indicates a close relationship to the event charged. Id.

Defendant's cursory argument on prejudice, Mot. at 5, is insufficient to justify exclusion of the vaguely-identified evidence. Notably, defendant makes no effort to balance the significant

probative value with any potential prejudice. Rather, defendant simply claims that "[t]he obvious prejudice accruing to Mr. Mohammed from any evidence suggesting that he was involved in the murky and violent (sic) of narcotics distribution is profoundly substantial." Id. Defendant's argument, however, begs the question – his involvement in the violent world of drug trafficking and terrorism is the crime. Damaging evidence of guilt is not excludable simply because it is damaging; if that were sufficient, all evidence of guilt would be "prejudicial." Because defendant fails to balance the probative value and potential prejudice and because the balance tips in favor of admitting the evidence, defendant's argument on prejudice must fail.

C.    The Evidence Relating to Terrorism is Not Excludable Under Rule 404(b), as it Relates Directly to an Element of Count Two, and Is Not Otherwise Inadmissible on Hearsay Grounds

With respect to the evidence involving terrorism, the government asserts that the evidence goes directly to an element of count 2, in that the government must show that the defendant knew or intended to provide something of pecuniary value to a person or organization who had engaged in (past tense) or is engaging in (present tense) terrorist activity or terrorism. As such, the government is required to show either that, in this case, the defendant had previously engaged in terrorism or that he was in the process of doing so, or that the defendant was part of an organization (the Taliban), that had previously engaged in terrorism or that he was in the process of doing so.

The evidence the government intends on producing concerning the defendant's personal activity not encompassed in the recordings essentially revolves around the CS's knowledge that the defendant had been a fighter for the Taliban and low level leader of other Taliban fighters while the government was in power, as well as evidence of the CS's recruitment and the direction he was given to contact the defendant. The first form of evidence goes directly to an element of the offense- that

he was a member of an organization engaged in terrorism. The second form of evidence- what the witness was told by Abdul Rahman concerning his mission and the identification of Khan Mohammed as his contact - is similarly relevant to establishing that the defendant was a member of the Taliban, and lays the foundation for his ongoing personal involvement in terrorist activities. Furthermore, this evidence is admissible both as a co-conspirator statement by Abdul Rahman and as adoptive admission by the defendant.

    1.    The Evidence is Admissible as a Co-Conspirator Statement

"In order to admit co-conspirator statements, the trial judge must determine that a conspiracy existed, that the co-conspirator and the defendant against whom the statement is offered were members of the conspiracy, and that the statements were made in furtherance of the conspiracy." U.S. v. Perholtz., 842 F.2d 343 (D.C. Cir. 1988). The law in this Circuit is clear that ". . . there is no requirement that a conspiracy be formally charged in the indictment." Id., citing Fed.R.Evid. 801 Senate Judiciary Committee notes and U.S. v. Jackson, 627 F.2d 1198, 1216 (D.C.Cir. 1980).[7] Consistent with this view is U.S. v. Gewin, 471 F.3d 197 (D.C. Cir. 2006), in which the court explained;

> Although Rule 801(d)(2)(E) refers to "conspiracy" and "coconspirators"-potentially giving Gewin's argument some force on first impression-our precedents hold that the doctrine is not limited to unlawful combinations. Rather, the rule, based on concepts of agency and partnership law and applicable in both civil and criminal trials, "embodies the long-standing doctrine that when two or more individuals are acting in concert toward a common goal, the out-of-court statements of one are ...

---

[7]That the indictment need not charge a defendant with a conspiracy for coconspirator statements to be admissible is a position common in other circuits. See, United States v. Doulin, 538 F.2d 466, 471 (2d Cir. 1976); United States v. Jones, 540 F.2d 465, 471 (10th Cir. 1976); United States v. Kendricks, 623 F.2d 1165 (6th Cir. 1980); United States v. Kendall, 665 F.2d 126, 131 (7th Cir. 1981).

> admissible against the others, if made in furtherance of the common goal."
> In support we quoted the 1974 Senate Advisory Committee note to Rule
> 801(d)(2)(E), which said that the rule was "*meant to carry forward the
> universally accepted doctrine that a joint venturer is considered as a
> coconspirator for the purpose of this [R]ule even though no conspiracy has
> been charged.*"

Id. at 201, (internal citations omitted, emphasis added), citing United States v. Weisz, 718 F.2d 413,

433 (D.C.Cir.1983).

In the present case, it is clear from the evidence that a conspiracy existed. A Taliban member

in Pakistan recruited the CS to obtain weapons for the purpose of committing terrorist activity, and

referred him to the defendant as a point of contact and coordinator of that activity. Second, it is

apparent, from the defendant's own words, that the defendant, Rahman and Zai were members of

that conspiracy. Initially you have Rahman referring the CS to the defendant as a point of contact

and a coordinator for terrorist activity. More importantly, you have the defendant's own words,

throughout Exhibit 1, in which he acknowledges his involvement with the others. When the CS

inquired whether the defendant, Rahman and Zai were "(all three) together in this," meaning the

plans to carry out attacks, the defendant responded "Abdul Rahman, Habibzai and our word [sic] are

the same. We are his people and with him we make our program." Finally, when Rahman referred

the CS to the defendant, it was done to further the conspiracy- by giving the CS a person he could

contact for assistance and guidance in committing the attacks.

2.    The Evidence is Further Admissible as an Adoptive Admission under Fed.R.Evid
      801(d)(2)(B)

Fed.R.Evid. 801(d)(2)(B) states that "A statement is not hearsay if . . . the statement is offered against a party and is . . . a statement of which the party has manifested an adoption or belief in its truth." In the present case, even if the defendant had not been involved in a conspiracy with Rahman initially and was not aware that he had been identified as the point of contact for the CS, he adopted Rahman's statements when, in addition to other references in Exhibit 1, he agreed with the CS's account that "[t]he fact that I agreed to this operation, I swear that I did this because of you. My friend, if you were not with me in here, I would not have done this work at all and I would have been working to earn my living. *Based on the instruction of these people when they told me to work together with Khan Mohammed* and I said Khan Mohammed is my long time friend."

D.    The Evidence Relating to Prior Drug Activity is Not Excludable Under Rule 404(b)

Given the discussion at the April 30, 2008 hearing, the government understands that the sole evidence at issue here is the non-recorded information provided by the CS to the DEA concerning the defendant's prior experience with poppy growing and opium/heroin sales, which was the basis for the commencement of the DEA investigation of a drug crime. The government does not believe that this evidence is subject to Rule 404(b) analysis. In the event the Court disagrees, the government believes that this evidence would fall squarely within the rule, and would ask the Court to consider this as notice of an intent to offer such evidence.

1.    The Challenged Evidence is Direct Proof Related to an Element of the Crime and
      Background Evidence That Falls Outside the Strictures of Rule 404

Rule 404(b) precludes the admission of evidence regarding "other crimes, wrongs, or acts

. . . to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid.

404(b). As argued above, the evidence challenged by defendant is not evidence of "other crimes,"

but is evidence that directly satisfies one or more elements of 21 U.S.C. § 960a. "Evidence that

constitutes the very crime being prosecuted" is not extrinsic evidence under Rule 404. United States

v. Bowie, 232 F.3d 923, 927 (D.C. Cir. 2000).

Even if not direct evidence, such activity would fall outside the scope of Rule 404(b) under

established jurisprudence admitting similar evidence. Under this jurisprudence, evidence of

uncharged evidence is not "other crimes" evidence if it arose out of the same series of transactions

as the charged offense or if it is necessary to complete the story of the crime on trial. United States

v. Kennedy, 32 F.2d 876, 885 (4th Cir. 1994) (citing United States v. Towne, 870 F.2d 880, 886 (2d

Cir. 1089)). Thus, when evidence merely establishes background evidence or helps complete the

story, Rule 404(b) does not apply. United States v. Orozco-Rodriguez, 220 F.3d 940, 942 (8th Cir.

2000). Background evidence includes evidence that explains the relationship of the parties or the

circumstances surrounding an event. Id. Background evidence also includes evidence as to how a

conspiracy came about, how it was structured, and how a person became a member. United States

v. Lockey, 945 F.2d 825, 834 (5th Cir. 1991).[8]

The D.C. Circuit has phrased it in similar terms – Rule 404 excludes evidence that is

"extrinsic" or "extraneous" to the charged crime. United States v. Badru, 97 F.3d 1471, 1474 (D.C.

---

[8]Although the D.C. Circuit took a narrow view of intrinsic evidence in a non-conspiracy
case, prior activity was admitted under more liberal Rule 404(b). Bowie, 232 F.3d at 923.

Cir. 1996). Evidence is not considered extrinsic or extraneous "if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime * * *." Badru, 97 F.3d at 1474 (citing United States v. Weeks, 716 F.2d 830, 832 (11th Cir. 1983)). "As long as evidence of the uncharged criminal conduct is offered as direct evidence of a fact in issue, and not as circumstantial evidence of the character of the accused, it is admissible independent of its superficial similarity to that which would be considered evidence of 'other crimes' under Rule 404(b)." United States v. Gray, 292 F. Supp. 2d 71, 77-78 (D.D.C. 2003) (Lamberth, J.) (citing Badru, 97 F.3d at 1475 (citing 22 CHARLES A. WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5239 at 450 (1978))).

Thus, even if this Court concludes that the challenged evidence does not directly prove an element of the charged offense, it is still admissible as background evidence and evidence of a fact in issue. The evidence of prior poppy farming and opium and heroin trafficking is similar background evidence considering that defendant himself raised his past experience in the context of the charged criminal activity. Kennedy, 32 F.3d at 885 (evidence of drug activity pre-dating the charged conspiracy and involving persons outside the charged conspiracy was admissible and did not constitute "other crimes evidence under Rule 404(b)); Orozco-Rodriguez, 220 F.3d at 942 (three prior drug sales by the defendant were admissible as background evidence); see also United States v. Chin, 83 F.3d 82, 88 (4th Cir. 1996)(evidence of prior drug distributions is considered "intrinsic" to the crime charged when the acts were necessary preliminaries to the crime charged).

2.    Even if Challenged Evidence Relates to "Other Crimes," it is Admissible Under
      Rule 404(b), and the Government Requests Leave to Treat This Filing as Notice.

In the event the Court finds that the challenged evidence constitutes "other crimes" evidence,

it is still admissible under Rule 404(b).  The D.C. Circuit has a broad view in admitting other crimes

evidence under Rule 404(b).  The Rule prohibits "evidence of other crimes, wrongs, or acts . . . to

prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid.

404(b).  Although stated as a rule of restriction, the Rule is actually one of "inclusion rather than

exclusion."  United States v. Cassell, 292 F.3d 788, 792 (D.C. Cir. 2002); Bowie, 232 F.2d at 929.

The rule is quite permissive, prohibiting the admission of other crimes evidence in only one

circumstance – for the purpose of proving that a person's actions conform to his character.  Bowie,

232 F.2d at 929 (citing United States v. Crowder, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (en

banc)(Crowder II)); Cassell, 292 F.2d at 792; see also, United States v. Miller, 895 F.2d 1431, 1436

(D.C. Cir.).  Thus, evidence of a defendant's prior bad act is admissible for purposes unrelated to the

defendant's character or propensity to commit crime, such as "proof of motive, opportunity, intent,

preparation, plan, knowledge, identity, or absence of mistake or accident."  Fed. R. Evid. 404(b);

Cassell, 292 F.3d at 792; Miller, 895 F.2d at 1436 ("[u]nder Rule 404(b), any purpose for which bad-

acts evidence is introduced is a proper purpose so long as the evidence is not offered solely to prove

character.").

i.    Two Prong Test/ Standard of Review - Generally

"Given this focus on inclusion," the court must conduct a two part analysis in determining

the admissibility of other crimes evidence under Rule 404(b).  Cassell, 292 F.3d at 292.    First, a

trial court must determine that the evidence of the extrinsic offense is relevant to an issue other than

the defendant's character.  Id.  (Rule 404(b) objection will not be sustained if the evidence of other crimes is relevant, relates to something other than character or propensity, and supports a jury finding that the defendant committed the other crime).  Second, the court must find that the evidence possesses probative value that is not substantially outweighed by undue prejudice.  Id. ("[o]nce past this first step, the evidence is admitted unless it is otherwise prohibited under any other 'general strictures limiting admissibility,' such as Rule 403.").  The trial court's decision will not be set aside absent an abuse of discretion. Id; Bowie, 232 F.2d F.3d at 926-27 (the trial court is afforded "much deference on review.").[9]

     ii.     Evidence of Prior Drug Trafficking is Relevant

In cases charging narcotic violations, evidence of prior drug transactions are relevant and admissible as evidence of a criminal defendant's intent, knowledge, a common scheme or plan, and absence of mistake.  United States v. Huff, 959 F.2d 731, 736-37 (8th Cir. 1992)(evidence of defendant's prior cocaine transaction was relevant to prove intent and common scheme or plan); United States v. Jones, 248 F.3d 671, 675 (7th Cir. 2001)(prior drug distribution is relevant to prove intent to distribute drugs and knowledge that a particular substance is a narcotic drug); United States v. Ono, 918 F.2d 1462 (9th Cir. 1990) (prior drug conviction relevant to show intent and knowledge); United States v. Latney, 108 F.3d 1446, 1448 (D.C. Cir. 1997)(404(b) analysis also applies to evidence of a later drug transaction and is relevant as evidence of the defendant's intent and knowledge).

---

[9] There is no requirement that the court make a preliminary finding that the defendant committed the other crime; rather, the trial court need only determine that the evidence was offered for the proper purpose under Rule 404(b).  Huddleston v. United States, 485 U.S. 681, 689 (1988).

In this case, Mohammed's prior drug activity, which involved opium and heroin, is nearly identical to the charged offenses, in which defendant provided opium and heroin. Thus, this evidence is relevant to show defendant's intent to distribute, his knowledge that the substance he was selling was opium and heroin, motive for profit, and common scheme or plan and absence of mistake.[10]

### iii.    Admission of the Evidence is not Prejudicial

As argued above, see § II, defendant makes no real showing that admission of the evidence will unfairly prejudice him. There is no real likelihood that the jury will be confused by this particular evidence or draw unfair assumptions based on the evidence. The government is not offering through the CS prior instances of conduct, but simply his knowledge of the defendant's prior connection to drug trafficking, which shows why the investigation went in that direction, as is proof of the defendant's intent, knowledge, motive, common scheme and absence of mistake. Moreover, to the extent there is any potential for prejudice or confusion, a limiting jury instruction at trial would be sufficient to ameliorate any potential prejudice. Absent a specific and compelling demonstration of prejudice, exclusion of the evidence is unjustified.

### 3.    The Evidence Should Not be Excluded for Lack of Notice

Because the evidence is not, in fact, "other crimes" evidence, the government was under no obligation to provide notice of its intent to use such evidence. Bowie, 232 F.3d at 927. In the event, however, that this Court concludes that some or all of the challenged evidence falls under Rule 404(b), the government submits that notice has been sufficient in this case. As defendant concedes,

---

[10]While the government is not going to raise them in it's case, the defendant previously told his military interviewers that he thought that the bags that he was seen holding in the video of the heroin transaction contained dried fruit, not heroin.

there is no specified time-line on the production of 404(b) evidence. Mot. at 4 (citing Advisory Committee Notes). The government must only provide "reasonable notice," <u>United States v. Spinner</u>, 152 F.3d 950, 961 (D.C. Cir. 1988), as determined by the district court. In the context of this case, the notice has been reasonable.

Notice of the fact of the defendant's prior activity involving poppy, opium and heroin was provided early in the discovery phase of the case, where by his own words to the DEA and in his statements to the CS he acknowledged his prior experience in the trade. On November 5, 2007, the government provided a cable summarizing defendant's statement to DEA, in which he admits that he had grown poppies up to two years prior to the interview and that he had sold opium when he needed money. Drafts of the transcripts were provided to the defendant by January 2, 2008. While the evidence at issue today is not those statements, but rather the statements of the CS, those statements are consistent with those already provided in discovery. Because the defendant had full knowledge of this evidence, exclusion of the testimony for insufficient notice is unwarranted. <u>See</u> <u>United States v. Watson</u>, 409 F.3d 458, 465 (D.C. Cir. 2005) (Rule 404(b) requires only general notice; notice on morning of testimony was sufficient when defendant failed to identify prejudice).

Exclusion is also unjustified because defendant does not, and cannot, establish any prejudice based on the timing of the notice. <u>See</u> <u>Watson</u>, 409 F.3d at 465. Again, most of the evidence comes from his own statements – he cannot be surprised either at the existence of the evidence or the government's desire to use it against him. Accordingly, defendant's motion in limine should be denied.

<u>CONCLUSION</u>

In conclusion, the evidence the defendant's prior role as a Taliban fighter and the inception

16

of the terrorism-related investigation of him are relevant and admissible as direct evidence of an element of the offence, and are otherwise not precluded by the Rules of Evidence regarding hearsay. With respect to the reference to prior drug conduct as disclosed to the DEA by the CS, even if this evidence does not directly satisfy an element of the crime, it nonetheless falls outside the scope of Rule 404 because it provides background on the crime charged and explains the role played by defendant in it.  Because the evidence is not subject to Rule 404, the government was not obligated to provide notice.  In the event this Court concludes that the evidence does, in fact, qualify as "other crimes evidence," it is still admissible under the exceptions to that Rule 404(b) because it establishes defendant's knowledge, plan, and absence of mistake.  The government has provided reasonable notice that it intends to use such evidence in its case, and the defendant cannot identify any prejudice in learning, at this stage, that the evidence falls under Rule 404.


Respectfully submitted

KENNETH A. BLANCO, Chief
Narcotic and Dangerous Drug Section


_____*/s/ Matthew Stiglitz*_____
Matthew Stiglitz
Julius Rothstein
Trial Attorneys
Narcotics and Dangerous Drug Section
U.S. Department of Justice
1400 New York Avenue, N.W.
8th Floor
Washington, D.C.  20530
(202) 305-3646
matthew.stiglitz@usdoj.gov


17

Certificate of Service

I hereby certify that a copy of the foregoing motion was electronically filed this 1st day of May 2008 via ECF, which will forward a copy to Carlos Vanegas, Esq. And Dani Jahn, Esquire, counsel for the defendant.


_____/s/ Matthew Stiglitz_____
Matthew Stiglitz

## U.S. vs. Khan Mohammad
Exhibit 2A

Date:          August 18, 2006
Length:        1:29:16
Participants:  Khan Mohammad (KM)
               Jaweed (JW)
               Unidentified Male 1 (UM1)
               Unidentified Male 2 (UM2)
               Officer Haji Latif (HL)
               Doctor (Doctor)
               Unidentified Female 1 (UF1)
               Unidentified Child 1:  (Child)
               "Teacher"          (Teacher)

Line#  Speaker:      Statement

| | |
|---|---|
| **00:22**<br>1     JW:    Khan Mohammed.  How are you? | ۱- م : خان محمده ستری مشی<br><br>( ۲۲:۰۰ ) |
| 2      KM:   Good.  Are you well? | ۲- خ م : شه یی پخیر. |
| 3      JW:   How is everything?  Are you in good? | ۳- م : ښه یی قراری ده طبعت د ښه دی  قراری د ه څنګه یی. |
| 4      KM:   How are you?  Is your health good? | ۴- خ م : څنګه یی ؟ طبعت دی ښه ده |
| 5      JW:    Where are you, you fool? I told you several times that we will get together and talk about that subject.  I swear that we have problems getting involved with them. | ۵- م : چیرته یی وخرکوسه تا نه څواری ما ویلی یاره ګپ لګوو ، کینو سره او دا مسله باند ی خبری وکړو سره . دوی سره خو مونږ ه هسی په الا نجه واله چه ککر شو . |
| 6      KM:   Did you get the thing? | ۶- خ م : شی دی پیدا کړی دی |
| 7      JW:    I have got the thing also got the missiles too.  I have them ready according to the price you told me to find the missiles. What did you do about the mines? | ۷- م : شی می هم پیدا کړی مزایل می هم پیدا کړی ، تیار مانه چه هغه کوم نرخ تا را کروودچه یار مزایل پیدا کره تا ما ینونه څنګه کړل؟ |
| 8      KM:   The mines, it is a little. God willing, will find it. | ۸- خ م : ماینونه خو لږ هغه د ی انشاالله پیدا به شی |
| 9      JW:    So, it is done.  It has been | ۹- م : خو ښوی دی نو پیدا ښوی دی کنه |

| | |
|---|---|
| found, yes? | |
| **00:58**<br>10    KM:    It is done.  God willing, I have the source.  We are trying for them to get more weapons and things like that for us.  I have some weapons and the fact that you got these things, it is very good news. | ۱۰ - خ م : شوی دی انشاالله درک شته دی او نور هم هغی پلو کو بنښ کروم چه سلاح او دا شیونه میونه موږ ته ډیر راپیدا کو . سلاح یو خه لرم خو چه تا دا شیان پیدا کرل دا دیر ه ښه خبره ده<br>(۰۰:۵۸) |
| 11    JW:    Look, I have placed that thing some where.  If you want to put this thing in your homes, then I will bring it.  If you cannot place it in your home and want to keep it somewhere else, we both should have an understanding. | ۱۱ - م : هغه شی گوره ما پخا ی کری دی . دا شی که ته په کور کی اږدی چه یی را و مه او که کورکی نشی اینودی دی بل چیرته هم اږدی چه به خبری خان سری پوه کری کنه |
| 12    KM:    You and I are friends. | ۱۲ - خ م : دا خو زما او ستا اندیوالی ده کنه |
| 13    JW:    Yes. | ۱۳ - م : هو |
| 14    KM:    And we cannot reveal our secret to others. | ۱۴ - خ م : او بل چا ته خو راز هم نه شو ښکاره کولای |
| 15    JW:    Yes | ۱۵ - م : ښه |
| 16    KM:    Then, we will do like this, we will bury this away from home.  This is a disgraceful act and there are many informers. | ۱۶ - خ م : نو داسی به وکرو چه د ا به مونږ او تا سی له کوره لیری  ښخه و په دی کی نام بدی ده  شیطان ډیر دی |
| 17    JW:    Yes | ۱۷ - م : ښه |
| 18    KM:    And we will put it in such a place where no one can get an  idea. | ۱۸ خ م : او داسی ځای که به یی کیږدو چه دا سی دچاورته فکر  ورته نوی. |
| 19    JW:    Yes | ۱۹ - م : ښه |
| 20    KM:    Then we will place it there.  So the informers will not search the house. | ۲۰ - خ م : نو هلته  یی کیږدو او مطلب چه شیطا نان هم پر کور تلا شی ونه کری. |
| **01:48**<br>21    JW:    The point is that there is enemy chasing you and an enemy after me.  In these days if you take even one step with these people, the entire world would know what these people are up to. | ۲۱ - م : خبره دا سی ده چه دښمن  تا پسی هم دی او ما پسی هم دی نن دی خلکو سره چه یو قدم هم دا خیسته غنده دنیا درباندی پو هیږی چه دی خلکو څه حرکت وکر خان به ډیر مخفی وساتو او دغه شی چه دا سی یو ځای کی کیږدو چه څوک پوه هم نشی دا باند ی او دا شی هم کیږدو نو دی سوچ برابر کره چه کله شی راغی |

| | |
|---|---|
| We have to keep our secret and keep this thing in a place where no one will know. You have to think as to where you want to place this thing and what to do with it. | خه پری وکړو. |
| 22      KM:    Absolutely.  We trust you, and when we bring it here, we cannot tell anyone else. | ۲۲- خ م :  بلکل - زمونږ خو اعتبار دی پتا باندی چه مونږ یی راورو بل چا ته ویلی هم نشو . |
| 23      JW:    Yes | ۲۳- م : ښه |
| **02:16**<br>24      KM:    I will also blow up the mines there.   I have blown them up around the Dago Sar [Top of the hills] and blown them up around the Red Castle. The fact that you are my new associate, this is a secret between you and me. Then, God willing, there is money and everything in this.  These are infidels we will kill them and we will continue our Jihad with blessing. | ۲۴- خ م : ما ینو نه هم الوزه ومه ، پاس به دغه کی هم الوزو لی می د ی په دا گو سر کی می هم والوزولی دی په سره کله کی می کری دی نو ته چه زما نوی اندیوال ی دا زما او ستا راز دی او بس انشاالله چه پیسی هم پکی شته هر خه پکی شته او کا فر دی وژنو به ی او جهاد به خپل له خیره کوو. |
| 25      JW:    Look!  The fact that I agreed to this operation, I swear that I did this because of you.  My friend, if you were not with me in here, I would not have done this work at all and I would have been working to earn my living. Based on the instruction of these people when they told me to work together with Khan Mohammed and I said Khan Mohammed is my long time friend.  I said if Khan Mohammed keep my secret and I keep his secret.  When two people work together they can do anything.<br>Now about the subject of Kunar as you told me before that we will go to Kunar. Now look, about the [trip] of Kunar, like a person with one wing [alone] neither you nor I can leave home and I am sick and in this condition. | ۲۵- م : گوره زما چه دا کار ته غاړه اینی ده کنه ما قسم دی چه  ستا په دا باندی م غاړه اینیی ده په یاره ته ماسره نوی وی په خایکی می بیځی دا کار هم نکوه . نو خپله خواری اوغریبی می کوله چه د هغو خلکو به هدف چه ما ته یی وویلی چه یاره ته خان محمد سره خان غاړه کړه کنه خان محمد سره ، نو نو ما ویلی چه خان محمد خو زما پخوا نی ملګری د ی ، خان محمد چه زما راز وساتی او زه  د خان محمد راز وساتمه کنه ، دوه کسان چه کار وکړی هغه هر خه کولای شی ، خو پاتی شو د کنر په حساب باندی ی چه تا ما ته مخکی خبره کړی وه کنه چه یاره کنر ته خو خو کنر ته په خپله وګورو چه یاره یو وزری سری ی ته هم له کوره نشی وتلی او زه هم نشم وتلی مریض یم په دغه حال باندی یمه . |
| 26      KM:    Yes, absolutely, no, we are not going to Kunar.  We will continue our | ۲۶- خ م : بلکل و. نه کنر ته خو نخو موز وتاسی په خپل وطن کی فعالیت کوو . او چه زمونږ ه هر خه کوو |

| | |
|---|---|
| action in our country.  Whatever we do, here are a lot of [opportunities].  We can place and explode bombs and fire missiles toward the airport. | هر څه دلته دير دی کولای شو چه مونږ او تاشی بمبونه هم کیږدو مزایل هم خوشی کړو دتیارو په میدان باند ی |
| 27    JW:    Yes | ۲۷- م : ښه |
| 28    KM:    And to hit them with. This will be our Jihad and this will make us the [money] for our expenses. | ۲۸- خ م : او پری ویولو همدغه کی زما او ستا سو جهاد دی او همدغه کی زمونږ او ستا سو خرڅی هم راوزی . |
| 29    JW:    What is the target of these people?  The fact that they fire missiles to the airport, do they want to shoot the foreigners [Westerners] or the local people? | ۲۹- م : ددی خلګو هدف څه شی دی ؟ کنه چه ددی خلګو هدف چه دوی په میدا ن هوای باندی میزایل خوشی کوی انګریزانو باندی خوشی کوی که نه په داخلی کسانو باند ی |
| 03:52<br>30    KM:    What they do is to kill the Americans.  The Americans are infidels and Jihad is allowed against them.  If we have to fire [the missiles] toward the airport, we will do it and if not the airport, wherever they are stationed we will fire at their base too. I mean we have to use the mines too.  God willing, we and you will keep doing our Jihad. | ۳۰- خ م : دا داسی کو ی چه امریکا نیان مطلب وژنی . امریکانیان کافر دی او جهاد پر ی کیدای شی او که طیارو میدا ن کی ور خوشی که هلته یی هم ورخوشی کوو ، او که طیاره میدان کی نوی او بل ځای کی هم قرار ګاه وسی ،هم ی پر ی اچو و مطلب دما بنوله لاری هم کار اخلو او انشاالله مونږ او تاسی به خپل جهاد کوو . |
| 31    JW:    Buddy!  I believe one hundred percent that these people, the Taliban, will stand up again and God willing, they will resist and these people will have to keep out of here and cannot remain here. | ۳۱- م : یاره زه خو سل په سلو کی تصمیم داسی لرم چه یاره دا خلک به بیرته راپور ته کیږدی دا طالبان دا بیرته راپور ته کیږی او انشاالله چه دا خلګ به له دی ملک نه به وزی او پاتی کیږی به نه . |
| 32    KM:    God willing, I will take you there and make you sit there. | ۳۲- خ م : او انشاالله زه به تا بوزمه او بیا به دی کینوه .ورسره ښنه سهی |
| 33-    JW:    Yes. | ۳۳- م : هه |
| 34-    KM:    God willing, when this operation is done, then I will take you and make you sit with them, with Habibzai and all the others. | ۳۴- خ م : : بس انشاالله چه دا کار وشی بیا زه تا بوزمه بیا دی ورسره کشینه وم د حبیب زی سره هغه سره او تولو سره به دی کینوم. |

| 35- JW: I have not exchanged two words with Habibzai yet. It was Abdul Rahman who told me to get in touch with you. If it were not for the recommendation of Abdul Rahman, I would not have seen you either. He told me that you are his man, you are fully active on their behalf and he said whatever I need or whatever problem I have to get in touch with you. I said, "OK, it is alright." | ۳۵- م : ما حبیب زی سره تراوسه پوری دوه خبری هم نه دی کری دوه خبری حبیب زی سره ما ته خو همغه عبدرحمان وویلی چه یاره نه ده سره وګوره ، که که عبدرحمان خبره نو ی تاسره هم نه لیدل هغه ما باند ی سپارښتن وکر چه دا زمونږ سری دی او دا مونږته پوره فعالیت کوی هر څه کار چه وی هر مشکل چه وی ده سره پتماس کی کیره ما ویلی ښه سهی ده |
|---|---|
| 36- KM: Yes. Right now, there is no need for weapon, we have weapon. God willing, if you want it, it is ready for you. | ۳۶- خ م : هه. اوس سلاح ته هم ضرورت نسته – سلاح شته او انشالاه که ته وغواری درته حاضره دی. |
| 37 JW: Now, if suddenly those people tell us that there is an urgency you should go there and here and start fighting in a county or something like this. I personally do not have even one bullet or machinegun, did you understand? What have you got? | ۳۷ م : او دفتاً که داسی یو کار پیښ شی کنه چه یار ه دفتاً که تا ځای بواری هغه خلک خیر راکی چه یاره تاسی فلانی ځای ته وخی یا بسمدانی ځای ته وخی ولسوالی باندی جنګ وکری یوشی وکری ما سره پخپله ما سره یو کار توس هم نشته ماشین هم نشته او کارتوس هم یوه شوی تا سره چه شته ؟ |
| <u>05:17</u><br>38- KM: I also have bullets with me, also have the rounds of rocket with me and I can say that I also have the bullets of Pika [PKM, a type of belt-fed machine gun] with me. I have everything in the box with me. Everyone keep them in a secret place and there is no need to show the place to others. God willing, whenever you go there, I will fill up the belts that go around your back and then you will leave with blessing. So we will attack if we could. If not, then we will hide ourselves and return home with no worry. We will have to attack them and then happily we will return. God willing, we will take it [the place] back from them, these are infidels and we have to eliminate them. Look, make sure that you don't let anyone know this. It is something only between the two of us. | ۳۸- خ م : کارتوس هم راسره شته دراکټ مرمی هم شته او داشی ووایه چه دپیکا مرمی هم شته ، هر څه ماسره بکس کی شته او هغه هر چا خپل خفیه ځای کی اینی دی او د هغی ځای ښودنه هم چاته پکار نوی زه به انشالله یو وخت چه ته کله تلی زه به ملابندونه ډک کرم او بیا به ځی پخیر . اوس حمله ده پری بی تو که وس مو ورسیدی هغه دی او که نه ځانونه به غلی کوو او بیغمه به خپل کورونه به راخو. حمله به پری کو او . موږ به بیرته خنی خوشحاله خونو انشاله چه نیسو یی خندی کفار دی دمنه یی بوزو. نو ګوره چه څوک درنه خبر نه شی دا روما وستا دوه په دوه خبره ده. |

| | |
|---|---|
| 39    JW:    You said something good. Is the government of Pakistan involved with these people? They (the government) must be supporting them because without their support, it is impossible to do this kind of operation. Not without their involvement. | 39- م : څه خبره ی وکړه.  هسی ددی خلګو سره د پاکستان دحکومت لاس هم شته دی کنه ؟ ملاتر خو به د هغو خلګو به ورسره وی ولی چه بغیر ملاتر نه خو دا کار هم نه کیږی چه د چا لاس ورسره نوی . |
| 40    KM:    Of course there is support but I cannot tell you who these people are. And it is our law that one should not share all the secrets with a friend. | ۴۰- م : ملاتر خو خا ما خا ورسره شته نو اوس خو مونږ تاته نفر نشو ښودلی او دا زموږ قانون دی چه ملګری ته به ټول رازونه نه وایی. |
| 41-    JW:    Buddy, you said something good. | ۴۱-م : یاره ښه خبره دی وکړ 41 |
| 42    KM:    And you will know when you go around with them, meet the groups and I take money from them for you, God willing. This. | ۴۲- خ م : او هغه وخت به درته معلوم شی چه کله وګر خیدلی دلو کی تاب شی وګرزیدی او پسی درته تری نه اخلم انشاالله چه دا. |
| 43    JW:    Hey! This is important point, by God, I am very poor guy, I swear that I am poor.  I swear that I don't have a source of two Rupees. I am sick and you know it.  It is God desire that we and you do the Jihad with these people then at least there should be something in it because without money nothing can be done. | ۴۳- م : هی مهم دا خبره ده چه زه واالله ډیر غریب هم یمه دخدای غریب یمه کنه او قسم دی یاره چه ددوی روپی درک هم نشته ، مریض هم یمه تا ته خو معلومه ده یعنی دا خو د خدای رضا ده چه چه دا مونږ او تاسو ی جهاد ته لیزود دی خلکو سره خو افلاجه یو څه شی خووی بی له پیسو خو یو شی هم نکیږی . |
| 44-    KM:    God willing, there is enough money in this to get you a car. When you do an attack, if successful then we will give you a lot of money.  We will not forget about you, there is money with us and you just prove your reliability. . | ۴۴- م : انشاالله چه پیسی به دومره پکی وی چه موټر به درته واخلو پکی دایو جنګ ووه دخیره راته چه کامیاب شوی پخیر تا نه به بیا ډیر ی پیسی دلاس درکواو پریزدو دی هسی نه.  پیسی مونګ کی شته خالی خان اعتباری کړه. |
| 45    JW:    You and Habibzai. You, Habibzai and Qari Abdul Rahman (all three) are together in this? | ۴۵ م : ستا هغه سره حبیب زی سره.  ستا او د حبیب زی او قاری عبدالرحمان خبره خو یوه دکنه |
| 46-    KM:    Abdul Rahman, Habibzai and our word are the same.  We are his people and with him we make our program. | ۴۶ خ م : عبدالرحمان د حبیب زی او زموږ یوه خبره ده دهمغی نفر یو او هغی سره مونږ پروګرام کوو. |

| | |
|---|---|
| 47- JW:     Look Khan Mohammed, Khan Mohammed!  If God does one thing, to make this people disappear, those red Westerners.  If God prevail us on this, then I am telling you that no one in the world will point their finger to us. | ۴۷ م : گوره خان محمده – خان محمده یو کار خدای وکړه چه دغه خلک له مخه لارشی دا سره انگریزان کنه دغه باندی مو خدای کامیاب کړی او بیا به درته ووایم چه به نړی کی څوک مونږ ه ته ګوته ونه نیسی چه یاره تاسی . |
| 48- KM:     God willing, we are trying.  If we are successful, I will get you a very high position. | ۴۸ خ م : انشاالله چه مونږ هم دا کوښښ کو و چه مونږ او تاسی کامیاب شو بیا به د یر ه غټه وظیفه درته ږکی واخلم دخیره خدای کامیاب کړلو بواری . |
| 49- JW:     No, the subject of position is not so important.  The important thing is the Jihad, These people out of our country, right.  It is also the resolution of these people that the Westerners should get out of our country, right? | ۴۹ م : یاره د وظیفی خبره هم دومره مهمه نده مهمه جهاد دی دمونږ او تاسی د ملک نه دغه خلگ کنه هو ددی خلگو تصمیم هم همدادی چه انگریزان زمونږ ملک نه ووخی |
| **07:42**<br>50- KM:     The point is we have a lot of friends here, I share my car and drive around this way and that way so I can be trusted.  I do have the car with me but we don't trust anyone.  We fired rockets at the county-chief office and they paid us three hundred thousand Rupees for one night program.  God willing, if you do a program, then I will take two or three hundred thousand for you too.  Will take it from them and you will keep the money. | ۵۰ خ م : مطلب مونږ اندیوال ډیر لرو کنه هغه پلو دی پلو موټر می اعتبار لپاره هغه د ی شریک کړی د ی هغه بلو دی پلو ګرځم یکی ځنه موټر راسره دی خو دا سی دی چه په چا اعتبار نلرم که نی هغه دی دراکټو دزی مووکړی په ولسوالی باندی ی او مونږ ته ی دری لکه روپی به یوشپه پروگرام باند ی راکړی انشاالله تا یو پروگرام وکړدوه دری لکه تاته هم ترې نه اخلم ، تسلیم به ی کړو او تا بیا به پیسی تا سره وی |
| 51- JW:     You have been there earlier, what was the final decision of these people, to get these things and keep it to keep it with you? | ۵۱ م : ته په هغه مخکی ورخوکی تلی وی تاته اخری دی خلکو څه فیصله وکړه چه دا شیان تاسی واخلی ا و پخای کیرده درسره؟ |
| 52- KM:     They told us that we should get the equipment, keep it with you and when we come there, we will make the program. | ۵۲- خ م : نوی هغوی خو مونګته داسی وویلی دی چه تاسی سامان واخلی او خان سره کیږدی چه مونږ کله درغلو |
| 53- JW:     Then will make the program. | ۵۳- م : بیا به پروگرام جروو. |
| 54- KM:     [They said] we will consult | ۵۴- خ م : پروگرام به بیا هلته مصلحت وکړو او |

7

| | |
|---|---|
| about the program and after the consultation we will set up the program. It would be according to their advice and I cannot do it unless they order me to do it. | مصلحت نه بعد به بیا پروگرام جوروودابه دهغوی دمشوری کاروی او ما ته چه هغوی امرونکری زه ی نشم کولای. |
| 55-    JW:    OK, I have got the thing, also have gotten the missiles and I have placed them ready.  Have you obtained the mines?  If not, get them because you promised that I have to get this thing and you will get that. | ۵۵-م : بنه ما شی اخیستی د ی مزایل می هم اخیستی دی تیار می برابر کر ی دی او تا ماینونه که پیدا کری او که نه وی کری پیدا کری خکه خو دا باند ی دا حواله کری و ه چه ته به داشی کوی او زه به داشی کوم. |
| 56-    KM:    I do have the mines and I do have a source. | ۵۶ خ م : ماسره ماینونه شته دی درک می پیدا کری ورته. |
| **09:01** 57-    JW:    OK, you have found it. Now if you want to keep this thing,  keep these things at home, I will tell you clearly that I cannot keep it in my home because my house is located near the road and I cannot keep it in my home.  Now, to keep this thing somewhere where only you and I know about it, it will be good. Or if you want to keep it in your home, it is good too. | ۵۷-م : بنه چه پیدا کری دی که داسی وای چه دا شیان به خپل کورکی اردو زه خو پاکه خبر درته کوم چه بخپل کورکی نشم ساتلی خکه زما کور خو سرک په سرباندی دی زه خو پخپل کورکی نشم سا تلی . نو اوس ددی شی پخای کولو لپاره چه دا سی خای کی پخای شی چه ما او تا ته معلوم وی هم دیره ښه خبره او که وای چه ته کورکی اردمه هم ښه خبره ده |
| 58-    KM:    No, we are not placing them in home.  There are many informers so I will not place them in home.  But there is a garden down there, you and I will take them there and place them there as long as no one know about them.  Will keep them there and when there is program, we will take them out of there. | ۵۸-خ م : نه کور کی نه کړد م شیطانان دی دیر نو کور کی خوی نږدم خو هلته لاندی یوه باغچه ده دی باغچه کی به یی بوسوکی کیردوما او تا چه څوک را باند ی پو نشی او هلته به ی خوندی کواو کله چه بیا پروگرام شو هم هغی خای نه به یی وباسو |
| 59-    JW:    This is also right.  Yes, when they come here. | ۵۹-م : دا هم سهی خبره ده او نو چه کله هغوی کله راغلی. |
| 60-    KM:    We are not placing them in home because there are hundred informers. | ۶۰ م : کور کی نکړدو کورکی سل شیطانان دی. |
| 61-    JW:    When they come here and instructed us to do so. | ۶۱-م : کله چه هغوی راغلل مونږته هدایت وکړ ی چه دا سی وکړو |
| 62-    KM:    Yes, right. | خ م : او کنه ۶۲ |

| | |
|---|---|
| 63-   JW:    We will do it accordingly. It is not that we. | ۶۳م : همغه سی به بیا وکروداسی خوندی کنهَ |
| 64-   KM:    We will take it there to our guest room and will place it in our guest room. | ۶۴ - خ م : هلته بی بوسو کوته ده زموزیه کوته کی به یی کیردو. |
| 65-   JW:    Now I have gotten these things for example: These are four missiles and cost eight thousand Rupees. Who should I get this from? | ۶۵م : او دغه شیان ما اخیستی دی ددی پیسی فرض مثال دا څلور مزایل اته زره روپی قیمت لری دازه اوس له چا نه واخلم |
| 66-   KM:    Sir, as soon as it happens. Right away, I have the money in my possession. | ۶۶خ م : دا خو صاحب چه څنګه دغه سو فوری پیسی ما سره شته دی. |
| 67-   JW:    Yes. | ۶۷م : َ شه. |
| 68-   KM:    This is your money and it is with me. We will put this thing together in a place and once those guys come here, I will get you twenty thousand instead of eight thousand from them. | ۶۸ - خ م : ستا پیسی دی ما سره دی ، دا شی به دواره سره پخای کرو او هغه خلک راشی زه درته دا اتوزرو پخای شل زره اخلم |
| **10:25**<br>69-   JW:    This is good. I, myself, am a poor man. I swear by God that I don't even have two Rupees. I borrowed this money from someone else and bought this thing with it, right. | ۶۹ - م : سهی خبره ده ، زه پخپله غریب سری یم والله که راسره دوه روپی هم یی دا پیسی دبل چا په قرض کری او داشی می پری اخیستی . کنه. |
| 70-   KM:    We will do something, this man is coming here and we will [stop] conversation so that this man will not hear us. | ۷۰ - خ م : او نور به داسی وکرو چه هلته سری هم روان دی نور به خبره دغه کوچه هغه سری یی و انوری |
| 71-   JW:    OK. | ۷۱ م : ښه |
| 72-   KM:    Yes, this dishonorable person is following us. Why is he sitting there? | ۷۲خ م : و دا بشرف هم مونږ تعقیب کوی چه دا څنګه ناست دی ؟ |
| 73-   JW:    Very good. We will do like this and this would be our word. Their important thing is and it is also their plan, the Westerners. It means to | ۷۳ خ م : آفرین ما او تا چه داسی وکرو چه زما او ستا همدا خبره شوه زه مهیمه خبره او ددوی پلان داسی دی دا انګریزان – د انګریزانو ختمه ول. |

| | | | |
|---|---|---|---|
| | | eliminate the Westerners. | |
| 74- | KM: | Yes, right. | ۷۴- خ م : هو کنه |
| 75- | JW: | To end up this government. To finish up this government and this Regime. | ۷۵- م : دغه دولت په حساب ختم کول دی کنه چه دغه دولت ختم شی چه دغه رژیم ختم شی . |
| 76- | KM: | It is only Jihad in our hearts. | ۷۶- خ م : بس زمونږ خاص جهاد په زره کی دی . |
| 77- | JW: | Very good. | ۷۷ م : ډیر اعلی |
| 78- | KM: | To get out the infidels from our country. | ۷۸ خ م : ً چه کافر دی دوطنه یی ورک کو. |
| 79- | JW: | Very good, you said a good thing. | م : ً ډیر اعلی. خه خبره دی وکړه. ۷۹ |
| 11:12 80- | KM: | If we don't get rid of infidels, this would be a great obstacle in our country.  We will continue our jihad, Jihad is allowed religiously against the infidels and if a Muslims is on their side and get shot, the hell with him.  That the Government. | ۸۰- خ م : که دا کافر ورک نه کرو دا ډیر لوی خند کیری پدی وطن کی او مونږ خپل جهاد کوو او کافربندی جهاد روادی او که مسلمان ی خواکی ولاړوی او ویوله هم بلام ورپسی هغی ته |
| 81- | JW: | If they are standing with infidels they will be hit. | ۸۱ م : چه د کافر په جمع کی والاړ وی خوبه لګیری |
| 82- | KM: | And if standing against [on the side of the] government and is hit then Jihad is allowed against them too. | ۸۲- خ م : او د حکومت پکی والاروی او ولګیره په هغی هم زمونږ جهاد دی |
| 83- | JW: | Will be hit and the hell with him. | ۸۳ م : لیګیری به او توره بلامی ورپسی |
| 84- | KM: | And God willing, we will prevail.  Habibzai, Abdulrahman and all of them will come after a few days. They called and said that they are coming.  God willing, we will discuss about it and have them meet you too. | ۸۴- خ م: او انشاالله چه کامیابیرو به ،حبیب زی دو عبدالرحمان دوی دا ټول له مخی نه به راځی ځو ورځی دیدد  ماته یی تیلفون کری ووچه مونږ راځو او انشاالله پدی باندی به په مصحلت  خبری هم وکرو او تا سره به مخ هم کرم . |
| 85- | JW: | As long as they meet me and I understand what they say. | ۸۵ م : چه ما سره مخ شی او یا دد ی په خبره پوشم |
| 86- | KM: | If I mean there. | ۸۶ خ م : او که چیرته مطلب |

| | |
|---|---|
| **11:55**<br>87-    JW:    Listen, this is an ordinary work, we will do a lot of things for them. Will do a lot of things. | ۸۷- م : هی دا خولا عادی کار دی ډیر کارونه به ورته نو – ډیر کارونه ورته کو. |
| 88-    KM:    I mean, if they do not come here and instruct us from there then we will continue our work. They are surely coming for the program. If they do not give us a task. If they don't give us a task, we cannot attack on our own. If we do it on our own, then no one will pay us money. | ۸۸- خ م : که مطلب مخ ته که را نه غلا کنه او همغی خای نه هدایت وکړهم مونږ او تا سو خپل کار کوو. خو په تګ باند ی حتماً هغوی پروګرام ته راخی – چه هغوی وظیفه ما نکړی هنه . وظیفه چه را نکړی خو هم مونږ پخپل سر تعرض نه کو – په دی کی موز پخپل سر وکو بیا پیسی موندر ته څوک نه را کوی . |
| 89-    JW:    This is right. | ۸۹ م : همدا سهی خبر هده٠ |
| 90-    KM:    If they allow us then you and us will go for the money. | ۹۰ خ م : چه هغو ی اجازه ورکری بیا موندر او تاسو به پیسو پسی ورشو. |
| **12:25**<br>91-    JW:    [Speaking with UM1] Peace be upon you. Welcome, how are you? Is everything alright? | ۹۱- م : وعلیکم اسلام پخیر راغلی خیریت د ی ستری مشی قراری ده. ( دتلفون جواب) |
| 92-    JW:    I am going to urinate. I am going to pee only. | ۹۲- م : زه لږ تشی متیازی کومه ښه خالی رګ وهمه |
| 93-    KM:    Come quick, because. | ۹۳- خ م : ژرراخه چه |
| 94-    JW:    All right. Hold on we will go both together [Pause 12:50-14:06] | ۹۴- م  سهی شو ه یو خای خو وار . وکوه دواره یوخای خو (وقفه) |
| 95-    UM1:  Is it off? | ۹۵- خ م : ګل شو ؟ |
| 96-    JW:    It is off. | ۹۶- م : ګل شو . |
| 97-    UM1:  Is it off, now you cannot reverse the voice? | ۹۷- خ م : س یی بیرته نشی را اورلی – . |
| 98-    JW:    No, you cannot. Should I press this button or this one? | ۹۸- م : نه بیرته یی نشی کولای دغه بتن ووهم که دغه بتن ووهم |
| 99-    UM1:  Why? | ۹۹-خ م : ولی |
| 100-    JW:    To turn it off completely. | ۱۰۰ م : څه سوچ بند شی دغه که دغه |

| | |
|---|---|
| This one or that one? | |
| **14:17**<br>101- UM1: Which one did they show you? | ۱۰۱-خ م : تا ته یی کوم یوښو دلی وو – |
| 102- JW: They told me this button, I think. | ۱۰۲-م : دغه بتنه لکه چه راته ویلی وه |
| 103- UM1: It is not off U/I Is it taking picture again? | ۱۰۳-خ م : بیا بند نشو عکس خو به نه اخلی |
| 104- JW: No it is not taking pictures. Let us go. It is off. This button is pressed in. | ۱۰۴-م : نه عکس نه اخلی را خه چه نه ښته تبند شوی دی دغه بتن باند بند شوی دی دغه بیر ته زورکری دی |
| 105- UM1: So then turn it off. | ۱۰۵-م : خو بند ی کری کنه |
| 106- JW: I did turn it off. | ۱۰۶ : بند می کر |
| 107- UM1: It is on, it is on. | ۱۰۷ خ م : دا خو چالان دی که نه چا لان دی |
| 108- JW: It just turns it but not recording it. | ۱۰۸-م : دا هسی هغه اروی خو ثبت نکوی |
| 109- UM1: No, not recording, to be turned off. | ۱۰۹-م :ٔ نه نه ثبت نه چه بند سی |
| 110- JW: (Inaudible) | ۱۱۰-م : : نه اوریدل کیری۱۱۰ |
| 111- UM1: (Inaudible) | ۱۱۱ خ م :ٔ ۰۰۰۰۰ |
| 112- JW: U/I | ۱۱۲–م :ٔ ۰۰۰۰۰۰ |
| **14:32**<br>113- UM1: It will not take picture? | ۱۱۳-خ م : عکس خو به نه اخلی ؟ |
| 114- JW: U/I , Did you understand. With this button even if it is in your pocket, it will not record. | ۱۱۴-م :ٔ ورکومیٔ پوشویٔ دا پتنٔ نو ر چه بیا جیبو کی دی پروت هم وسیری ثبت بیا نکوی |
| **14:50**<br>115- UM1: This is on. No, not to record but to stop it. | ۱۱۵–خ م :ٔ دا خو چالان دس. نه ثبت نه چه بند سی. |
| 116- JW: It is active but not | ۱۱۶- م : |

| English | |
|---|---|
| recording. This thing U/I they are taking it by them self U/I told me that while you are recording press this button down it will (U/I). | دا هسې فعال دی ثبت نه کوي. دا شۍ ّ هغوی خان سره به خپل گرځوي ا ته دی ویلی چه بیا ثبت وکوه دا بتن به پری را شکته کړی دا بیا زرورکوي |
| **14:56**<br>117- UM1: No, no not to record but to stop. | ۱۱۷-م : نه٬ نه ثبت نه چه بند سی. |
| 118- JW: All right, did you understand? | ۱۱۸-: پو شوی که نه |
| 119- UM1: U/I, which one is the stop? | ۱۱۹- خ م : ّ ستاب په کو م باند کیږی . |
| 120- JW: With this one, when you push it, didn't you understand. Is this the one to be pushed or that one? | ۱۲۰- م : په دی باند ی ، دا چه زور کری پوه نشوی چه او س پدی کی دغه زورکوي ، که دا زورکوي |
| **16:48**<br>121- UM1: If it is not all right so when you (U/I) again. | ۱۲۱- خ م : که سهی نوی چه بیا بیرته یی دا ّ |
| 122- JW: (U/I) It is OK. Let's sit, both of us. [Other people speaking] | ۱۲۲<br>- م : ّ دواره سهی دی ، راخه.... بس کینی دواره هم هلته لار سو. (نور خلګ خبری کوي) |
| **17:00:-19:00**<br>[JW: & UM1 Whispering to each other or silently walking together.] | ۱۶:۰۰-۱۹:۰۰<br>( نم او م کرار کرار خبری کوی هو ټک کوي) |
| **19:04**<br>123- JW: Peace be upon you, Haji Saheb. Are you all right? It is mercy of god. Are friends and buddies well? God willing, I accomplished that thing. Do something, are you at your place? I was thinking to bring this thing there. Which place? What time should I come to Dago School? OK, I will stand by the school of Dago. If I come there around six, is it OK? Peace be upon you. About that thing. Haji Saheb, hello. (U/I) (19:55) | ۱۲۳- م : سلام علیکم حاجی صاحب ښنه یی ،ډالله احسان دی . ملګر په اندیوالاه ښنه دی دا خو هغه شی انشالله چه سره ورسوکنه ، او دا سی وکره ته په خای که نه ، ما ویلی شی ،شی شی هغه شی دروزم که نه ؟ کوم خای ته ؟ ښنه زه به ښو بجی درشم دا ګومکتب ته ؟ ښنه زه به ډاکومکتب سره ودریزم که نه تقریباً داسی ووایه چه شپږ بجی درشم سنګه . او سلام علیکم او هغه شی که نه ، حاجی صاحب ،هلو ........ |
| **20:00-23:00** (Silent walk) | ( ۲۰:۰۰-۲۳:۰۰ خاموشه ټک ) |
| **23:02**<br>124- JW: I am not hitting this button the entire conversation will be [erased]. | ۱۲۴-م : دغه بتن ی ونه وهمه تول خبری به ورانی شی. |

13

| | |
|---|---|
| **23:05-26:08**<br>125- [Silently walking or whispering conversation between (UM1) and JW nothing is audible] | ۱۲۵-م   (په تګ کی خاموشه خبری) |
| **26:10**<br>126- JW:   Hey boy! Climb up, climb both of you there, you sons of unbeliever. Hey … did the doctor come in? | ۱۲۶--م : وهلکه وروخیژه دروخیژه دبی ایمانه بچیه هی نیکیه داکټر صاحب خو نودراغلی |
| 127- Child: Where? | ۱۲۷-ماشوم : کوملته |
| 128- JW:   Here. | ۱۲۸-م:  دلته |
| 129- Child: (Inaudible) | ۱۲۹- ماشوم٠٠٠٠٠٠٠٠ |
| 130- JW:   Teacher how are you, are well? | ۱۳۰-م: معلم څنګه یی جوری طبعت د ی . |
| 131- Teacher: How are you, are well, do you feel OK? | معلم :پخیر څنګه یی جور طبعت دی . ۱۳۱- |
| **27:08**<br>132- JW:   It is Kalai, Kalai. Wasn't this Kalai? | ۱۳۲- م: کلی ده  کلی.  کلی نه وه دا؟ |
| 133- UM1: No, It was the little Kalai. | ۱۳۳- + : نه دا وروکی کلی وه. |
| 134- UM1: My friend had slaughtered a sheep and he eat a lot of meat. I told him buddy, when you go home tonight, they will ask you what did you eat that you look so good? I told him when you open up your belt of trouser, do like this. After I left, he said to Inayat that this person is saying indecent things. Like take out your trouser and so. Why is he saying these things? | ۱۳۴- + هغه اندیوال  هلته پسه حلال کری واو غوشه یی ډیره  خوره له ماویله یاره بیګاه ته چه ولاری کورکی به درته وایی چه څه غذای خوره له څه داسی شه سوی یی.  ماویله بیګاته پرتوګاش پر پرتوګاش خلاص کره.  او کله چه زه ئللی وم بیا یی عنایت ته ویلی وه ولزوی دی مر داسری خو خوشی خوشی خبری کوی. پرتوګ دی ولاسه خه کفر ته روان دی. |
| **28:24**<br>135- JW:   Okay, if you are going, then good bye.  You are going over there tomorrow.  Make sure not to forget the spices. The spices for cooking.  There is a wedding in Peshawar we will go there.  It is Ihsan's brother wedding after twelve | ۱۳۵-م: هی چه خی مخ ته دی خه.  صبا خو هلته خی که نه چه هغه دی دیاده ونه وزی مساله – هغه ددیګ مساله...... – خم پیشاورته هلته یو واده دی چه لار شو – د احسان دورور واده دی – دولس ورخی بعده.  تر موس راواخله هلکه. |

| | |
|---|---|
| days. Boy, bring the thermos here. | |
| 136-    Child: Yes, he is sitting there. | ۱۳۶- ماشوم: صحی ده اوس ناست دی.۱۳۶ - |
| 137-    Doctor: Peace be upon you. Jaweed! See you are not on time. <br> <u>30:00</u> | ۱۳۷- داکتر : وعلیکم – صحت دی خه دی.  جلات خانه گوره پر وعده نه یی برابر . |
| 138-    JW:    To tell you the truth I am not on time. There was a person I got busy with him. Then I said to my friend and my son to stay there because I have promised the doctor. I came here, it is not five yet. It is four and half. | ۱۳۸- م:  والاه چه رشتیا هم په وعده برابر نه شومه – ؛ <br> نه دلته یو نفر راغلی دهغه سره ومه بیا می ملگری او بچی ته وبله چه دلته کشینه ما داکتر صاحب سره وعده کری ده.  ما خان زر برابر که پنخه بجی لا نه دی – خلورنیمی بجی دی. |
| 139-    Doctor: You said three to five and you said that you will be here till five. | ۱۳۹- داکتر : تاویل دری نه تر پنخو پوری – تاویل تر پنخو پور ی یمه. |
| 140-    JW:    How are things? | ۱۴۰- م: خه حال دی نور . |
| 141-    Doctor: Good, how are you? | ۱۴۱- داکتر : شکر دی ته خنگه یی. |
| 142-    JW:    Is your health good, is everything alright. May God bless you. | ۱۴۲-م : صحت مو شه دی قراری ده خدای مو وبخشه. |
| 143-    Doctor: (U/I) You have to turn around there. Whichever way you take, it is closed. You have to turn around the castle of Farooq. If not, it will take you one hour more. I am not familiar here and I have not been here for years. (U/I). | ۱۴۳-.....داکتر : <br> ... داتا بیرته هغهسی به بیرته را تابیزی.  چه په هره لار شی بای لار بنده وی.  اول خو داد فاروق کلا ده دهغی نه به داتابیزی – که تری نه سی راتاو هم یئ ساعت اوزدیزی.  زه خو دلته نابلده یم دیر کلونه دلته نه یم راغلی ..... |
| <u>31:10</u> <br> 144-    Doctor    (The doctor speaks to Jaweed, a woman and his children): This medicine is about four months old. Your illness is the same and the medicine is also almost the same. I prescribed you some kind of powder that cannot be found here. Bring her the medicine soon and eat the tablets of the blood pressure and your pressure will be reduced. | ۱۴۴- ( داکتر دجلات دهغه د خانمی او بچیو سره ددواو په باره کی خبری کوی) او وایی چه داخو تقریبا خلور میاشته پر تیر سوی دی.  داکتر ورته وایی چه تکلیف دی تقریبا همغه دی او تقریبا دواوی هم هغه شی دی او یو پودر می <br> درته <br> ولیکل چه هغه دلته پیداکیزی هم نه.  دوا زر ورته راوره دفشار گولی وخره فشار کشته کیزی. |
| 145-    JW:    Did you see the tablets I brought? Bring in the tablets that I brought last night. They were big tablets. | ۱۴۵- م: هغه گلی گانی دی ولیدی.  هغه گولی راوره چه پسگا ما راوره .  غتی گولی وی. – دمور گولی دی خه شوی. |

| | |
|---|---|
| What happened to your mother tablets? | |
| 146-   UF1:   They were in a plastic in this closet. | ۱۴۶- شخه: هغه په پلاستک کی وه په دغه الماری کی دی. |
| **34:30**<br>147-   Doctor: I have already written this. Don't bring any more of this. How did you swallowed this?  Just use a clean needle to make a hole in here.  Use one in the morning and one at night.  I have also prescribed Diazepam (tablets) do not use it now because your sleep is excessive now.  Do not use a nail to make a hole because nail is dirty.  Make a hole here and place it under your tongue and use it when you feel dizzy.  Jaweed!  Make sure that no one get hurt with this needle take it away.  The tablets I prescribed are not from the same family but they are more stronger.  These are tablets for strength if used, it is useful and she needs it too.  The one I prescribed are tablets do not bring it and these are capsules which need a hole.  When needed place two in your mouth and don't use it if not needed.  Make sure that these are to lower down pressure.  Bring this medicine soon to lower down the pressure.  Don't use salt and cooking oil. | ۱۴۷- داکتر: شه داما درته لیکلی دی بیا دا نور مه راوره. دادی خه رقم وخوره؟ هو په یو پاکه ستن باندی سوری کی او زبی لاندی به یی کیزی. صبا او بیگاه یوه دانه استعماله وه. دیاز پم می هم ورته لیکلی ده. دیازپیم مه خوره خوب دی اوس هم دیر دی. په میخ یی مه سوری کوی میخ چتل دی. دغه سوری ورکه او دزبی لاندی کشیزده. چه کله دی سر وګرزیده. په داستن بندی خوک خوز نه سی. جلاته هغه لیری که. ما چه کم ګولی ورته لیکلی دی هغه ددی کورنی نه دی خو هغه لز شه دی. د قوت ګولی دی کی وخوری فایده کوی او ضرورت هم ورته شته. داتر خو مه ور کوی – داخو د قوت ګولی دی. هغه چه می درته دغه کړی دی هغه مه راوره. ما تابلیتونه لیکلی دی او دا کپسول دی او دا سوری کول غواری چه دا خلاصیده بیا دوه دانی نور خولی کی ایزده او که په تکلیف نه وی دیر بیایی مه خوره. پام دی مو وی چه دا فشار ټیته وی. ګوره دادوا زر راوره فشار شه کیزی او ته به دیر پر هیز کوی د مالګی او غورو ځخه. |
| **38:07**<br>148-   JW:   Doctor, I hope the price of these tablets will not be too high? | ۱۴۸- م : داکتر صاحب ددی ګولی قیمت خو به زیات نه وی؟ |
| 149-   Doctor:  These tablets will cost two hundred Rupees.  This is ten Rupees per package and that is forty five and fifty Rupees per thirty piece | ۱۴۹- داکتر : دغه یو ګولی دوه سوه روپی کیزی. داخو لس روپی یو پاکت دی او دغه به پنځه خلویشت پنځوس روپی باندی دیش دانی دی. |
| 150-   JW:   I mean altogether  it will cost not more than four hundred Rupees? | ۱۵۰- م : مطلب تول خلور سوه روپی کیزی کنه. |
| 151-   Doctor: No, not more than three hundred. | ۱۵۱- داکتر : نه دری سوه نه اضافه نه کیزی |
| 152-   JW:   Doctor, tea? | ۱۵۲- م : داکتر صاحب چای |

| | |
|---|---|
| 153-    Doctor: I am going out.  Thank you I already had tea.  Good bye. | ۱۵۳- داکتر : زه درنه خمه – کور دی ودان – جای می شکلی دی – دخدای په امان. |
| 154-    JW:      Should I walk with you?  No, it is impossible.  You are very kind and may God reward you for your coming here. | ۱۵۴- م : زه در سره ووزم - هیخ امکان نه لری. تکلیف دی خدای اجر درته درکری  دیر مهربانی. |
| **39:15**<br>155-    Doctor: No, I am just walking this way and will be careful.  I have not practiced for three or four years in a clinic.  Good bye. | ۱۵۵- داکتر : نه زه خو په دغه لار خم – او فهم به کوم.  ما دا دری خلور کاله کاروبار نه دی کری چه معاینه خانه می کری وی.  خدای په امان |
| **39:30**  [JW: Speaking with his children]<br><br>156-    JW:      Khadija!  Go bring that tablets.  Where is your mother?  Take this money for the medicine.  No, no, I am going out.  Take two hundred Rupees from my coat. | ۱۵۶- م : د هلکوانو سره خبری.  خدیجی ورسه هغه گولی راوره.  موردی خه شوه.  دغه پیسه واخله ددوا دپاره.  نه نه زه روان یمه. زه په درخه ولارسم. <br>44:38-48:15 |
| **41:40-43:25**<br>157-    JW:      [Silent walk and the noise of children in the background]. | ۱۵۷- م : خاموشه تگ – د هلکوان زغ. |
| **43:27**<br>158-    JW:      Peace be on you [laughing] No one pray while working for someone. | ۱۵۸- م : کاکو جانه سلام  (خندا) په مزدوری کی چا لمونځ کری دی. |
| 159-    UM2:  (Inaudible) | ۱۵۹- ++ : .......... |
| 160-    JW:      [Greeting a group of people on the way, asking about the family members and joking about a person any saying when a woman sees him she thinks who will be the lucky woman to marry him but when they know him they stay away from him. [Laugh].  Then he tell them that he had a patient in home with blood pressure and the doctor came to prescribe medicine and he has to get the medicine.  The group tells him to come in and have tea with them and he says no, thank you. Then he walks away.] | ۱۶۰- م : { د یو دله خلکو سره په لار کی سلام  او روغبر کوی- دکورنیو دخلګو معلومات کوی وروسته تر جور فرسانی توکی کوی او خاندی – بیا دی ورته وایی چه زه په کورکی مریض لرم – داکتر نسخه ورکره ره به دوا ورته راورم- هغه خلگ ره ته دچایو ست کوی بیا دی دخدای په امانی کوی.} <br>(_38:44 |

| | |
|---|---|
| **48:20-55:00**<br>161-  JW:  [Mostly walking silently. Saying hello to passers by.  Telling another person, "How are you?  Did you come earlier?  You mother fucker you left your brother alone and you are here".  Telling another person by the name of Abdul Majid, "How are you call me two times.  Then whispering with this person and nothing from that conversation is audible.  Then telling another person, "Don't separate it, bring it here, did you finish work?"  Then silent walk and once in a while whispering slowly.  Children voices and traffic noises. At **55:00** walking stops.] | ۱۶۱- م<br>پیاده تگ – قراری ده . سابق هم راغلی یی . کسماده لالا دی دی پری ایشی دی ته راغلی بی.  خامو شه تگ -- دلته یی راوره  کار مو خلاص که – جدا کوه مه – خاموشه تگ او کرار خبری.  عبدالمجیده سلام عییکم سبری مسی – دوه واره بیا زنگ داوواهه.  کداد خبری – د موټرانو زغ – د کوچینیانو زغ.  تگ بس سو.<br>(۴۸:۲۰-۵۵:۰۰) |
| **55:02-01:15:00**<br>162-  JW:  [Entered a place like a pharmacy.  Many people voices and he says hello to many people, exchange greetings.  Then speaks about the prescription of his mother.  The pharmacist tells him that he does not have one item in the prescription and send a boy to get it from another pharmacy.  The pharmacist instructs him how the tablets and the rest of the medicine should be used, how many time a day.  They speak about the medicine and its effect on the patient.  They speak about the price, he offered them 250 Rupees.  Many other customers walk in and speak about the prescription, exchange greetings with the present group.  Voices of children, cars blowing horns, The sound of radio music, JW: telling a boy, "don't mess around with this bicycle, what happens if you get hurt".  The boy returns and reports that the other pharmacy also do not have this item. JW: tells someone, "I swear that I did not recognize you". JW: tells someone, "doctor, oh doctor, do you have a pen?  Write down the name of Dawood Khan and Muslim, I have the names of everyone.  He will call Kabul tomorrow". | ۱۶۲- م :  دواخانی ته راخی هلته دنورو خلگو سر ه سالم علیک کوی او روغبر کوی.  دنسخی ددوا په باره کی خبری کوی.  دوا خانه والا ورته وایی چه دایو قسم دوا نه لرم او هغه نور دوه رقمه لرم.  بیا هلک لیزی چه دبلی دواخانی خخه هغه دوا راوری.  بیا وروسته هلک وایی چه دبلی دواخانی هم دغه دوا نه درلوده.  بیا ددوا او دهغه استعمال په باره کی کمپودر هدایت ورکوی.  یو خلک ته وایی چه په بایسکل غرض مه لره که خوز سوی تاوان تون یه دی په چاوی.  د فشار په باره کی خبری.  نور مراجعین راخی او روغبر او سلام علیک کوی.  د کوچینیانو زغ – دموټرانو زغ او د خلگو خبری.  بیا داکتر ته وایی چه قلم درخه سته ولیکه داوی خان او مسلم بیا ورته وایی چه زه دتولو نومونه لرم.  بل چاته وایی /ه په واله نه می و پیزندی.  او بیا وایی چه صباح به کابل ته تلفون کوی.  دکوچینیانو ناری بیا وواخانی راوزی او تگ شروع کوی. (۵۵:۰۲-۰۱:۱۵:۰۰)<br><br><br><br><br><br>(۰۱:۱۵:۰۱-۰۱:۲۸:۲۵) (پیاده تگ ) |

| | |
|---|---|
| At<br><br>(**01:15:10** JW: starts to walk again.) | |
| **01:15:10-01:28:25**<br>163-    JW:    [Mostly silently walking. Singing by himself for two minutes. Asking a boy, "Oh boy where is your father?"  Mostly silent walk. Exchanging greeting with someone by the name of Mansoor and three others passers by.  One person offers him tea and he says, "No, thank you". Then silent walk most of the time. | ۱۶۳- م : ديره حصه خاموشه تگ – او وری دقيقی دخانه سره غزلی. بيا يو خلک ته وايی هو هلکه پلار دی چرته دی؟ - دکوچنيانو زغ او دموترانو زغ. منصور صاحب سالم عليکم بيا پر لاری ددو نورو نفريو سره سلام عليک. نور توله خاموشه تک.<br>(۰۱:۱۵:۱۰-۰۱:۲۸:۲۵) |
| **01:28:26**<br>164-    JW:    Peace be upon you.  How are things?  Is everything alright? [Whispering and inaudible] We did speak. | ۱۶۴- م : سلاو عليکم. قراری ده. خه حال دی؟ خبری خو وسوی دغه بتن. (۰۱:۲۸:۲۶) |
| 165-    HL:    For how long? | ۱۶۵- +++ : خو نه وخت؟ |
| 166-    JW:    For about fifteen minutes and this is the button I pressed.<br><br>(**End of conversation)**<br>**01:29:16** | ۱۶۶- م : داسی يو پنخه لس دقيقی. (د خبرو پای ) (۰۱:۲۹:۱۶)<br><br>وه روپی راواخله<br>(دخبرو پای)    (۰۱:۲۹:۱۶) |