UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Criminal Case No. 06-357 (CKK)** |
| | : | |
| **KHAN MOHAMMED** | : | |

### SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE GOVERNMENT'S EXPERT TESTIMONY

The United States, by and through Matthew Stiglitz and Julius Rothstein, Trial Attorneys with the U.S. Department of Justice, Criminal Division, Narcotic and Dangerous Drug Section, respectfully submits this supplemental opposition as suggested by the Court to Defendant's Motion to Exclude Government's Expert Testimony. We incorporate the Government's original opposition and any argument or factual representation made by the government during any hearing on this matter.

At issue in this supplemental filing are the topics that the government intends to elicit from its drug expert, Associate Special Agent in Charge Edward Follis of the Drug Enforcement Administration (DEA). It should be noted that Agent Follis remains the highest ranking DEA Special Agent ever to have supervised the DEA operations in the country of Afghanistan. He served a full one-year tour there before he was promoted to his eventual current position in the Los Angeles Division Office. Based upon his knowledge, experience, and participation in investigations in Afghanistan, he is prepared to testify regarding the following topics at trial: (1) the manner of distribution of narcotics in the Afghanistan, including the illegal distribution of heroin and morphine

based raw resources, which are further refined into heroin; (2) the exportation of heroin to countries outside Afghanistan; (3) the composition of typical heroin distribution organizations, and the different roles in such organizations; (4) the wholesale distribution of illegal narcotics; (5) the processing and packaging of narcotics, including different packaging materials, the use of additives, the preparation of narcotics for sale, the use of tools, the use of bazaars for the distribution of raw and finished products; the use of labs and storehouses to process and safeguard the finished product; (6) the cost of narcotics – both wholesale and retail, profits, distribution of profits, and record keeping; (7) the terminology of narcotics trafficking in Afghanistan, including codes, special vocabulary, weights; (8) the purchase of narcotics by users and their use; (9) the methodology of narcotics investigations in Afghanistan, including the use of undercover officers, foreign agencies, military and other special operations, informants, confidential sources, observation posts, surveillance, search warrants, audio and video surveillance; (10) the role the Taliban has in supporting, safeguarding drug trafficking and the support of the Taliban by the drug traffickers, and how that relationship affects narcotics investigations in Afghanistan; and (11) procedures used by law enforcement for handling and safeguarding narcotics evidence, including chain of custody. The defendant has acknowledged that some of these topics (topics 6, 7, and 11)are relevant, helpful and proper for an expert to testify. Therefore, the Court should deny the defendant's proposed remedy to exclude the Government from calling Agent Follis as an expert witness. The other topics are proper for expert testimony, and we will highlight why the Court should allow the expert to testify to questions in those areas and thereby deny the defendant's request to limit the expert's testimony.

Expert testimony is admissible if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Furthermore, as long as the probative value of the

proposed expert testimony would not be "substantially outweighed by the danger of unfair prejudice," such expert testimony is properly admissible. Fed. R. Evid. 403. See generally United States v. Dunn, 846 F.2d 761, 763 (D.C. Cir. 1988)(rejecting claim that a police officer's expert testimony relating to illegal narcotics operations was overly prejudicial and cumulative under Fed. R. Evid. 403). In addition, based on Agent Follis' testimony and the facts shown in this particular narcotics prosecution, the government will argue to the jury that it should infer that defendant Mohammed intended to commit the two crimes charged. Id. at 762 (allowing police detective to explain to the jury the modus operandi of drug dealers and observing that all "expert evidence assists jurors in analyzing and drawing inferences from other evidence; in so doing it may support inferences as to ultimate intent"). Intent is an element to both charged crimes in the current superseding indictment. For a conviction in Count One, the government must prove and the jury must find that the defendant "**intended or knew** the controlled substance would be unlawfully imported into the United States." Joint Proposed Jury Instructions, p.4 (March 26, 2008) (emphasis added). For a conviction in Count Two, the government must prove and the jury must find that the defendant "**knew or intended** to provide something of pecuniary value, either directly or indirectly, to any person or organization that has either engaged in or is engaging in terrorist activity or terrorism." Joint Proposed Jury Instructions, p.6 (March 26, 2008) (emphasis added). As we will demonstrate, the probative value of that expert testimony will not be "substantially outweighed" by any "unfair prejudice."

TOPIC 1: The manner of distribution of narcotics in the Afghanistan, including the illegal distribution of heroin and morphine based raw resources, which are further refined into heroin

The Court of Appeals for the District of Columbia Circuit has "repeatedly allowed expert

testimony concerning the modus operandi of individuals involved in the drug trade." United States v. Williams, 980 F.2d 1463, 1466 (D.C. Cir. 1992). Courts have found that illegal domestic drug operations are "unfamiliar" to the average juror. United States v. Dunn, supra, 846 F.2d at 763. In this case, all operations, investigations and criminal conduct occurred in a foreign country which surely the average juror would have no knowledge. In fact, most prosecutors, law enforcement officers, and Courts would not have knowledge about the modus operandi of heroin distribution organizations in Afghanistan. In short, expert testimony concerning the general modus operandi of these heroin and terrorist operations and, specifically, why and for what purpose raw opium or morphine based products are sold and how they are used to refine into more valuable (but less stable) heroin would be extremely helpful to the juror especially because raw materials such as opium was discussed, bought and sold by the defendant. The confidential source (CS) and the defendant also discussed how opium could be converted into heroin and sold for increased profits. Furthermore, the jurors will see in videos and hear discussion of the CS and defendant discuss the appearance of raw opium, the measuring and packaging of opium and heroin which in distribution schemes, all of which are "relevant to provide context to the jury in evaluating the offenses charged." United States v. Clarke, 24 F.3d 257, 269 (D.C. Cir. 1994).

TOPIC 2: The exportation of heroin to countries outside Afghanistan

As mentioned in the Government's Opposition to Defendant's Motion to Exclude Testimony of Drug Expert [ECF Document 44], the use of an expert to testify about the exportation of drugs out of the country of origin and the importation into the United States is proper testimony. United States v. Martinez, 476 F.3d 961, 967 (D.C. Cir. 2007). This topic is also an element the government must prove and the jury must find with respect to Count One. Although the government plans to

4

introduce evidence of recorded conversations where the defendant and the CS discuss the exportation of the drugs to other countries, including the United States, Agent Follis will only discuss in general the trafficking routes of heroin and opium outside of Afghanistan, just as the expert did in Martinez. Therefore, it is not duplicative of other expected evidence and testimony in this case and is proper and relevant. Id. ("Expert testimony about general trafficking routes does not duplicate factual testimony indicating that Martinez's particular conspiracy imported cocaine into the United States")(emphasis in original).

TOPIC 3: The composition of typical heroin distribution organizations, and the different roles in such organizations.

We seek to ask Agent Follis to describe the various roles performed in narcotics transactions in Afghanistan. This type of drug expert testimony is typically accepted in federal courts. See, e.g., United States v. White, 116 F.3d 903, 922 (D.C. Cir.), cert. denied, 522 U.S. 960 (1997) (Court of Appeals has "repeatedly held" that expert may opine regarding modus operandi of drug dealers); United States v. Clarke, 24 F.3d 257, 269 (D.C. Cir. 1994) ("The description of a typical drug network was relevant to provide context to the jury in evaluating the offenses charged"); United States v. Boney, 977 F.2d 624 (D.C. Cir. 1992) (expert testimony regarding roles of drug dealers). The fact that these networks and organizations operate in Afghanistan favor admission of this testimony. In this case although the defendant distributed opium and heroin, his role was more of a broker or middle man. In United States v. Lam Kwong-Wah, 924 F.2d 298, 299- 300 (D.C. Cir. 1991), defendant Lam was charged with one count of conspiracy to distribute and possess with intent to distribute heroin and one count of attempted distribution of heroin arising from his role in selling approximately 45 pounds of cornstarch, which had been represented to be heroin, to an undercover Special Agent of the Federal Bureau of Investigations. Defendant Lam "played a relatively small

5

supporting role" and was present when the cornstarch transaction took place. Id. at 300. To explain and prove that defendant Lam possessed the requisite criminal intent, the government properly presented expert testimony concerning the modus operandi of drug traffickers, in addition to other expert testimony. Id. Therefore, Agent Follis' testimony on this topic would also be permissible and relevant for the presentation of this case.

TOPICS 4 and 5: The wholesale distribution of illegal narcotics.  The processing and packaging of narcotics, including different packaging materials, the use of additives, the preparation of narcotics for sale, the use of tools, the use of bazaars for the distribution of raw and finished products; the use of labs and storehouses to process and safeguard the finished product

The facts of this case present wholesale undercover purchases of 11 kilograms of opium and 2 kilograms of heroin. Therefore, it is a relevant topic of discussion for the expert. To the average juror, 11 Seyrs (kilos) and 2 kilograms of heroin may mean very little. An expert can put that in perspective with regards to the value both in Afghanistan and the United States, how many dosages would result from that quantity, and how wholesale buyers and sellers interact differently due to the dangerous and clandestine nature of wholesale illegal drugs in Afghanistan. See Clark, supra, 24 F.3d at 269 ("The value of the drugs was relevant to the question of whether the defendants possessed the drugs with the intent to distribute them."); United States v. Watson, 171 F.3d 695, 703 (D.C. Cir. 1999) (approving expert testimony regarding "dosage units"); United States v. Johnson, 952 F.2d 1407 (D.C. Cir. 1992) (Although reversed on other grounds and the we would not seek to ask the same hypothetical questions, the District Court allowed expert allowed to testify that it would be unlikely for a drug dealer to let someone not involved in the operation near the drugs). The Topic 5 matters are common practices among Afghan drug dealers. United States v. Conyers, 118 F.3d 755, 758 (D.C. Cir. 1997) ("An expert witness may testify about an established practice among individuals involved in the drug trade."). All of which have relevance to the evidence being

presented in this case. Processing and packaging evidence will be presented through the fact witnesses, such as the conversion of opium to heroin powder. The jurors will see how raw opium is "processed" and made into pads for wholesale distribution. They will hear discussions where the CS and the defendant speak about how the opium will be made into heroin. Additives and fake opium will also be discussed and shown through the defendant's own recorded statements to the opium dealer as well as through the testimony of the chemist who will confirm the defendant's concerns that he was not getting the best (and in fact bought some fake) opium. Tools, labs, scales, special markings and stamps and bazaars are also part of the factual presentation of this case. These are matters outside the average juror's knowledge and each topic has been approved by federal courts for an expert to provide testimony. The Court in Dunn discussed many of these matters:

> Green's theory would seem to bar testimony as to modus operandi, which in fact is commonly admitted. Although the appellate courts approving such admission have not mentioned Rule 704(b), the stream of favorable decisions would be puzzling if Green's thesis were valid. See United States v. Espinosa, 827 F.2d 604, 611-13 (9th Cir.1987) (expert testifies that evidence indicates use of defendant's apartment as "stash pad" for money and narcotics); United States v. Resto, 824 F.2d 210 (2d Cir.1987) (testimony on role of a "steerer" in a street drug operation); United States v. Nersesian, 824 F.2d 1294, 1307-09 (2d Cir.) (testimony on the meaning of narcotics-related code words), cert. denied, 484 U.S. 958 (1987); United States v. Monu, 782 F.2d 1209, 1210-11 (4th Cir.1986) (testimony on purity of heroin and testimony that balance scale was tool of heroin distribution); United States v. Cruz, 797 F.2d 90, 96 (2d Cir.1986) (testimony on use of food stamps in narcotics sales); United States v. Young, 745 F.2d 733, 760-61 (2d Cir.1984) (testimony about the role that "heroin mills" play and the type of paraphernalia that one would expect to find at a mill, and that material found in an apartment was precisely what one would expect to find in a mill), cert. denied, 470 U.S. 1084.

Dunn, supra, 846 F.2d at 763.

The Defendant concedes the usefulness of an expert testifying to topics 6, 7 and 11. Those matters were also discussed by the Government at the hearing. Topic 8 is related to the expert's testimony regarding dosage and amounts and values discussed above.

<u>TOPICS (9) the methodology of narcotics investigations in Afghanistan, including the use of undercover officers, foreign agencies, military and other special operations, informants, confidential sources, observation posts, surveillance, search warrants, audio and video surveillance; and (10) the role the Taliban has in supporting, safeguarding drug trafficking and the support of the Taliban by the drug traffickers, and how that relationship affects narcotics investigations in Afghanistan.</u>

As mentioned during the last status hearing all these investigative tactics were used or discussed in this case. Testimony from fact witnesses will discuss the use of undercover officers (John Zab) and informants (CS), foreign agencies (Afghan National Police and National Interdiction Unit, or NIU), military or special operations (Foreign-deployed Advisory Support Team, or FAST), surveillance and observation posts (Chaprahar bazaar), search warrants (defendant's compound and residence), and audio and video surveillance. These investigations are commonly used by the operators of such investigations, but are outside the scope of most juror's knowledge. Because they will be discussed a length it is therefore proper to include in the scope of expert testimony. It is also relevant because it is related to the matters in Topic 10. Part of the reason law enforcement employs the tactics it does in Afghanistan relate to the dangerous relationship between the narcotics trafficker and the Taliban insurgents. To sustain a conviction on Count Two the jury must find and the government must prove that the Taliban is an organization that engages, or has engaged in "terrorist activity." These acts may include "violent attack upon an internationally protected person," "the use of any explosive, firearm, or other weapon or dangerous device (other than for mere personal monetary gain), with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property," as well as the planning and preparing of terrorist activity as well as the inciting or recruiting for conducting these activities, among others defined by 8 U.S.C. § 1182 as well as 22 U.S.C. § 2656f . See <u>Joint Proposed Jury Instructions</u>, pp.6 - 9 (March 26, 2008). The government can elicit opinion and testimony about these relationships between trafficker

and Taliban insurgents that will be useful to the jury's determination of the elements that need to be satisfied. The government will not seek to ask the expert concerning his opinion of the defendant's mental state and we can do so without the use of improper mirroring hypotheticals, both discussed in United States v. Askew, 88 F.3d 1065 (D.C. Cir. 1996).

The Government submitted its arguments in its initial Opposition [ECF Document 44] regarding the relevance of this evidence and that any prejudice would not *substantially* outweigh the probative value of this testimony, as well as the lack of any prejudice shown, and refers the Court to that filing.

WHEREFORE, the Court should DENY defendant Mohammed's motion to exclude testimony by a narcotics expert.

    Respectfully submitted

    KENNETH A. BLANCO, Chief
    Narcotic and Dangerous Drug Section


    _____*/s/ Julius Rothstein*_____
    JULIUS ROTHSTEIN, Deputy Chief
    Narcotic and Dangerous Drug Section
    D.C. Bar No. 4500036
    U.S. Department of Justice
    1400 New York Avenue, N.W.
    8th Floor
    Washington, D.C.  20530
    (202) 514-5540
    julius.rothstein@usdoj.gov


    _____*/s/ Matthew Stiglitz*_____
    Matthew Stiglitz
    Trial Attorney
    Narcotics and Dangerous Drug Section
    U.S. Department of Justice
    1400 New York Avenue, N.W.
    8th Floor
    Washington, D.C.  20530
    (202) 305-3646
    matthew.stiglitz@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing motion was electronically filed this 1st day of May 2008 via ECF, which will forward a copy to Carlos Vanegas, Esq., and Dani Jahn, counsel for the defendant.

    _____*/s/ Julius Rothstein*_____
    JULIUS ROTHSTEIN