UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>KHAN MOHAMMED )<br>) | Criminal No.: 06-357(CKK) |

**DEFENDANT'S REPLY TO GOVERNMENT'S
SUPPLEMENTAL OPPOSITION**

Defendant, Khan Mohammed, through undersigned counsel, respectfully submits his Reply to the Government's Supplemental Opposition to Mr. Mohammed's Motion To Exclude Government's Expert Testimony. In support of his request to Exclude the testimony of DEA Agent Edward Follis, counsel for Mr. Mohammed submit the following:

1.	The government emphasizes that "Intent is an element to both charged crimes" and that a jury must find that Mr. Mohammed "intended or knew" that the narcotics he transacted would be unlawfully imported to the United States.

2.	The two transactions at issue are video and audio recorded. At points during or after the transactions the CS makes statements to Mr. Mohammed that the narcotics are being sent to "America", "France" and "London". Mr. Mohammed, assents and acknowledges the fact that drugs are not for the CS but for a buyer, and that the buyer is sending the drugs outside of Afghanistan. Based on the video and audio tapes, the government can make its argument that Mr. Mohammed is an agreement or knows that the narcotics are wanted by a person who intends for them to be exported outside of Afghanistan. Beyond that the government has the CS who can

and undoubtedly testify about his interactions with Mr. Mohammed before, during, and after the drug transactions and that he made statements to Mr. Mohammed regarding where the drugs were going to be exported. Within the factual (visual and audio) parameters of two drug transactions, there is no need for an expert witness to "explain to the jury the modus operandi of drug dealer." The jury will hear from the CS that he went to Khan Mohammed with the express purposes of obtaining drugs. The jury will hear them talk about drugs, quantity of drugs that the CS wants to purchase, and the quality of drugs that they bargain and purchase. At the end of the video tape and the CS's testimony, the jury of the District of Columbia, will have seen and will not have a single doubt that a drug transaction took place. To say that the "average juror" will see a video tape of a drug transaction and still need help in understanding what they just saw is completely nonsensical.

## ARGUMENT

The facts of the instant case which are captured on video are a far cry from the facts of United States v. Martinez, 476 F.3d 961, 967 (D.C. Cir. 2007), which the government cites in support of introducing the testimony of DEA Agent Edward Follis. In Martinez, the evidence "demonstrated that Martinez supervised several key aspects of the operation-including receiving Colombian cocaine in El Salvador and helping to prepare the cocaine for transportation north." Id 964. Additional evidence showed that "Martinez purchased vessels known as "go-fast" boats that traveled from the coast of El Salvador into the Pacific Ocean to receive the cocaine from large vessels coming from Colombia." Id. Clearly, the jury was presented with a defendant who commanded an entire drug trafficking operation that involved three countries; the producing country of Colombia, the conduit country of El Salvador, and the destination country of the

United States. The jury in Martinez was presiding over a multi-country operation that involved producers, distributors, drop points, boat personnel, among other players and location. At the head of that operation was the defendant, Martinez. Clearly, that jury was faced with complexities that Mr. Mohammed's jury will not faced or be presented with.

Noteworthy and ironic (to the instant case) was Martinez's claim that the Department of Justice lawyers had not given proper Rule 16 expert notice. The Court of Appeals rejected that claim by stating that "[t]he Government satisfied Rule 16 by indicating in writing approximately six weeks before trial that [the expert] would testify about the method of importing Colombia cocaine into the United States via Central America." Id at 967 (emphasis added).

The government fixates on facts that are not present in the instant case as a basis to admit Agent Follis irrelevant testimony. Accordingly, after letting go of "modus operandi" of drug dealers it proceeds to "trafficking routes of heroin and opium outside of Afghanistan." Again in citing Martinez it ignores that Martinez led a large scale multi-nation narcotic operation that went on for years, and that he used his position as a congressman in El Salvador to facilitate and hide his vast drug trafficking enterprise. There are no similarities between Martinez and Mr. Mohammed.

Among the differences are that Mr. Mohammed at the request of the CS went to an open drug bazaar where he haggled on behalf of the CS. A jury does not need assistance from an expert regarding an instance of haggling. The CS can testify about haggling because he was present at the market and were he asked his own questions, made suggestions and made the final decisions regarding the purchase. Equally important, the CS can testify that bargaining at an Afghani market is a time honored tradition. Certainly, a foreign expert regardless of the fact that

3

"he remains the highest ranking DEA Agent to supervised DEA operations in the country of Afghanistan" cannot supply more accurate and descriptive information regarding bargaining in Afghanistan, than a citizen of Afghanistan.

The government's reliance on United States v. Lam Kwong-Wah, 924 F.2d 298 (D.C. Cir. 1991) is equally unavailing. In Lam Kwong-Wah, the government introduced expert testimony through a DEA agent who "[t]estified that Lam's action prior to the transaction were consistent with "counter-surveillance" techniques often used by Asian drug traffickers to ensure that they are not being ensnared by a police trap." Id. at 300. Clearly Mr. Mohammed on video tape and audio tape will not present a role that is so nuanced, subtle, and mysterious that the most experience DEA agent in Afghanistan has to explain what Mr. Mohammed is doing and saying in a video-tape handling opium in one instance and heroin on another occasion.

The government's insistence that the jury needs to know about the break down of the opium and heroin along with the costs are completely irrelevant. Since the CS indicates that the drugs are going abroad, to "America, "France", or "London", there is no need or basis to have an expert discuss whether this is a case of possessing the "drugs with intent to distribute them." see Gov. Motion at 6 quoting United States v. Clark, 24 F.3d 257 (D.C. Cir. 1999). Similarly, because the quantities of narcotics are meant for delivery to the "United States", "America", "France", or "London" will be sufficient for the jury to make the inference of intent to export, there is absolutely no need for a jury to hear about "dosages" United States v. Watson 171 F.3d 695 (D.C. Cir. 1999). In citing United States v. Dunn 846 F. 761 (D.C. Cir. 1988), the government is unwilling to lay out the operative facts that the authorities raided a drug operation and laboratory inside a townhouse occupied by the defendant. Among the seized paraphernalia

were vials, wax papers, I-beam scales, measuring spoons, and mnnitol, "which were tools of the narcotics trade" for an "operation used for everyday distribution, [and distribution] primarily of crack and heroin." Id at 762

In short there is nothing about the facts of the instant case that present the complexities and need for expert assistance that the government has focused on in the cases that it has cited. For these reasons, and other previously submitted in Mr. Mohammed's prior motion, and in his oral argument, counsel for Mr. Mohammed move to exclude the government's proposed expert testimony, and renew their motion to exclude the government's expert based on notice and rely on United States v. Martinez, a case in which the Department of Justice attorney's gave the defendant expert notice six weeks before trial. Additionally, the government's request to introduce evidence regarding the Taliban's interaction with the drug trade will result in confusion of the jury by injecting irrelevant and highly inflammatory and prejudicial matters into the trial and should also be excluded.

        Respectfully submitted,

        A.J. Kramer
        Federal Public Defender


        _____/s/_____
        Carlos J. Vanegas
        Dani Jahn
        Assistant Federal Public Defenders
        625 Indiana Ave., N.W., Suite 550
        Washington, D.C. 20004
        (202) 208-7500

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) <br> KHAN MOHAMMED ) <br> ) | Criminal No.: 06-357(CKK) |

**ORDER**

That upon consideration of defendant's Khan Mohammed's Reply to the Governments's Supplemental to Defendant's Motion to Exclude Government's Expert Testimony; it is hereby

**ORDERED** that the Defendant's Motion is hereby **GRANTED**; and it is

**SO ORDERED**

_____  
DATE

_____  
COLLEEN KOLLAR-KOTELLY.  
UNITED STATES DISTRICT JUDGE

Carlos J. Vanegas, Danielle Jahnd
Assistant Federal Public Defenders
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004

Matthew Stiglitz
Julius Rothstein
Trial Attorney
United States Department of Justice
1400 New York Ave., The Bond Building
8th Floor
Washington, D.C. 20530