UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

MAY – **6** 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES OF AMERICA,

Plaintiff,

v.

KHAN MOHAMMED

Defendant.

Criminal Action No. 06-357 (CKK)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION
TO EXCLUDE THE GOVERNMENT'S EXPERT TESTIMONY**
(May 6, 2008)

On April 28, 2008, Defendant filed a [39] Motion to Exclude the Government's Expert

Testimony. The Government filed an Opposition on April 29, 2008, and the Court held a

Motions Hearing on April 30, 2008. Pursuant to the Court's request for additional briefing, *see*

Minute Order dated April 30, 2008, the Government filed a Supplement and Defendant filed a

Reply on May 1, 2008. The Court held a continuation of its Motions Hearing on May 2, 2008.

After considering all of the above submissions and the arguments made during the Motions

Hearings,[1] applicable case law, statutory authority, and the record as a whole, the Court shall

grant in part and deny in part Defendant's [39] Motion to Exclude the Government's Expert

Testimony, for the reasons that follow.

**I. BACKGROUND**

Defendant has been charged in a two-count indictment for violations of 21 U.S.C. § 959

---

[1] Both Parties orally supplemented their submissions at the Court's Motions Hearings,
and the Court incorporates herein the transcripts of the April 30, 2008 and May 2, 2008, Motions
Hearings for purposes of this Order.

(distribution of one kilogram or more of heroin intending and knowing that the heroin will be

unlawfully imported into the United States) and 21 U.S.C. § 960a (engaging in conduct violating

21 U.S.C. § 841(a) and knowing and intending to provide anything of pecuniary value to a person

or organization engaged in terrorism or terrorist activity). As to the first count, the Government

alleges that Defendant "distributed approximately 2 kilograms of heroin and 11 kilograms of

opium to a confidential informant who was working for the Drug Enforcement Administration

. . . [and] that [D]efendant knew that these drugs were destined for the United States." Gov't's

Opp'n at 2. As to the second count, the Government alleges that Defendant "was willing to

commit the drug trafficking offenses for remuneration and that the [D]efendant was willing to

conduct an attack upon the Jalalabad Airfield [in Afghanistan] at the direction of known Taliban

commanders who were operating from Pakistan." *Id.*

On April 23, 2008, the Government notified Defendant that it intended to call Associate

Special Agent in Charge Edward Follis ("Special Agent Follis") of the Drug Enforcement

Agency ("DEA") as a narcotics expert of drug trafficking investigations in Afghanistan.[2] *Id.*

The notice sent to Defendant listed eleven topics as to which Special Agent Follis would testify:

(1) The manner of distribution of narcotics in Afghanistan, including the illegal
distribution of heroin and morphine based raw resources which are further refined
into heroin;

(2) The exportation of heroin to countries outside of Afghanistan;

(3) The composition of typical heroin distribution organizations, and the different
roles in such organizations;

---

[2] Although the Government indicates that Special Agent Follis has some knowledge of
the investigation conducted in this case, the Government does not intend to call him as a fact
witness. *See* Gov't's Opp'n at 2.

(4) The wholesale distribution of illegal narcotics;

(5) The processing and packaging of narcotics, including different packaging materials, the use of additives, the preparation of narcotics for sale, the use of tools, the use of bazaars for the distribution of raw and finished products, the use of labs and storehouses to process and safeguard the finished product;

(6) The cost of narcotics – both wholesale and retail, profits, distribution of profits, and record keeping;

(7) The terminology of narcotics trafficking in Afghanistan, including codes, special vocabulary, and weights;

(8) The purchase of narcotics by users and their use;

(9) The methodology of narcotics investigations in Afghanistan, including the use of undercover officers, foreign agencies, military and other special operations, informants, confidential sources, observation posts, surveillance, search warrants, audio and video surveillance;

(10) The role the Taliban has in supporting, safeguarding drug trafficking and the support of the Taliban by the drug traffickers, and how that relationship affects narcotics investigations in Afghanistan; and

(11) The procedures used by law enforcement for handling and safeguarding narcotics evidence, including chain of custody.

Def.'s Mot. at 1-2.

Defendant seeks to exclude the testimony of Special Agent Follis. According to

Defendant, the Government's disclosure of its expert testimony was untimely pursuant to Federal

Rule of Criminal Procedure 16(a)(1)(G).[3] *See* Def.'s Mot. at 2-4. Defendant also argues that

---

[3] Defendant's Motion actually refers to Federal Rule of Criminal Procedure 16(a)(1)(D), but that provision relates to the requirement that, upon a defendant's request, "the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody or control," subject to certain conditions. Disclosure of expert witness testimony is required, upon request, pursuant to Rule 16(a)(1)(G). Defendant indicated at the May 2, 2008 Motions Hearing that Defendant asked the Government for its expert testimony disclosures, but neither the Government nor Defendant was able to

Special Agent Follis's testimony is unreliable, irrelevant, and/or prejudicial.  *Id.* at 4-8.

## II. DISCUSSION

### A.    Timeliness of Disclosure

Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), the Government is required to disclose, at the defendant's request, a written summary of expert testimony that the Government intends to use.  The Advisory Committee Notes explain that this provision contains "no specific timing requirements . . . [and] it is expected that the parties will make their requests and disclosures in a timely fashion."  Fed. R. Crim. P. 16 advisory committee notes.

Defendant argues that the Government's disclosure in this case was untimely because Defendant requested the Government's proposed expert testimony in a letter dated November 20, 2007, but the Government did not respond until April 23, 2008 (approximately nine days before trial was expected to begin).  *See* Def.'s Mot. at 2-3.  Relying in part on *United States v. Martinez*, 476 F.3d 961, 967 (D.C. Cir. 2007) (finding that the Government's disclosure six weeks prior to trial was timely), *see* Def.'s Reply at 3, Defendant argues that nine days "puts Mr. Mohammed in a severe disadvantage."  Def.'s Mot. at 4.  According to Defendant, "[t]he most appropriate remedy [based on the Government's untimely disclosure] is for the Court to exclude the proposed testimony . . . ."  *Id.*

The Government argues that its disclosure complied with all orders of the Court and was not untimely under Federal Rule of Criminal Procedure 16(a)(1)(G).  *See* Gov't's Opp'n at 3-5.

---

indicate whether Defendant cited the correct provision and, accordingly, whether the request was clear to the Government.  The Court notes that Federal Rule of Criminal Procedure 16 has been amended and relettered over time, most recently in 2002, when Rule 16(a)(1)(E) was relettered as 16(a)(1)(G).  *See* Fed. R. Crim. P. 16 advisory committee notes; *United States v. Ullah*, Crim. A. No. 04-30A, 2005 U.S. Dist. LEXIS 12419, at *41 n.11 (W.D.N.Y. Mar. 17, 2005).

The Government also argues that Defendant's Motion fails "to establish good cause for exclusion, has failed to establish that [Defendant] has been prejudiced by the disclosure, and has failed to establish that alternative remedies, short of exclusion, are insufficient to cure any alleged prejudice." *Id.* at 5.

The Court finds that the Government's disclosure did not violate Federal Rule of Criminal Procedure 16(a)(1)(G). The rules only require the Government to disclose expert testimony in a timely fashion, and the record in this case suggests that the timing of the Government's disclosure did not prejudice the Defendant. In addition to the nine days between the Government's disclosure and the date by which trial was expected to begin, the Court granted a five-day continuance at the request of Defendant on May 2, 2008. In addition, Special Agent Follis' testimony is hardly a surprise in a case where, as here, the evidence will concern drug trafficking and the charges require evidence of an investigation conducted in a foreign country. *See United States v. Martinez*, 476 F.3d 961, 967 (D.C. Cir. 2007) ("[e]xpert testimony about the methods of drug organizations is common in drug cases"). Moreover, during the Motions Hearing on May 2, 2008, Defendant did not argue that he could not prepare for Special Agent Follis's testimony consistent with this timeline.

Defendant mistakenly relies on *United States v. Martinez* to argue that the Government's notice in this case is untimely. Although Defendant is correct that the Government in *Martinez* provided its Rule 16 disclosures six weeks prior to trial, the D.C. Circuit did not establish a rule that six weeks of notice was required. *Martinez*, 476 F.3d at 967. Consistent with the advisory committee notes that no particular time period is required, a court must instead find that the notice was sufficient such that Defendant did not suffer any prejudice. *See United States v.*

*Naegele*, Crim. A. No. 05-151, 2007 U.S. Dist. LEXIS 6196 at *5-*6 (D.D.C. Jan. 29, 2007)

(reviewing purported violation of Federal Rule of Criminal Procedure for prejudice); *Cf. United*

*States v. Mejia*, 448 F.3d 436, 449 n. 8 (D.C. Cir. 2006) (affirming the defendant's convictions

despite the Government's failure to provide the defendant with Rule 16 notice *at any time*

because the defendant failed to establish the prejudice required for reversal). On this record,

Defendant has failed to set forth any showing of prejudice beyond declaring in his Motion that he

has been disadvantaged.

   Although Defendant's Motion glosses over the menu of remedies included in Federal

Rule of Criminal Procedure 16(d)(2), exclusion of evidence is also the last and most seldom-

invoked remedy that a court imposes for a parties' failure based on untimely disclosure. *See*

*Naegele*, 2007 U.S. Dist. LEXIS 6196 at *5 ("[i]n the absence of a finding of bad faith, it is

generally accepted that a court should impose 'the least severe sanction that will accomplish

broad and full compliance with the discovery order,' but noting that Rule 16 "does not *require*

the Court to take any action even in the face of a clear violation") (quoting, in part, *United States*

*v. Golyansky*, 291 F.3d 1245, 1249 (10th Cir. 2002) (emphasis in original)); *United States v.*

*Sarracino*, 340 F.3d 1148, 1170-71 (10th Cir. 2003) ("the sanction of exclusion of a witness's

expert testimony is 'almost never imposed in the absence of a constitutional violation or statutory

authority for such exclusion'") (quoting *United States v. Charley*, 189 F.3d 1251, 1262 (10th

Cir. 1999) (internal punctuation omitted)), *cert. denied*, 540 U.S. 1133 (2004)). Here, the record

does not suggest that the Government has acted in bad faith nor does it contain any other facts

warranting exclusion of the Government's expert testimony. Accordingly, the Court finds that

the Government's disclosure was not untimely under Federal Rule of Criminal Procedure 16.

**B.**    **Reliability, Relevance, and Prejudice**

Expert testimony must be both relevant to a material issue and reliable. *Daubert v.*

*Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 598 (1993). The Federal Rules of Evidence

define "relevant evidence" as "evidence having any tendency to make the existence of any fact

that is of consequence to the determination of the action more probable or less probable than it

would be without the evidence." Fed. R. Evid. 401. In addition, Federal Rule of Evidence 702,

amended in 2000 in response to *Daubert* and its progeny, provides:

> if specialized knowledge will assist the trier of fact to understand the evidence or to
> determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience,
> training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the
> testimony is based upon sufficient facts or data, (2) the testimony is the product of
> reliable principles and methods, and (3) the witness has applied the principles and
> methods reliably to the facts of the case.

Fed. R. Evid. 702; *Houlahan v. World Wide Assoc. of Speciality Programs & Sch.*, Civ. A. No.

04-1161, 2007 U.S. Dist. LEXIS 95970 at \*5-\*6 (D.D.C. Mar. 30, 2007). As with all evidence,

expert testimony "may be excluded if its probative value is substantially outweighed by the

danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of

undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Although Defendant's Motion argues broadly that Special Agent Follis's proffered

testimony is unreliable, irrelevant, and/or prejudicial, several of the topics listed above are no

longer at issue. During the Court's Motions Hearing on April 30, 2008, Defendant

acknowledged that Special Agent Follis's testimony with respect to Topics 6, 7, and 11 would be

relevant and appropriate. *See* Gov't's Suppl. at 2. The Court agrees with that assessment, as an

expert's explanation of narcotic sales, the terminology involved, and the procedures used in the

7

chain of custody of evidence, are all common and appropriate areas for expert testimony. *See, e.g.*, *United States v. Dunn*, 846 F.2d 761, 763 (D.C. Cir. 1988) (collecting cases). In addition, the Government conceded at the Motions Hearing that it would not present Topic 8 evidence ("the purchase of narcotics by users and their use"), nor evidence of "storehouses," an item included in Topic 5. Accordingly, the Court shall exclude testimony as to Topic 8 and storehouses because the testimony would not assist the jury with understanding the evidence or determining the facts at issue.

With respect to the other topics, Defendant argues that Special Agent Follis's testimony is not reliable. This argument sweeps with a very broad brush considering Special Agent Follis's status as the highest ranking DEA agent to ever serve in Afghanistan, *see* Gov't's Opp'n at 2, and the avalanche of D.C. Circuit authority discussing favorably the use of a law enforcement officer to provide expert testimony concerning drug organizations, *see United States v. Mejia*, 448 F.3d 436 (D.C. Cir. 2006) (holding that "there is a well-established practice of law enforcement officers testifying, on the basis of their experience, as experts in the modus operandi of drug trafficking organizations," as well as other drug-related topics, *see United States v. Clarke*, 24 F.3d 257, 269 (D.C. Cir. 1994) (testimony concerning the packaging and distribution of drugs, value of drugs, and the roles of individuals in the chain of distribution); *United States v. Boney*, 977 F.2d 624, 628 (D.C. Cir. 1992) (testimony concerning the operations of narcotics dealers). Nevertheless, at the April 30, 2008 Motions Hearing, Defendant indicated that he was willing to narrow his argument to Special Agent Follis's qualifications and the reliability of his testimony as they relate to Topics 5, 9, and 10. Accordingly, the Court shall allow Defendant to proceed with a voir dire of Special Agent Follis, outside the presence of the jury, to determine Special

8

Agent Follis's qualifications to testify as to those three topics, and the reliability of such testimony.

Defendant next argues that the testimony of Special Agent Follis should be excluded as unnecessary and irrelevant because jurors can consider the evidence presented by the Government (which includes audio, video, and tangible evidence, as well as witness testimony) and draw their own conclusions without the aid of expert testimony. *See* Def.'s Mot. at 5; Def.'s Reply at 2. With respect to Topics 1-5, Defendant's argument is inconsistent with the law in this circuit. The D.C. Circuit has repeatedly held that drug transactions or operations–including those that occur domestically–are unfamiliar to the average juror such that expert testimony may assist the trier of fact to understand the evidence or to determine a fact at issue. *See Clarke*, 24 F.3d at 269 (finding an expert properly testified to the packaging and distribution of drugs, value of drugs, and the roles of individuals associated with drug distribution) (similar to Topics 1, 3, 4, and 5); *Martinez*, 476 F.3d at 967 (finding an expert properly testified to the likely locations for drug exports from Central America and holding that testimony about general trafficking routes did not duplicate specific factual testimony about the particular operations at issue in the case) (similar to Topic 2); *Boney*, 977 F.2d at 628 (finding that an expert properly testified to the operations of drug dealers and holding that "[t]he operations of narcotics dealers repeatedly have been found to be a suitable topic for expert testimony because they are not within the common knowledge of the average juror") (similar to Topic 3); *United States v. Dunn*, 846 F.2d 761, 762 (D.C. Cir. 1988) (finding an expert properly testified to packaging paraphernalia and tools of the narcotics trade, including the opinion that a townhouse was likely used as a retail operation for everyday drug distribution) (similar to Topic 5).

In this case, the Government intends to present evidence of "operations, investigations, and criminal conduct [that] occurred in [Afghanistan] . . ." Gov't's Suppl. at 4. Because of the charges faced by Defendant, the Government must also present evidence that Defendant "intended or knew" that controlled substances would be unlawfully imported into the United States, and that Defendant "knew or intended to provide something of pecuniary value, either directly or indirectly, to any person or organization that has either engaged in or is engaging in terrorist activity or terrorism." Gov't's Suppl. at 3 (quoting Joint Proposed Jury Instructions at 4 (Mar. 26, 2008)). At the April 30, 2008 Motions Hearing, the Government represented to the Court that it intended to present evidence as to each item included in Topics 1-5 (except for evidence concerning storehouses) in support of these charges.

Defendant seeks to distinguish the case law cited above on the basis that the juries in those cases were "faced with complexities" that are not present in this case. Def.'s Reply at 3. For example, to contrast the international drug operation at issue in *Martinez*, Defendant explains that this case involves "an open drug bazaar where [Defendant] haggled on behalf of [a confidential informant]." *Id.* Moreover, because the confidential informant will testify "that the drugs are going abroad . . . there is no need or basis to have an expert discuss whether this is a case of possessing the 'drugs with intent to distribute them.'" *Id.* at 4 (quoting *United States v. Clark*, 24 F.3d 257 (D.C. Cir. 1999)). Defendant misunderstands the nature of the Court's inquiry. The question is not whether the Government should be forced to present its case in the way desired by Defendant, but rather, whether the Government has proffered appropriate expert testimony in the context of this case. Here, the Court does not believe it a stretch to hold that most jurors are going to be unfamiliar with drug transactions that occur at Afghani bazaars. *See*

10

*United States v. Khan*, 787 F.2d 28, 34 (2d Cir. 1986) (affirming the use of expert testimony

concerning the price of heroin in Pakistan, the practice among Pakistani dealers of selling heroin

on credit, and the sameness of dress among Pakistanis generally, irrespective of economic status).

Accordingly, the Court finds that these topics are appropriate areas for the Government's expert

testimony, and because the evidence the Government intends to present is likely to be unfamiliar

to the average juror, the Court finds that Topics 1-5 will assist the jury in understanding the

evidence or determining the facts at issue.

As for Topic 9, the Government indicates that each of these investigative techniques or

tactics were used or discussed in the present case. *See* Gov't's Suppl. at 8. The Government

indicated at the April 30, 2008 Motions Hearing that it intends to present this testimony so that

the jury understands that the investigative techniques used in this case are not uncommon in

Afghanistan. Although Defendant does not specifically address Topic 9 in his Motion, the Court

expressly finds that it is an appropriate topic for expert testimony. *See United States v.*

*Patterson*, 175 Fed. Appx. 513, 518 (3d Cir. 2006) ("police investigative techniques are also

often the subject of expert testimony").

Defendant argues that Topic 10 is an inappropriate area for expert testimony in this case.

Specifically, Defendant argues that "[t]he role the Taliban has in supporting, safeguarding drug

trafficking and the support of the Taliban by the drug traffickers, and how that relationship

affects narcotics investigations in Afghanistan" are not "facts of consequence." Def.'s Mot. at 6.

On the contrary, the Government's allegations that Defendant is affiliated with the Taliban

(which the Parties have stipulated is a terrorist organization), and that Defendant is engaging in

drug transactions for pecuniary gain, are directly relevant to the second charge in this case. The

11

proffered expert testimony will therefore assist the jury in understanding evidence that goes directly to the elements of the second charge.

Defendant also argues that Topic 10 is prejudicial based on the D.C. Circuit's decision in *United States v. Doe*, 903 F.3d 16, 20 (D.C. Cir. 1990). In that case, the defendants were convicted of drug and firearm possession. 903 F.2d at 17 n.1. The Government presented an expert witness who was permitted to describe the modus operandi of Jamaican drug dealers in the District of Columbia (two of the three defendants were of Jamaican decent). *Id.* at 18. This testimony was followed by numerous references during trial to "the Jamaicans," and during summations to the jury the Government stressed how Jamaicans had "taken over" the drug trade in the District of Columbia. *Id.* The D.C. Circuit held that this testimony should not have been admitted by the lower court pursuant to Federal Rule of Evidence 403, finding that the risk of racial bias outweighed any probative value of the expert's testimony. Needless to say, the case at present is distinguishable from *Doe*. The elements of the offense in this case require the Government to present evidence concerning the Taliban, whereas in *Doe* there was little or no reason to present evidence concerning the race of the defendants. The jury in this case will also lack familiarity with drug transactions occurring in Afghanistan–even more than the drug transactions occurring in the District of Columbia in *Doe*. The Court finds that Special Agent Follis's testimony with respect to Topic 10 will assist the jury with understanding the evidence and determining issues of fact in this case, and the Court cannot find that the probative value of such evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence.

Accordingly, it is, this 6th day of May, 2008, hereby

**ORDERED** that Defendant's [39] Motion to Exclude the Government's Expert Testimony is GRANTED IN PART and DENIED IN PART; it is further

**ORDERED** that Special Agent Follis may testify to the Government's proffered testimony Topics 1, 2, 3, 4, 6, 7, and 11; it is further

**ORDERED** that Special Agent Follis may testify as to Topic 5, except for "storehouses," and Topics 9 and 10, pending Defendant's voir dire of Special Agent Follis and the Court's finding that he is qualified to testify as to those topics and that his testimony is reliable; and it is further

**ORDERED** that Special Agent Follis may not testify as to Topic 8.

**SO ORDERED.**

Date: May 6, 2008

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

13