UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

MAY 15 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| UNITED STATES OF AMERICA, |
| --- |
| Plaintiff, |
| v. |
| KHAN MOHAMMED |
| Defendant. |

Criminal Action No. 06-357 (CKK)

**ORDER DENYING DEFENDANT'S REQUEST FOR JURY INSTRUCTION
REGARDING ENTRAPMENT**
(May 15, 2008)

On May 14, 2008, Defendant made an oral request to have the Court provide the jury with an instruction concerning the entrapment defense. *See* Criminal Jury Instructions for the District of Columbia, No. 5.05 (4th ed. 1993) (the "Redbook"). After hearing argument from both Parties as to the request, the Court took it under advisement and asked the Parties to supplement their oral arguments with written submissions. Both Parties submitted supplemental briefs to the Court on May 14, 2008. After considering the Parties' arguments, supplemental briefs, applicable case law, and the evidence in the record, the Court shall deny Defendant's request for an entrapment instruction.

Defendant has been charged in a two-count indictment with violations of 21 U.S.C. § 959 (distribution of one kilogram or more of a controlled substance intending and knowing that the controlled substance will be unlawfully imported into the United States) and 21 U.S.C. § 960a (engaging in conduct violating 21 U.S.C. § 841(a) and knowing and intending to provide anything of pecuniary value to a person or organization engaged in terrorism or terrorist activity).

(N)

As to the first charge, Defendant argues that he "is not asserting that he had never been involved in the trafficking of narcotics[,] only that he had no predisposition to distribute or send drugs to 'America' until his interactions with [the] confidential source [in this case]." Def.'s Br. at 1-2.

An entrapment defense "has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Mathews v. United States*, 485 U.S. 58, 62 (1998). Under the law of this circuit, the defendant bears the initial burden of showing government inducement, and if that burden is met, the burden shifts to the government to prove that the defendant was predisposed to commit the crime. *United States v. McKinley*, 70 F.3d 1307, 1312 (D.C. Cir. 1995). A defendant "is entitled to an entrapment instruction when[] there is sufficient evidence from which a reasonable jury could find entrapment." *Id.* In contrast, the entrapment instruction is not available where there is no evidence of government inducement to support such a defense. *Lopez v. United States*, 373 U.S. 427, 434-35 (1963) ("[b]efore the issue of entrapment can fairly be said to have been presented in a criminal prosecution there must have been at least some showing of the kind of conduct by government agents which may well have induced the accused to commit the crime charged").

To establish the "inducement" portion of the entrapment inquiry, the government's behavior must be "such that a law-abiding citizen's will to obey the law could have been overborne." *United States v. Kelly*, 748 F.2d 691, 698 (D.C. Cir. 1984)). Solicitations by the government to commit a crime cannot be considered an inducement "'unless the requests are coupled with persuasive overtures, or unless there is evidence of reluctance on the defendant's part demonstrating that the repetition of the requests may have moved an otherwise unwilling person to commit a criminal act.'" *United States v. Glover*, 153 F.3d 749, 754 (D.C. Cir. 1998)

(quoting *McKinley*, 70 F.3d at 1312). To induce a crime, the government must do more than merely present the defendant with an opportunity to commit the crime. *See Jacobson v. United States*, 503 U.S. 540 (1992) (check cite). As to the "predisposition" portion of the entrapment inquiry, the government must show that the defendant has a state of mind which "readily responds to the opportunity furnished by the officer or his agent to commit the forbidden act for which the accused is charged . . . a predisposed defendant is presently ready and willing to commit the crime." *Kelly*, 748 F.2d at 699 (quoting *United States v. Burkley*, 591 F.2d 903, 916 (D.C. Cir. 1993) (quotations and emphasis in original omitted).

In this case, the evidence offered at trial cannot support the argument that the Government induced Defendant to commit the crime charged. For purposes of this inquiry, the Court is bound to consider Defendant's version of the facts as true. *See McKinley*, 70 F.3d at 1310. Although the government's confidential source informed Defendant on several occasions that the drugs would be sent to the United States, Defendant provides no factual proffer explaining how these statements constitute an inducement under applicable case law or how they amount to inducement by reference to the evidence in the record. *See* Def.'s Br. at 1-2.[1] Nevertheless, the Court has parsed the record, and it appears that Defendant is arguing that these statements alone were sufficient to induce Defendant to overcome a lack of predisposition to

---

[1] The Court notes that Defendant has been in possession of the transcripts of the recorded conversations in this case since January 2008, and has been receiving daily transcripts of the testimony presented at trial. At no time has Defendant provided the Court with a factual proffer that is supported by the record. In this particular instance, the Court is cognizant of the fact that the likelihood of the government being able to persuade these witnesses to return from Afghanistan, a war zone, at some future date should this case need to be re-tried, is minimal. Nevertheless, this Judge believes a decision must be based on the record presented, and it has done so in this case.

distribute or send drugs to the United States. Def.'s Br. at 1-2. The Court finds that these statements, without any evidence in the record of persuasive overtures or reluctance by Defendant, cannot overbear the will of a normally law-abiding person. For example, there is no evidence in the record suggesting that Defendant received any additional benefit from the transactions because the drugs would be imported into the United States. *See United States v. Glover*, 153 F.3d 749, 754 (D.C. Cir. 1998) (considering whether a drug transaction provided an "unusually advantageous rate" as evidence of possible inducement). Nor does the record suggest that Defendant was reluctant to engage in drug transactions if the ultimate destination for the drugs was the United States. *See Fletcher v. United States*, 295 F.2d 179, 181 (D.C. Cir. 1961) (finding no inducement where "there was no showing of the slightest reluctance on the part of [the defendant] to make the [drug] deal"), *cert. denied*, 368 U.S. 993 (1962). On the contrary, recorded conversations between the confidential source and Defendant (that were submitted into evidence at trial) suggest that the confidential source "simply offered [Defendant] the opportunity to [commit the crime,] and [Defendant] . . . promptly availed himself of this criminal opportunity." *Jacobson v. United States*, 503 U.S. 540, 550 (1992). The following statements are reflected in the conversations between Defendant and the government's confidential source:[2]

> JW: This opium is going abroad and all other powders[3] are going abroad.
>
> DEFENDANT: Good, may God turn all the infidels to dead-corpses.

Gov't's Ex. 2H, 18-22

> JW: Once available then I will talk to him about this. He is sending it to America

---

[2] The Government's confidential source is identified in the transcripts as "JW."

[3] The evidence in the record indicates that "powder" refers to "heroin."

4

> and he is dealing directly with America. What do we care about this, ours is Jihad in this. Did you understand or not?
>
> DEFENDANT: That is the word. As much as you want, I will give it to you.
>
> JW: All right, is it possible to find powder?
>
> DEFENDANT: There are a lot, as much as you need I will give it to you. Two things would be done: one, as they say, the Jihad would be performed since they send it to America.

Gov't's Ex. 2I, 5-8

> JW: . . . The thing is going to America. Did you understand what I said?
>
> DEFENDANT: Ok.
>
> JW: If with the help of God it gets safe and sound there.
>
> DEFENDANT: Ok.

Gov't's Ex. 2K, 57-60. Not only do these statements fail to contain any evidence that the government is using persuasive overtures to entrap defendant into committing these drug transactions, other statements made by the Defendant suggest that he was eager to engage in additional transactions in the future:

> JW: The guy is very happy with your opium. I called him the other day and asked him, what is going on with the opium . . . I mean he is sending the powder to the United States and France, mostly to the American cities. Buddy; wherever he sends it, you and I get our commission. Did you hear? So this is what is going on. This man is running the operation very well, God willing.
>
> DEFENDANT: God willing, as much as he needs, we will get it for him.

Gov't's Ex. 2H, 15-16.[4]

---

[4] The record suggests that commissions are paid for the drug transactions regardless of whether the drugs will ultimately be imported into the United States. *See* Gov't's Ex. 2H, 15 ("where he sends [the drugs], you and I get our commission").

5

> JW: . . . It is good that we did the opium deal. They both have a common goal, right? Because they both want to eliminate the infidels.
>
> DEFENDANT: May God eliminate them right now, and we will eliminate them too. Whether it is by opium or by shooting, this is our common goal . . . .

Gov't's Ex. 2H, 35-36. In one particular instance, when the confidential source mentions that the drugs would be imported into the United States, Defendant explains that he already has this knowledge:

> JW: About opium, try to get good opium. Just like this time that the man was happy with us, will keep him happy in the future. Because when you give him good powder, the guy is sending abroad, as I have told you before, he is sending it to America, France, Britain, London. He is sending it to these countries.
>
> DEFENDANT: We know. Whatever quantity you want, we have the source. As much as you want.

Gov't's Ex. 2H, 69-70.

The D.C. Circuit has repeatedly acknowledged that "mere solicitation" by the government is insufficient to establish inducement where "the defendant acquiesced with reasonable readiness." *McKinley*, 70 F.3d at 1312 (quoting *United States v. Borum*, 584 F.2d 424, 428 (D.C. Cir. 1978)). On this record, the government agent merely informed Defendant that the drugs involved in the Defendant's drug transactions would ultimately be sent to the United States. The record contains no evidence of persuasive overtures or reluctance on the part of the Defendant, but rather indicates that Defendant embraced the idea that these drugs would be sent to the United States. Additionally, although the government has alleged in this case that Defendant was affiliated with the Taliban, Defendant does not argue that the government's confidential source played upon any Taliban sympathies the Defendant may have had. Further, Defendant has never proffered (for purposes of trial, any submission to the Court, or any argument related to the

6

instant request for an entrapment instruction) that Defendant was a member of the Taliban, and there is therefore no basis on which to conclude that he would have been induced based on Taliban sympathies. *See McKinley*, 70 F.3d at 1310 (the court must take Defendant's statement of facts as true for purposes of an entrapment inquiry). Based on the above, the government cannot be said to have induced Defendant to commit these crimes because it engaged in no conduct that would overbear the will of a law-abiding person. *See United States v. Brooks*, 567 F.2d 134, 138 (D.C. Cir. 1977) (holding that government's request that defendant provide assistance in effecting drug sales and possess a sawed-off shotgun could not be considered entrapment because the facts in the record "negate even a colorable contention that [the defendant] was an innocent person instigated to crime by the police, who implanted in his mind the disposition to violate the law").

Although the lack of evidence in the record supporting the "inducement" portion of the entrapment inquiry is dispositive of Defendant's request to have an entrapment jury instruction, the Court also notes that the record is replete with evidence suggesting that Defendant was predisposed to commit the charged offense. *See Burkley*, 591 F.2d at 914 (defining "inducement" as "government conduct that would create a risk of causing an otherwise unpredisposed person to commit the crime charged"). For example, the recorded conversations between Defendant and the confidential source indicate that Defendant is experienced and knowledgeable about similar drug transactions, suggesting that Defendant is not an "unwary innocent" but is instead an "unwary criminal." *See Sherman v. United* States, 356 U.S. 369, 373 (1958):

JW:   . . . you also used to do this opium business before.

7

>   DEFENDANT: Yes

Gov't's Ex. 2B, 7-8

>   JW: What is the rate for opium so I can speak with that person.
>
>   DEFENDANT: The recent price is 14.

Gov't's Ex. 2C, 33-34

>   JW: . . . The reason I got in this was because of you and I said that the opium you get for him would be good opium.
>
>   DEFENDANT: We are the people of this trade, we have dealt with it and we know it.

Gov't's Ex. 2H, 17-18.

>   JW: . . . Because you are experienced, you know everything about good quality and bad one, no one can pass fake stuff on you and if they don't give you good powder, they cannot pass on the bad quality on you.
>
>   DEFENDANT: No, God willing, we are people of the trade.

Gov't's Ex. 2H, 45-46.

The record also indicates that Defendant was predisposed to send drugs to the United States in that he viewed that conduct as a "jihad," and he indicated in recorded conversations that he engaged in other "jihad" activities in the past. For example:

>   DEFENDANT: We fired rockets at the county-chief office and they paid us three hundred thousand Rupees for one night program. God willing, if you do a program, then I will take two or three hundred thousand for your too. Will take it from them and you will keep the money.

Gov't's Ex. 2A, 50

>   DEFENDANT: I will also blow up the mines there. I have blown them up around the Dago Sar . . . and blown them up around the Red Castle . . . These are infidels we will kill them and we will continue our Jihad with blessing.

Gov't's Ex. 2A, 24

Based on the above record evidence, and in the absence of sufficient evidence supporting the elements that a jury would need to find for an entrapment defense, the Court shall deny Defendant's request for an entrapment instruction. Accordingly, it is, this 15th day of May, 2008, hereby

**ORDERED** that Defendant's request for a jury instruction regarding entrapment is DENIED.

**SO ORDERED**

Date: May 15, 2008

                                          /s/
                                      **COLLEEN KOLLAR-KOTELLY**
                                      United States District Judge