IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,
      Government,             CR No. 06-357
                              Washington, DC
     vs.                    November 20, 2007
                              11:00 A.M.
KHAN MOHAMMED,
      Defendant.


_____

TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE

APPEARANCES:


For the Government:       MATTHEW STIGLITZ, ESQUIRE
                       U.S. Department of Justice
                       Narcotics and Dangerous Drug
                         Section
                       1400 New York Avenue, N.W.
                       Washington, DC  20530
                       (202) 305-3646


For the Defendant:        CARLOS VANEGAS, ESQUIRE
                       Federal Public Defender's Office
                       625 Indiana Avenue, N.W.
                       Washington, DC  20004
                       (202) 208-7500


Court Reporter:           Lisa M. Hand, RPR
                       Official Court Reporter
                       U.S. Courthouse, Room 6706
                       333 Constitution Avenue, NW
                       Washington, DC  20001
                       (202) 354-3269


Interpreters:             Naim Saidi

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

```
 1                    P R O C E E D I N G S
 2            (Interpreter sworn by the courtroom deputy).
 3            INTERPRETER:  My name is Naim Saidi.  I want to say
 4   something for the record to the Court.  I work -- in addition
 5   to working as an interpreter in this case, I also transcribe
 6   and translate the transcription of the Department of
 7   Justice/U.S. Attorney Office, and I also work with the Office
 8   of Public Defender in the case with Mr. Vanegas.
 9            THE COURT:  Okay.  Thank you.  Have you told that
10   to Mr. Mohammed as well?
11            INTERPRETER:  Certainly.
12            THE COURT:  Why don't you just interpret it so he
13   knows what you've just said.  If you would explain to him that
14   we have sworn you in because you're going to be interpreting
15   for him.  Is he having trouble hearing?
16            If you can explain then just what you said to me
17   that we've sworn you in as his interpreter, and explain what
18   you said to me for him.
19            INTERPRETER:  He's telling me if I can just tell
20   him in person instead of this --
21            THE COURT:  If you could explain to him that he
22   should try and get accustom to this because this is the way
23   we'll be proceeding.  Can he not hear or is there a problem?
24            THE DEFENDANT:  Make a lot of noises.  I would
25   understand in person very well if you tell me --
```

1          THE COURT:  Ask him if he will try it or we can try

2     and give him another set.

3          INTERPRETER:  He's okay now.

4          THE COURT:  And we will speak slowly so that you

5     can translate it.

6          INTERPRETER:  I hear the Judge speaking but not me.

7     Now it's better.

8          THE COURT:  Okay.

9          INTERPRETER:  Can I explain to him now?

10         THE COURT:  Yes.  Please, go ahead.

11         INTERPRETER:  Okay.

12         THE COURT:  All right.

13         MR. STIGLITZ:  Your Honor, while on that subject --

14         THE COURT:  You're going to need to do it in the

15    microphone and certainly more slowly.  We haven't called the

16    case.  Let me do that.  I simply wanted to make sure that we

17    started with the interpreter so Mr. Mohammed would actually

18    understand that we had sworn in the interpreter for him and

19    we're now proceeding.  If we can call the case.

20         COURTROOM DEPUTY:  This is Criminal Number 06-357,

21    United States of America versus Khan Mohammed.  Matthew

22    Stiglitz present for the Government.  Carlos Vanegas present

23    for the Defendant.  The Defendant is present in the courtroom.

24    The interpreter, Mr. Saidi, is present and previously sworn.

25         THE COURT:  All right.  Good morning, Mr. Mohammed,

1   I'll be the Judge who will be handling your case.  If at any

2   time, Mr. Mohammed, you have trouble hearing what the

3   interpreter is saying, let us know.  You're shaking your

4   finger and I can't figure out what that is.

5                 THE DEFENDANT:  I hear the Judge speaking but not

6   the interpreter.

7                 THE COURT:  I have a feeling that we're not doing

8   the --

9                 MR. VANEGAS:  There is a clicking.

10                THE COURT:  Sir, can I just ask the interpreter.

11  Do you know how to use the side thing?

12                INTERPRETER:  It only just makes it --

13                THE COURT:  Can we --

14                INTERPRETER:  Head set or PA?

15                THE COURT:  I'm not sure how to do it, but there is

16  a way of like going back and forth.

17                INTERPRETER:  Head set or PA, this is here.

18                MR. VANEGAS:  May I suggest something.

19                THE COURT:  Certainly.

20                INTERPRETER:  I'm not hearing in the --

21                THE COURT:  If you would whisper it so he focuses

22  on the head set.

23                INTERPRETER:  Now it's much better.

24                THE COURT:  Okay.  All right.  So, Mr. Mohammed, I

25  will be the Judge that will be handling your case.  If at any

1   point you're having trouble understanding the interpreter or

2   it's not coming through the earphones, please get our

3   attention.

4           THE DEFENDANT:  It is coming very weak.

5           THE COURT:  Can you call --

6           THE DEFENDANT:  Possible he can come closer to me.

7           THE COURT:  We can try it for today, but we need to

8   get this to work because it won't work in the future with your

9   having to do it this close.  But I don't have a problem if

10  this isn't working right now.

11          COURTROOM DEPUTY:  Your Honor, I can turn the

12  volume up on his head set.

13          THE COURT:  Why don't you do that and see if it

14  helps.

15          THE DEFENDANT:  Now I can hear.

16          THE COURT:  Okay.  Mr. Mohammed, if you'll tell

17  him -- you need to focus on what the interpreter is saying to

18  you, okay.  So, ignore what else is going on because he's

19  telling you what everybody is saying in the courtroom.  Do you

20  understand?

21          THE DEFENDANT:  I understood.

22          THE COURT:  So, let me do one thing before we start

23  hearing from each of the parties.  And I'd ask that you speak

24  slowly enough -- are you doing it contemporaneously or after I

25  finish?

1              INTERPRETER:  Simultaneously.

2              THE COURT:  Simultaneously.  Okay.  The speedy

3    trial dates, we have calculated the 70th day as January 27th

4    of '08, leaving out the 13 days that I understand were waived

5    and then the --

6              THE DEFENDANT:  I don't hear it again.

7              INTERPRETER:  When the Judge speaks and I speak at

8    the same time --

9              THE DEFENDANT:  Now I hear.

10             THE COURT:  Okay.  Mr. Mohammed, he is going to be

11   interpreting everything I say as I say it, so you need to

12   listen through the earphones.  Okay.  As I understand the

13   speedy trial, the 70 days by which the Court would need to try

14   this case unless there's a basis for -- not counting because

15   of motions or something else, it's January 27th.  And the 90

16   days in terms of custody we've calculated as February 3rd of

17   '08.  Does that sound right?

18             The 90 days was from the date of his arrest.  The

19   70 days was from the date of his arraignment, excluding the 13

20   days that the docket seemed to indicate were -- had been --

21   they used the term waived.  So, let me -- Mr. Stiglitz, you

22   started to say something, if you can come to the microphone

23   and indicate what you were going to say.

24             MR. STIGLITZ:  Good morning.

25             THE COURT:  Good morning.

1              MR. STIGLITZ:  Just to make the record clear on

2    what Mr. Saidi had said.  When I first met with Mr. Saidi and

3    it was becoming apparent that he would essentially be playing

4    all the sides for both --

5              INTERPRETER:  I don't want my case to be adjourned

6    more than is required.  I don't want my case to be adjourned

7    more than is acquired.

8              THE COURT:  I understand, that's why I'm putting on

9    the record the speedy trial dates.

10             MR. STIGLITZ:  I just wanted to make it clear for

11   the record that when I first met with Mr. Saidi and it was

12   obvious that he was going to be assisting all three sides in

13   this case, both the Court and both parties, that I expected my

14   conversations with Mr. Saidi to be kept in confidentiality,

15   and that I expected him to maintain a confidentiality of any

16   interpretations he did on behalf of Mr. Mohammed's attorney.

17   Mr. Saidi indicated that he understood that.  And to this

18   point there's been no issue with disclosure of any

19   conversations.

20             THE COURT:  It's not clear to me, precisely, what

21   the issue is.  Mr. Saidi, I assume, is going to interpret when

22   we have matters in court involving Mr. Mohammed.

23             MR. STIGLITZ:  Correct.

24             THE COURT:  As I understand it, I guess he is

25   helping out Mr. Vanegas speaking with his client as well.  I

1   see Mr. Vanegas nodding.  It's not clear to me, Mr. Stiglitz,

2   at what point you would be involved other than if, you know,

3   you're having a three way conversation with Mr. Vanegas,

4   Mr. Mohammed and yourself being present.  Is that what you're

5   talking about or something else?

6           MR. STIGLITZ:  Something else.  When Mr. Mohammed's

7   trip to the U.S. was imminent, we approached Mr. Saidi with

8   respect to transcription of various audio and videotape

9   recordings we have that are evidence in the case.  So, to date

10  his only participation with the Government has been to work on

11  those transcriptions and translations.  I've not required Mr.

12  Saidi's help in terms of holding a conversation with anybody.

13          THE COURT:  All right.

14          MR. STIGLITZ:  But I suspect, if, down the road it

15  comes to that with respect to Mr. Mohammed, then obviously Mr.

16  Saidi would most likely be involved in that as well.

17          THE COURT:  All right.  But it's the audio

18  transcriptions that are -- it's Government's evidence, is that

19  correct?

20          MR. STIGLITZ:  Right.

21          THE COURT:  Is this something that has been

22  discussed, Mr. Vanegas, with your client.  I mean,

23  interpreters are here to simply interpret what people say.

24  They are not -- they don't belong to any of the parties, they

25  don't take sides in anything, all they do is repeat what any

1    of the parties have said.  Or if they're listening to audio,

2    they are just simply translating what it is.  So, they

3    don't -- Mr. Saidi is not a party to the case, he's an

4    independent person who has obligations to be accurate in his

5    interpretation both to the Court, to you when he's in court,

6    and to whatever other work he's doing.

7              But, Mr. Vanegas, just so that there isn't any

8    issue, do you have -- have you discussed it with your client,

9    is there any concern about doing any of these translations of

10   the audio and transcriptions.

11             MR. VANEGAS:  Your Honor, it was clear to

12   Mr. Mohammed when we spoke at the jail with the assistance of

13   Mr. Saidi that in fact Mr. Saidi had already interpreted in

14   the Court and that he was going to be an interpreter in the

15   future.  We could not have had a discussion regarding the fact

16   that Mr. Saidi had already been approached and maybe had done

17   interpretation or translations for the Government because we

18   were unaware of it.  So, this is the first time that I hear

19   about it, and I have no problems with that.

20             In fact, it shows the professionalism of Mr. Saidi

21   that he has not disclosed who he's working for, and I believe

22   that -- my understanding is Mr. Saidi has been interpreting

23   for a significant period of time in the Federal Court in New

24   Jersey and in New York, so I trust his professionalism, and I

25   have no qualms or issues regarding his providing services to

1  the Government.

2         THE COURT:  All right.  And in terms of -- Mr.

3  Saidi, you're interpreting today, I take it the Court made an

4  arrangement for you to come.

5         INTERPRETER:  Yes, Your Honor.

6         THE COURT:  So, just for Mr. Mohammed's benefit,

7  the Court has an office that makes arrangements to bring in

8  interpreters in whatever language is required for parties to

9  make sure that you understand what is happening as part of the

10  court proceedings.  So, he's an independent person.  He has a

11  responsibility to interpret accurately whatever anybody is

12  saying.  And I will let Mr. Vanegas talk to you about this one

13  issue of Mr. Saidi evidently doing some interpretation of some

14  audio and transcriptions that are part of the Government's

15  case, which means presumably, evidence against you, to make

16  sure that you don't have any problem.

17         I don't see any problem with it, but I want to give

18  you an opportunity to discuss it with your lawyer.  It is hard

19  to find good interpreters in terms of making sure that you

20  understand what's happening.  Do you understand what I've

21  said, Mr. Saidi -- Mr. Mohammed, I'm sorry.

22         THE DEFENDANT:  Is it a problem if you translate by

23  me and by the Government, too?

24         THE COURT:  It doesn't have to be, but

25  Mr. Mohammed, if you have a problem with it -- as I understand

1   it, Mr. Saidi, you've already done it, is that correct?

2                    INTERPRETER:  It is in the process.

3                    THE COURT:  And at this point you would -- you're

4   not expecting to have him do anything else, is that correct?

5                    MR. STIGLITZ:  Yeah, if there comes a point that

6   we're going to have conversations with Mr. Mohammed, then

7   obviously, because of his familiarity with the case and the

8   participants, then I expect Mr. Saidi would be engaged for

9   that.  Short of that, I don't expect any other work on behalf

10  of the Government.

11                   THE COURT:  Okay.  Mr. Mohammed, it is something

12  that you need to talk about with your lawyer.  The Government

13  had already asked Mr. Saidi before he evidently was engaged to

14  come and interpret for the Court, and also to assist your

15  lawyer in communicating with you, some recordings that he is

16  evidently writing transcripts of what was said on the

17  recordings.  Because the Government has asked, my assumption

18  is it's evidence, and the evidence presumably would be used in

19  a case against you.

20                   If you have concerns about it, you need to speak to

21  Mr. Vanegas and then we will deal with it.  Mr. Saidi, in

22  court, is simply translating what I'm saying or anybody else

23  is saying so you know what's going on.  And he can keep these

24  roles separate.  But if you have some concerns about it, then

25  Mr. Mohammed, talk to your lawyer about it and it will be

1    brought to my attention.  I certainly don't want any issues

2    about it.  We generally -- I take it you're Federally

3    certified, Mr. Saidi?

4              INTERPRETER:  Your Honor, there's no certification

5    in this language, but I've been working 20 years, almost, with

6    federal agencies, especially the Federal Courts in New York

7    and New Jersey.

8              THE COURT:  All right.  You need to tell him that

9    so he knows what you told me.  As I said, interpreters don't

10   belong to a party, they basically are hired to do work of

11   translating from one language to another.  They don't get

12   involved in making decisions or having anything to do with how

13   it gets used or anything else.  It's strictly from one

14   language to another.

15             But I will give you an opportunity since this is

16   the first you're hearing about it and your lawyer is hearing

17   about it to have some discussion to see if you have some

18   concerns, and you can talk to Mr. Saidi a little more as well.

19   I'll leave that as an issue to be discussed at a later point.

20             At this point, Mr. Vanegas, have you received

21   discovery?  Where are we in this case?

22             MR. VANEGAS:  Yes, Your Honor, I have received a

23   discovery letter --

24             THE DEFENDANT:  My attorney should get all the

25   evidence as soon as possible.

1          THE COURT:  I understand.  Mr. Mohammed, you should

2     be a little careful about speaking up on your own.  You should

3     speak through your lawyer.  You should be aware that anything

4     you say can be used against you.  So I want to make sure you

5     don't -- what you've said so far is not a problem.

6          But you're better off speaking through your lawyer

7     who will then say things to the Court.  Discovery is the

8     evidence against you, and that's what I'm asking.  To make

9     sure that you do have all of the evidence that's appropriate

10    for you to have from the Government.  So, Mr. Vanegas, have

11    you gotten discovery?

12         MR. VANEGAS:  Yes, Your Honor, I received a

13    discovery letter along with a CD which contained both

14    photographs, audios and video.

15         THE COURT:  Presumably you'll be able to show those

16    to your client at some point.

17         MR. VANEGAS:  Yes, we looked at the photographs.

18    The video we still haven't looked at it.  The problem with

19    many of the documents, and there are 287 exhibits, within

20    those 287 exhibits there are photographs and also many written

21    documents.  The majority of those written documents are in

22    Pashto, Mr. Mohammed's language.  It's an Arabic script, one

23    of the major languages of Afghanistan.

24         So, our problem was -- I don't know what those

25    documents mean, however, we did generally review them.  I've

1    asked Mr. Stiglitz if he could -- that we want those documents

2    translated for the fact that many of those documents were

3    seized from Mr. Mohammed's house.  So discovery -- I have

4    received discovery, but I still need assistance from the

5    Government regarding translations of those documents and

6    translations of the audios that -- communications that have

7    taken place.

8              THE COURT:  I don't know whether this is a problem,

9    but can I make an assumption that Mr. Saidi has been working

10   on those?

11             MR. STIGLITZ:  Well, Your Honor, at this point

12   we're taking the audio and the video tapes first.

13             THE COURT:  Right.  The ones that he's talking

14   about?

15             MR. STIGLITZ:  Right.  I believe there have been 12

16   audio and videotapes that have been provided in discovery,

17   I'll have to check -- I believe that's the number of exhibits,

18   it might be a little more than that.  We are in the process of

19   having transcriptions and translations -- dual transcriptions

20   and translations made of those recordings.

21             THE COURT:  Do you have a timeframe within which

22   those would be done?

23             MR. STIGLITZ:  Right now I expect that the drafts

24   of those will be finished in mid-December, that is what Mr.

25   Saidi and I had discussed.  And once we have -- just to let

1  the Court know, at some point in the near future I will be

2  traveling to Afghanistan to meet with the witnesses and review

3  the transcripts with them to make sure they are accurate.  I

4  can provide the drafts to Mr. Vanegas before that, with the

5  understanding that they are drafts and are subject to

6  revision.  But I can have those to Mr. Vanegas, I expect, in

7  late December.

8          As for the written documents, I'm not sure at this

9  point what documents the Government expects to use.  So, I

10  can't guarantee that the Government is going to be translating

11  all the written documents.  Mr. Vanegas has those documents,

12  and he's certainly free to have his office have any of them

13  translated, but I'm not going to promise him that we're going

14  to have all those documents translated at this point.

15          Anything that we intend to use, obviously, we

16  expect to have a translation offered into evidence and we will

17  certainly provide.  But I don't want to sandbag Mr. Vanegas

18  into thinking that he's going to get translations of every

19  single one and then it turns out he doesn't.

20          THE COURT:  Well, I think it would be helpful for

21  Mr. Vanegas to know which ones -- if you would identify

22  them -- that you're certain you're going to use.  And then the

23  rest he would be in a position to make other arrangements to

24  be able to have them translated.  I'm assuming Mr. Mohammed

25  would be able to read his own language, that still doesn't

1   help Mr. Vanegas, however, to be able to -- since I assume

2   Mr. Mohammed doesn't speak English and doesn't read English,

3   in the Pashto he would be able to look at them, but that

4   doesn't help Mr. Vanegas to figure out his defense.  So he

5   needs to be able to see these in English.  Am I accurate, Mr.

6   Vanegas?

7            MR. VANEGAS:  That is correct, Your Honor.

8   Mr. Mohammed does not read or write.

9            THE COURT:  Oh, okay.  So you really do -- you need

10  to have -- you may need to talk to somebody about what

11  arrangements, and talk to your client and Mr. Saidi about how

12  you want to do this, but obviously they will be translated for

13  you in English.  From Mr. Mohammed's perspective, you may need

14  to have somebody actually read them to him so he knows the

15  contents.

16           MR. VANEGAS:  That's right, Your Honor.

17           THE COURT:  Okay.

18           MR. STIGLITZ:  The only other remaining discovery

19  matter that might be an issue, which I've discussed with Mr.

20  Vanegas this morning.  When Mr. Mohammed was arrested there

21  were some items seized from his person.

22           THE COURT:  I'm sorry, what?

23           MR. STIGLITZ:  There were some items seized from

24  his person, such as a cell phone.  The contents of the cell

25  phone were examined, and for example, the phone book was

1    reviewed.  All that was put in a report which has been
2    provided to counsel, but I do know that there was, I believe,
3    a personal phone book recovered from him.  Now, I know in
4    discovery we've provided with Mr. Vanegas a copy of the phone
5    book.  In thinking about it, I'm not sure if that was a phone
6    book seized from his person or house, I'm going to make
7    inquiries on that today.

8           But I do know that when the items that were seized
9    on his person after he met with the DEA, the Afghan
10   authorities turned him over to the military -- the U.S.
11   military authorities.  Along with Mr. Mohammed's person, they
12   also turned over the items that were seized from his person.
13   I know that when Mr. Mohammed arrived here in the states, the
14   military at the same time they turned Mr. Mohammed over to
15   civil authorities also turned over the items that had been
16   seized from his person to the same authorities.

17          Over the past week I know that the agents have been
18   reviewing the material to decide what is personal property
19   that can be returned to him and what might be potentially
20   evidence.  I'm going to make inquiries on that today to make
21   sure that we have copies of that, and we'll turn those over to
22   counsel.

23          THE COURT:  All right.  So, as I understand it, the
24   civil authorities arrested him in Afghanistan.  And at what
25   point did the DEA talk to him?

```
 1            MR. STIGLITZ:  Mr. Mohammed was arrested on

 2   October 29th.  Mr. Mohammed was arrested at a check point by

 3   Afghan authorities.  DEA was also present at that time.  The

 4   Afghan authorities and the DEA, after being advised of his

 5   Miranda rights through an interpreter, had interviewed

 6   Mr. Mohammed, and then at the conclusion of that interview the

 7   Afghan authorities took Mr. Mohammed to the military

 8   authorities and turned him over to the U.S. military.

 9            THE COURT:  So, as I take it, whatever was taken

10   from Mr. Mohammed has been moved from -- has been passed on

11   from anybody who has had any contact with him, is that

12   correct, or has basically had him in custody?

13            MR. STIGLITZ:  Correct.  The personal effects have

14   essentially followed Mr. Mohammed.

15            THE COURT:  So you're going to sort out then with

16   the other agents what it is that you view as part of your case

17   and what it is that can be given back to him?

18            MR. STIGLITZ:  Correct.  And I expect this week to

19   put the agents in touch with Mr. Vanegas so they can transfer

20   whatever is deemed personal property to Mr. Vanegas so he can

21   get them to his client.  And then the remaining documents

22   we'll provide copies of to counsel as part of discovery.

23            THE COURT:  All right.  So they would have

24   everything either returned to him or Mr. Vanegas will have

25   copies of it?
```

1          MR. STIGLITZ:  Yes.  Now, with the Thanksgiving

2   holiday on Thursday and Friday, I will try to get it done this

3   week, but it might be the very beginning of next week before I

4   get that to Mr. Vanegas.

5          THE COURT:  All right.  Mr. Vanegas, then it seems

6   to me there are two issues that I see initially.  One,

7   obviously, you need to review the evidence with some detail,

8   and part of this is going to require that it be translated for

9   you, and part of it is going to be to have somebody go through

10  this with your client in his own language.

11         The speedy trial date is January 27th.  So one

12  question that you need to answer at the next status, and I'll

13  set one up in a fairly quick turnaround, is whether or not

14  such a case, based on the amount of discovery and what's

15  required to get it ready from your perspective, that it should

16  meet one of the exceptions.  I'm not going to put it off much

17  because I don't have -- I have one trial in early January and

18  so I'm open to whenever anybody is ready to try this case.

19  But it may be that January 27th isn't realistic.  But I won't

20  decide that now or have you say anything.  I think you should

21  be given some opportunity to look through this and see whether

22  you'd be prepared to go forward in time.

23         MR. VANEGAS:  That's a question that clearly has

24  been raised with Mr. Mohammed.  And as the Court heard him

25  previously when he indicated that he didn't want this case

1    adjourned anymore -- any further, it was in reference to the

2    discussion of the speedy trial rights within the timeframe.

3    However, I do see the compelling need to essentially be able

4    to review these documents in English and be able to then

5    review the documents with Mr. Mohammed.

6           My sense, Your Honor, at this point is that what I

7    ask of Mr. Mohammed was that I certainly would not be

8    requesting any significant waiver, and that I told him, with

9    Mr. Saidi present, that I could try to have -- to be ready

10   sometime by the middle of February, which is not that far off

11   from the February 3rd date that the Court previously

12   announced.  And I think I can work diligently, based on the

13   Government's disclosing these transcriptions in English, and I

14   think I'll do my best to be ready.  And I say this based on

15   Mr. Mohammed's insistence to affirm his right to go to trial

16   within a certain timeframe.

17          THE COURT:  Mr. Mohammed, that is correct.

18   However, there is one consideration from your perspective, and

19   that is to make sure that both you and your lawyer have enough

20   time to review the evidence against you so that you're

21   prepared for trial.  And I have an open schedule, so I'm not

22   going to be a problem in terms of scheduling a trial on my

23   calendar.  Whenever you decide you're ready, I mean, we'll

24   deal with it.

25          What I would be inclined to do is to not put

1   something in writing in an order quite yet, but to bring you

2   back, I'll put something together generally, but I think what

3   I would be inclined to do is to wait until you come back and

4   then have you tell me at that time if you see potential

5   motions, because motions will toll it as well, but also so we

6   get them scheduled in a way that the case is ready as early as

7   possible.

8          So, at this point you haven't had a chance to

9   really review them to figure out whether there are issues

10  relating to any statements he's made or anything else for that

11  matter.

12          MR. VANEGAS:  Yes, certainly, Your Honor.  I know I

13  will be filing a motion to suppress statements.  Based on some

14  of the documents that were seized from his house, and I'm not

15  sure about his person, whether there would be a motion to

16  suppress evidence.  And so certainly I will be filing one

17  motion, I know that.

18          THE COURT:  Okay.  Then let me pick a date to have

19  you come back.  I'll make it a fairly quick turnaround so

20  that -- and we can make it longer after that, but to sort of

21  get a better schedule of when these things will be translated,

22  when the -- you know, where you know better when you're going

23  to be ready to file your motion so I can set a schedule the

24  next time, and then we can look more realistically at what

25  potentially will be the trial date and to make some rulings on

1  issues relating to the speedy trial.  One of which would be

2  giving you time to prepare, and in terms of the amount -- and

3  this looks like it's 287 exhibits, most of which are in

4  Pastho, it's going to take some time to both get them

5  translated, have you review them, and then also have an

6  opportunity to have your client review them orally through an

7  oral means to do this.

8          Since he's not going to be able to assist you, he

9  can obviously see the photographs, et cetera.  But if the

10  writings are going to require somebody reading it to him so he

11  knows the contents, that may be a different issue.  When are

12  you planning, Mr. Stiglitz, to go to Afghanistan, so I can

13  carve that out -- or when are you aiming to go?

14          MR. STIGLITZ:  If the Court will excuse me for not

15  providing exact dates, but at this point we intend to go in

16  January.

17          THE COURT:  Okay.  All right.  Let me bring you

18  back then in December and set some schedule at that point.

19  Let me ask one question.  Mr. Stiglitz, do you have any trial

20  set that would create issues in terms of setting any trial

21  dates that are already on your calendar?

22          MR. STIGLITZ:  I have a March trial before Judge

23  Collyer that at the time we go to trial will be about -- the

24  case will be about two and a half years old.  That begins

25  right now on March 10th and it's expected to last three to

1    four weeks.

2            THE COURT:  Okay.  What about you, Mr. Vanegas?

3            MR. VANEGAS:  I'm open in February and March, Your

4    Honor.

5            THE COURT:  Okay.  We can either do it in two or

6    three weeks, what works for you?  So, it either would be, I

7    mean, it depends on how much time you want in terms of being

8    able to have this -- so it will be either December 4th or the

9    11th, somewhere in there or the 5th and 12th, somewhere.

10            MR. VANEGAS:  Your Honor, I would ask for the

11    latter date just so that -- by that point I think we will have

12    received those transcriptions, and then I can give the Court a

13    better sense of what motions I'll be filing and how many days

14    I need in order to file my motions.

15            THE COURT:  How about December 13th?

16            MR. VANEGAS:  That's fine with me, Your Honor.

17            THE COURT:  Is that good for you?

18            MR. STIGLITZ:  May I ask what time the Court was

19    thinking?

20            THE COURT:  Can you call in and see, I know have

21    the 4:30.  I don't think I have anything else on the calendar,

22    if you can just check.  Let me just double check.

23    December 13th.  I would be inclined to do it in the morning if

24    that's all right.  Do you have a conflict?

25            MR. STIGLITZ:  I have an 8:00 o'clock dental

24

1   appointment.  I suspect I will --

2               THE COURT:  If I did it at 10:00?

3               MR. STIGLITZ:  That should not be a problem.

4               THE COURT:  Let me double check and make sure --

5   Mr. Saidi, are you available that day?

6               INTERPRETER:  Yes, Your Honor.

7               COURTROOM DEPUTY:  You have one 4:30 criminal

8   status.

9               THE COURT:  Perfect.  Then we'll do December 13th

10  at 10:00.  And the idea would be at that point to figure out

11  how much work needs to be done so we'll schedule in terms of

12  evidence so that we can tentatively set a trial date.  I'll

13  make some rulings on speedy trial and then figure out,

14  roughly, a schedule for any kind of motions.  And we'll do

15  motions to suppress and then we'll consider motions in limine,

16  if there are any, which would relate to evidentiary issues.

17  Are there any 404(b) or something of that nature?

18              MR. STIGLITZ:  As I indicated to Mr. Vanegas at the

19  arraignment, it's likely that we will be superseding in this

20  case.

21              THE COURT:  By that you mean there would be a new

22  indictment adding charges or what?

23              MR. STIGLITZ:  I'm sorry.

24              THE COURT:  Adding charges?

25              MR. STIGLITZ:  Yes.  A lot of this, however,

1   depends on the transcripts that we get back.  We believe right

2   now there is sufficient evidence, but we'll feel more

3   comfortable once we see the draft transcripts that we get back

4   from Mr. Saidi.

5          THE COURT:  All right.  Then I would expect that

6   you would indicate that when you come back as to whether

7   you're doing that and when the expectation would be.

8          MR. STIGLITZ:  Certainly.

9          THE COURT:  So we'll be able to work that in.

10          MR. STIGLITZ:  That said, there's at least out

11   there the potential for a 404(b), but I think that will become

12   moot when and if we supercede in this case.

13          THE COURT:  Mr. Stiglitz, anything else from you?

14          MR. STIGLITZ:  Well, I know the Court was

15   indicating that it would entertain speedy trial at the next

16   status date.  Would the Court entertain at least between now

17   and the next status date tolling the speedy trial given the

18   complex nature of the case.

19          THE COURT:  I will in the interest of justice at

20   this point do so in order for us to determine the complexity

21   of the case and give Mr. Vanegas and Mr. Mohammed enough time

22   to figure out how long it's going to take them to actually be

23   prepared.  I'm looking at it strictly from your perspective.

24   So, from today's date until we come back on the 13th, and then

25   I'll make a fuller ruling at that point, depending on whether

1    it looks as complicated as it appears to be.

2          Also, at some point there should be something put

3    on the record relating to any kind of plea.  If Mr. Mohammed

4    wants to entertain it, not entertain it, but in every case I

5    at least put on the record whether one was offered, what the

6    answer was.  If the Government takes the position that they're

7    not going to offer one unless he shows an interest, then we

8    need to know that just so there's no issue.

9          And obviously it will be Mr. Mohammed's decision

10   about it, totally, but just to make sure that if that's not

11   part of his cultural background that that is something that is

12   part of our system, that he should at least consider if

13   there's any interest on either side.

14         MR. STIGLITZ:  I think I can give at least the

15   Court a sum up date on that.  At the arraignment we did extend

16   an offer to Mr. Vanegas.  I know he's had some conversations

17   with his client, and his client has expressed an opinion at

18   this point -- Mr. Vanegas and I have spoken, and I believe

19   that Mr. Vanegas at some point will probably revisit the

20   issues and discuss it further with his client.  But I just

21   wanted the Court to know that there are discussions that have

22   been made in this respect.

23         THE COURT:  Okay.  I don't get involved with that,

24   Mr. Mohammed.  This is something that is between you and your

25   counsel as to whether -- if one is offered, he is obliged to

1    at least discuss it with you.  So, if he's discussing it with
2    you, he's -- that's part of his job as a lawyer -- as a
3    competent lawyer to discuss it.  It's up to you in conjunction
4    with talking to him to decide what you want to do.  I don't
5    have anything to do with that.

6            But I always make sure that we put on the record
7    whether one has been offered and what your decision is so that
8    there is no misunderstandings at a later point as to whether
9    one was made, what it involved, et cetera.  And as I said,
10   it's totally your decision, in consultation with your lawyer
11   as to what you want to do.  Okay.  But at this point I'll move
12   forward with setting trial dates, et cetera.  Okay.  Mr.
13   Vanegas, anything else from you?

14           MR. VANEGAS:  Your Honor, I ask if the Court would
15   consider transferring Mr. Mohammed to CTF for the only reason,
16   which is based on religious need.  Essentially at the jail he
17   doesn't know when it's day or night.  He's been a lifelong
18   practicing Muslim.  I believe that when he was transported to
19   the United States one of the items he had with him was his
20   Quran.  I believe the Quran is going to be -- given --
21   provided to him.  But at the jail he has no sense of when it's
22   day, when it's night, and that is the only basis for this
23   request.  He wants to be able to continue with his prayers,
24   and he just cannot do it.

25           And what I learned from having clients at the CTF,

1    I know that when Ramadhan takes place -- and I've had this

2    experience in the past two years, is that there are Muslim

3    Imams who go to the CTF, and also there are sufficient Muslins

4    there who get together and pray.  And that's all, Your Honor.

5              THE COURT:  I think what -- I mean, I'm assuming

6    that they would have an Imam who would go to the D.C. Jail.

7    There is an issue as to how much authority the Court actually

8    has to order that somebody be moved from one place to the

9    other.  My suggestion would be to have a discussion with the

10   general counsel at corrections to see whether there is -- if,

11   depending on what their limits, et cetera, are, whether it's

12   possible to do a transfer.  And if they want an order in order

13   to do it, I don't have a problem.  But I prefer not to order

14   something that I can't actually enforce.

15             MR. VANEGAS:  Very well, Your Honor.  I will follow

16   through with that discussion.

17             THE COURT:  Okay.  All right.  Then I will excuse

18   you at this point and I will see you back December 13th at

19   10:00.  Have a good day, Mr. Mohammed.  Counsel.

20   END OF PROCEEDINGS AT 11:50 A.M.

21

22

23

24

25

1                      C E R T I F I C A T E

2              I, Lisa M. Hand, RPR, certify that the

3      foregoing is a correct transcript from the record of

4      proceedings in the above-titled matter.

5

6

7

8                             _____

9                             Lisa M. Hand, RPR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25