IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

      Government,                CR No. 06-357
                                  Washington, DC
    vs.                       December 13, 2007
                                  10:05 a.m.

KHAN MOHAMMED,

      Defendant.

_____/

TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:        MATTHEW STIGLITZ, ESQUIRE
                         U.S. Department of Justice
  (via telephone)         Narcotics and Dangerous Drug
                          Section
                         1400 New York Avenue, N.W.
                         Washington, DC  20530
                         (202) 305-3646

For the Defendant:         CARLOS VANEGAS, ESQUIRE
                         Federal Public Defender's Office
                         625 Indiana Avenue, N.W.
                         Washington, DC  20004
                         (202) 208-7500

Court Reporter:            Lisa M. Hand, RPR
                         Official Court Reporter
                         U.S. Courthouse, Room 6706
                         333 Constitution Avenue, N.W.
                         Washington, DC  20001
                         (202) 354-3269

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

1                      P R O C E E D I N G S

2              THE COURT:  Good morning, everyone.

3              COURTROOM DEPUTY:  Criminal case 06-357, United

4    States of America versus Khan Mohammed.  Counsel, I'm going to

5    have you identify yourself for the record.  Mr. Stiglitz.

6              MS. STIGLITZ:  Matt Stiglitz for the United States.

7              MR. VANEGAS:  Good morning, Your Honor.  Carlos

8    Vanegas on behalf of Mr. Mohammed.

9              THE COURT:  Mr. Vanegas, in order for Mr. Stiglitz

10   to hear you, you have to be speaking into the microphone.

11             MR. VANEGAS:  Yes, Your Honor.

12             THE COURT:  It doesn't mean you have to stand there

13   the whole time, but we are going to need to have that --

14             All right.  I had approved that Mr. Stiglitz could

15   be -- do this by phone.  And we do have the interpreter, if we

16   could swear the interpreter in.

17             (Interpreter sworn by clerk.)

18             COURTROOM DEPUTY:  State your name for the record,

19   please.

20             INTERPRETER:  Naim Saidi.

21             THE COURT:  This is the interpreter that we had at

22   the last session as well.  And, again, good morning,

23   Mr. Mohammed.  And let us know if for some reason you can't

24   hear something.

25             We did have a phone call among the parties on

1   November 28th, and my understanding, a couple of things, the

2   personal effects, certain personal effects of Mr. Mohammed

3   were ready to be turned over.  Have they actually been turned

4   over?

5              MS. STIGLITZ:  My understanding -- Mr. Vanegas

6   obviously will correct me if I'm wrong -- but my understanding

7   was that about a week ago the agents turned over some personal

8   effects to Mr. Vanegas.

9              MR. VANEGAS:  That's correct, Your Honor.

10             THE COURT:  And then I understand that some of the

11  documents have been translated into Pashto, and about half of

12  the transcripts of the phone calls.  So perhaps we could

13  hear -- since you're not here, Mr. Stiglitz, let me call on

14  you, so we make sure that nobody is talking at the same time.

15             Let me just find out in terms of the discovery

16  where we are in terms of the documents that the Government

17  plans on relying on.  Have those been translated and provided

18  to Mr. Vanegas, Mr. Stiglitz?

19             MS. STIGLITZ:  All of the -- first of all, if I

20  may, I'd like to thank the Court again for its letting me

21  appear by phone, and also to apologize to all the parties for

22  the last couple of days.  It's been kind of crazy over here

23  and I know everybody has been attempting to work around my

24  schedule.  And in the end we're sort of back to where we

25  started.  So, I wanted to apologize to everybody, particularly

1    Charles, because I know he was doing a lot of work to organize

2    all this.

3              THE COURT:  Charles is the law clerk, who did spend

4    a lot of time making phone calls.

5              Go ahead, Mr. Vanegas -- Mr. Stiglitz.  I'm sorry.

6              MS. STIGLITZ:  All of the original -- when I say

7    that, I mean Pashto documents, have been turned over that we

8    have.  In my discovery letter to Mr. Vanegas I included a few

9    draft transcripts of some of the written material.  However,

10   aside from that, some of the documents appear to be forms of

11   identification.  I expect that we will in the near term get

12   those interpreted.

13             But for that, I don't expect that we're going to

14   have any of the other written documents that are in Pashto

15   interpreted.  And I know that was the Court's concern, that we

16   at least let Mr. Vanegas know what we intended to have

17   interpreted so he wouldn't have to waste his time figuring out

18   what we were and what we weren't.

19             THE COURT:  Mr. Stiglitz, if you can speak just a

20   little slower so that we can actually hear you.  There's a

21   little bit of a reverberation.

22             In terms of what I believe was phone calls, have

23   those been transcribed and interpreted?

24             MS. STIGLITZ:  My understanding is that, as I

25   recall, there are about a dozen recordings, eight of which

1    were provided to Mr. Vanegas in the most recent discovery.  I

2    know that another one has since been essentially completed,

3    but there were a couple of formatting changes that were being

4    made.  I would expect to have that to Mr. Vanegas hopefully by

5    tomorrow, if not then by Monday.

6            And I know that Mr. Saidi is continuing to work on

7    the remaining three recordings.  So he would obviously be the

8    best person to let us know when he would expect to finish, but

9    I believe it would be about a week or so.

10           THE COURT:  All right.  So let me, in terms of --

11   just in terms of discovery, from the Government's perspective,

12   what is missing that you have not provided, I guess in

13   translated form and/or untranslated form, anything?

14           MS. STIGLITZ:  There are three of the

15   approximately -- well, four of the approximately -- let me

16   start again.  Four of the remaining transcripts, audio and/or

17   video recordings, we have left to turn over.  And the

18   translation of the identification documents, we need to have

19   done and turned over.  But I expect that is about it at this

20   point.

21           THE COURT:  So as I understand, from the

22   Government's perspective, what you view as what you would be

23   responsible to do is to have the, roughly four of the audio

24   and/or videos provided or transcripts provided with them?

25           MS. STIGLITZ:  No, Mr. Vanegas at the original

1   discovery was provided with all but one of the recordings.

2   That last recording, which I had inadvertently omitted, was

3   provided this past Monday when we turned over our second batch

4   of discovery.  So he has all of the audio or video recordings

5   that we have.

6            I would qualify that.  I'm told by the agents that

7   there is another recording.  They've on two occasions

8   attempted to provide it to me, but I could never open the

9   document or open the recording.  I'm not sure how long it is.

10  I don't think it's supposed to be very long.  But short of

11  that, all of the recordings that I have have been provided to

12  Mr. Vanegas as of today, and we're only waiting to get him

13  four transcripts.

14           THE COURT:  Okay.  So, left to do is potentially

15  this one additional recording that you've had trouble opening,

16  and transcripts for four of the audio or videos, and then some

17  translation -- the translation of identification documents.

18  Is that correct?

19           MS. STIGLITZ:  That's correct.

20           THE COURT:  How many documents are considered

21  identification documents?

22           MS. STIGLITZ:  From what I remember, I'm thinking

23  maybe four at most.  We're not talking that much material.

24           THE COURT:  Okay.  All right.  Then let me move to

25  Mr. Vanegas.  And, Mr. Vanegas, if I could just ask you to

1    come up.  And what I'd like to do is to -- I'll let you get

2    organized here.  If you could indicate to me a couple things.

3    One, whether or not you agree with what is left over from --

4    as you understand it, that the Government is required to

5    provide you, what you need to do in terms of the discovery.

6              But maybe we should start with where your client is

7    on either accepting a disposition, going to trial, whether

8    he's decided not to do it, whether he's decided he's still

9    thinking about it.  So where are we?

10             MR. VANEGAS:  He still wants to go to trial, Your

11   Honor.

12             THE COURT:  Okay.  All right.  Then let me --

13   what's left, from your perspective, in terms of the discovery?

14   Do you agree -- let me start with -- do you agree with what

15   the Government has indicated they have not provided you yet,

16   as far as what you know, which as I understand it, what he's

17   saying is that there are four audio or video recordings that

18   he needs to provide you with transcripts.  He provided you an

19   additional recording this past Monday.  And there's one extra

20   recording that he hasn't been able to open, so -- but that

21   obviously needs to be provided to you.  And then translating

22   these identification documents.

23             From your perspective, in terms of what you know of

24   the Government's discovery, is there anything more that you

25   want that they haven't provided or are about to provide?

1              MR. VANEGAS:  I think what Mr. Stiglitz has

2    identified this morning, Your Honor, I have received.  That

3    is, that in the last discovery packet that I received on

4    Monday afternoon, I did get transcripts of these phone

5    recordings and also transcripts of an audio recording.  In

6    that CD that -- he also included a CD that had additional

7    documents and videos, and I wasn't able to open the videos.

8    And I had the computer specialist in our office, and he was

9    unable to do so.  So I'm going to need another copy of that CD

10   so I can watch that video.

11             I did receive in the first discovery the recordings

12   of the conversations that I believe are between the

13   confidential source, the CS, and allegedly Mr. Mohammed.  And

14   because I don't understand what is going on, I don't know

15   what -- I don't know who's speaking.  But I think, based on

16   the disclosures that I received on Monday, they go to -- they

17   correspond to that initial discovery, that is, the original

18   recordings in Pashto.

19             So I think I do have -- I'm in agreement with what

20   Mr. Stiglitz indicates.  And I think that in order to -- I

21   also haven't received any identification -- translations of

22   identification documents, and I think that's what he's

23   indicated to the Court and the Court confirmed.

24             So generally, Your Honor, I'm in agreement with

25   what Mr. Stiglitz has indicated to the Court.

1          THE COURT:  As far as you know.  Okay.  What

2   additional things do you need to do in terms of getting

3   prepared for trial?  What I'd like to do, since your client

4   has decided to go to trial, is to pick a day in February.  I

5   have another trial that I had to move, and I have a window in

6   February as well.  I want to set your trial first since

7   Mr. Mohammed is locked up and I have sort of a window of

8   opportunity here.

9          And so one of the things is to make sure that

10  you'll be prepared.  In other words, you will have had an

11  opportunity to get all the things that you need, and then I'll

12  set a trial date, and I'll set a series of statuses in between

13  to make sure everything gets done, a motions schedule if

14  that's appropriate today.  And, as I said, at some point we

15  need to put the plea on the record, with the consequences of

16  the advisory sentencing guidelines, if he gets convicted

17  versus if he doesn't get convicted.  And, you know, so he

18  has -- so everything is on the record and there's no

19  misunderstanding.

20         But we can do that at a later point.  I mentioned

21  that earlier.  And as I told Mr. Mohammed, this is just to

22  make sure there's no misunderstanding about what the offer is.

23  It's your decision, Mr. Mohammed, as to what you want to do.

24         So I will, if he's decided to go forward to trial,

25  set the trial date today so we block that in.  I have

1    nothing -- February is open for me, it's just a matter of

2    figuring out how long the trial would be and when to set it.

3                    So what do you have left to do?  Let me ask that.

4    And then, are there motions likely to be filed?

5                    MR. VANEGAS:  Yes, Your Honor, a motion to suppress

6    statements, and also, depending on what documents Mr. Stiglitz

7    intends to introduce at trial, I may also file a motion to

8    suppress evidence.  I'm uncertain as to the documents that

9    he's obtained and where he got them from.

10                   I have received easily over 200 documents that are

11   written in Pashto.  And the difficulty that I'm in is that the

12   Government basically is able to figure out what it is in their

13   interest to present in trial, because -- and since they are

14   not translating all the documents that they've obtained, I'm

15   in the position of trying to figure out like what I should be

16   able to introduce in my case.  So that puts me in the position

17   of having to hire a translator, essentially, maybe to

18   categorize the type of documents that were retrieved, because

19   many of those documents certainly could be relevant and

20   material to defending Mr. Mohammed.

21                   So that is my big concern, Your Honor, and that is

22   going to take me some time -- or not take me some time, but

23   have an interpreter look through all those documents.  And I

24   come to this point because I had asked Mr. Stiglitz in a

25   discovery letter, in my response to his discovery letter, that

1    I wanted the documents that were listed in the initial CD --

2    and I have it right here -- from KM-001 through KM-0287 --

3    that the majority of those documents are in Pashto.  There are

4    photographs included within those documents.  And I asked if

5    he could have those documents translated.

6              He's basically indicated that he's going to pick

7    what he thinks is relevant.  So I'm going to have to then hire

8    someone to look through those other documents to see what I

9    think is relevant on behalf of Mr. Mohammed.

10             Other than that, I think it's pretty much clear-cut

11   as to what needs to be done with respect to filing the two

12   motions that I intend to file.

13             THE COURT:  Okay.  Mr. Stiglitz, at what point will

14   you be giving sort of a final version of what documents you're

15   interpreting so that he knows what else he needs to look at?

16             MS. STIGLITZ:  I would need to consult with Mr.

17   Saidi, but I would expect the volume of documents is such that

18   I would think within a week after he concludes the audio

19   transcripts he would be able to have a transcript or an

20   interpretation of the documents made.

21             THE COURT:  Are we talking early January?

22             MS. STIGLITZ:  I should think at the latest, yes.

23             THE COURT:  Mr. Saidi, can you nod if that sounds

24   right?

25             INTERPRETER:  (Nodded head in the affirmative.)

1          THE COURT:  Mr. Saidi is nodding that early January

2    would be when he would be able to complete what the Government

3    is doing.  But you can indicate earlier than that presumably,

4    Mr. Stiglitz, as to what you're not translating, correct?

5          MS. STIGLITZ:  I've already told Mr. Vanegas what I

6    am and am not translating, so he knows that today.  As for

7    what we are going to have official transcripts made of, I

8    believe that shouldn't take much more -- shouldn't take any

9    more than a week after the audio transcripts are complete.

10         THE COURT:  Do you know then what he's translating

11   versus what he's not?  Is that correct?

12         MR. VANEGAS:  As far as I can understand, he's just

13   going to have the identifications translated.  I don't know

14   what else -- these documents are all in Pashto, so I don't

15   understand what any of it is, so basically I had asked Mr.

16   Stiglitz to have all of them translated so that I know what

17   was recovered from his residence.

18         And he indicated that he's going to translate some,

19   but I don't know exactly what he's going to translate other

20   than these items of identification.

21         THE COURT:  Mr. Stiglitz, there seems to be a

22   difference of opinion here.  That is what I was trying to get

23   at.  Of the documents -- and I assume you all know what

24   documents you're talking about -- have you indicated to him

25   which ones you're going to interpret so he knows what's left

1    and can have somebody take a look at it and figure out roughly

2    what is in there?

3              MS. STIGLITZ:  Sure.  I thought I had, but it's

4    apparent that it hasn't been to Mr. Vanegas' satisfaction.

5    I'm not saying that in a bad way, I'm just saying obviously I

6    wasn't clear enough.

7              Why don't I do this?  On Monday when I'm back in

8    the office I will pull out -- I'll make copies of the specific

9    documents that I intend to have translated and provide that as

10   a separate package of discovery.  These will be repetitions of

11   what he already has, but it will make it more clear exactly

12   which documents we'll be having interpreted.

13             THE COURT:  By December 17th you would be doing

14   this then?

15             MS. STIGLITZ:  Yes.  And I can get him a new copy

16   of N-23, which is the videotape he was referring to that I

17   provided on Monday, but obviously for some technical reason

18   it's not opening.

19             THE COURT:  The other question was the superseding

20   indictment, which you had raised at one point.

21             MS. STIGLITZ:  Yes.

22             THE COURT:  Is that going to happen or not?

23             MS. STIGLITZ:  Quite frankly, it probably will

24   happen, but I would feel more comfortable making that final

25   decision after I've personally met with the witnesses.

1          THE COURT:  I'm sorry, after you what?

2          MS. STIGLITZ:  After I personally meet with the

3    witnesses.

4          THE COURT:  What is the timeframe for this?

5          MS. STIGLITZ:  I'm meeting with the witnesses in

6    January.  I would expect before the end of January, probably

7    by the third or fourth week, if we're going to supersede,

8    that's when we would do it.

9          THE COURT:  And what would be added to the

10   indictment?  What charges would be added?

11         MS. STIGLITZ:  Well, it most likely would be a

12   count of 21 U.S.C. 960(a), which is a charge of

13   narcoterrorism.  Whether that's a substantive count or a

14   conspiracy count or both, I'm not sure at this point.  But

15   that's the most likely charge to be added.

16         THE COURT:  Is that going to have additional

17   discovery or is it going to basically come -- the charge come

18   out of the discovery that's already been provided?

19         MS. STIGLITZ:  I expect the discovery to be

20   identical.

21         THE COURT:  Okay.  And I'm sorry, it was 21 U.S.C.

22   what?

23         MS. STIGLITZ:  960(a).

24         THE COURT:  Okay.  I'm trying to set the trial date

25   today, and I guess my concern is to come up with a date that

1    is going to work, because I have to set another trial, and the

2    other one has to be in February.  So, are you all going to

3    be -- I mean, I can do your trial, Mr. Mohammed's trial later

4    in February, and do this earlier.  I think I have --

5    February 11th is certainly a week that I could do the other

6    trial.  It's only supposed to take a week.

7                    MS. STIGLITZ:  If --

8                    THE COURT:  Let me see.

9                    MS. STIGLITZ:  If I may, Your Honor.  I don't

10   expect this trial to take more than a week.  And the earlier

11   in February for me, the better, because I have a month long

12   trial that begins in March.  I would feel a little more

13   comfortable if I had a week or two in between the two trials.

14                   THE COURT:  Well, that might be nice, but I'm not

15   sure that that's going to work.

16                   MS. STIGLITZ:  I appreciate that.  You know, the

17   Court has its own schedule.  But that week of the 11th, if the

18   Government had its druthers, would be a good week for us to

19   try this case.

20                   THE COURT:  The problem I see is I'm concerned

21   you're not going to be -- once I set this, then I set the

22   other case.  And I've got speedy trial issues to some degree

23   in both.  I want to do this as early as possible.  The other

24   case -- I have sort of a window, and if I don't do it in

25   February I wind up doing it almost in April.  So I do need to

1    set it.  But this takes precedence because Mr. Mohammed is

2    locked up.  But I want to set a date that actually is going to

3    work.

4              So one question, Mr. Vanegas, is is it better for

5    you if we do it slightly later?  I'm willing to do

6    back-to-back trials, I just want to make sure you're ready.

7              MR. VANEGAS:  Your Honor, my preference would be

8    for later, and the reason is based on two things.  One is the

9    documents, and two, the potential for an additional charge.

10   And notwithstanding the fact that the evidence is identical, I

11   mean, there may be different ways that I need to prepare to

12   defend the additional charge.  And, clearly, I think a

13   narcoterrorism -- his exposure increases I think dramatically.

14   So I don't want to rush into this thing.

15             But certainly -- I would certainly stay within

16   February, but towards the latter part of February, with all

17   apologies to Mr. Stiglitz.

18             THE COURT:  Mr. Stiglitz, when does your other

19   trial start?

20             MS. STIGLITZ:  It begins March the 10th.

21             THE COURT:  I'm sorry.  March the 10th?

22             MS. STIGLITZ:  Correct.

23             THE COURT:  Okay.  Let me, before I set the trial

24   date, let me work on a couple other things first.  When can

25   you do the suppression of statement and evidence, Mr. Vanegas?

1    Do you need –– I take it the statements you probably could

2    do –– I mean, I'd like to set a schedule today.  The schedule

3    that I would see would be the suppression of statements and

4    evidence if that's going to come.  I will not do it right now,

5    I'll wait until you have all of the information.  But I will

6    set a motion in limine schedule for both counsel a little

7    closer to trial, which would get to evidentiary issues if

8    there are issues about the documents or something else.  I'd

9    be inclined to do it in that context.

10          If you now foresee some issues there, then I can

11   set that now.  I mean, I'd do the suppression first, the

12   motions in limine sort of next, and then I'm going to bring

13   you back for a series of things to make sure that we are sort

14   of on track in terms of the motions, the voir dire, which

15   you'll have to –– I'll tell you now I have a standard voir

16   dire set of questions that, you know, all sizes fit

17   everything.  You'd obviously knock out some that don't work,

18   that don't apply to the specific facts of Mr. Mohammed's case.

19   But those are at least the basic questions that we always ask.

20          Then I would ask that you figure out which

21   additional questions you would want to ask, that both of you

22   can agree on.  What I don't want to get is two sets of

23   questions that frankly go to the same thing.  So you would

24   need to figure out what bias you're trying to get at, and add

25   some additional ones that the two of you agree on.  And if

1   there are some additional questions that one side or the other

2   wants, if there's no objection, you do that.  And then if

3   there are ones that are objected to, you provide those.

4          I do this a little before -- obviously before

5   trial, so that I can look through them and you'll know what my

6   rulings are.  But I do require them on a disk, and together.

7   I mention it now so that you in your mind can start thinking

8   about this.

9          Obviously if you add superseding with the

10   terrorist, that will raise a whole new set of questions to be

11   asked.  If that's not there, then it's a different -- there's

12   probably different -- I don't know how many additional

13   questions.  There would be typical drug questions I have in

14   there.  I also have one about the use of interpreters, et

15   cetera.

16          The last time you had spoken -- well, let me finish

17   this.  The other aspect of it is jury instructions, that

18   really go to the offenses themselves, the rest I take

19   generally out of the red book, so if you just list what you

20   want, I don't have a real problem with that.  But to look at

21   the offenses and again make sure that we can come to an

22   agreement.  I think the ones that he's been charged with as a

23   practical matter, which is I think just one charge, is I think

24   there are standard instructions that go to this.  I don't know

25   that they are in the red book, but I do think that there are

1  probably Federal Judicial Center kind of instructions about

2  this.  This has not come up for the first time.  I may even

3  have some that I'll take a look at.

4          But at any rate, you need to take a look at it,

5  figure out if you agree with it.  And I don't want to get two

6  versions of it that I have to go line by line trying to figure

7  out what the difference is.  What I ask is that you put one

8  together, and if there are some differences in wording in the

9  document itself, you know, one is underlined, one is

10  highlighted or something, so I can figure out what it is that

11  is different and what decisions I have to make.  It just makes

12  it quicker.

13          It may not be a problem, because -- assuming it

14  stays the way it is, because I think these charges have been

15  around for some time, and I have a feeling that there's

16  probably instructions.  I want standard instructions, not ones

17  that people have tinkered with, because then they'll create

18  problems.

19          You indicated, Mr. Stiglitz, that if you didn't do

20  the -- if you did the superseding indictment, you probably

21  wouldn't have 404(b) evidence.  Are you thinking of making the

22  404(b) evidence, if you don't do a superseding indictment,

23  some sort of terrorism thing?  Or was this something else?

24          MS. STIGLITZ:  It's certainly a possibility, but I

25  haven't really crossed that bridge yet.  But if there was

 1  going to be -- I mean, there are two potential areas of

 2  404(b).  The first would be an opium transaction that the

 3  Defendant was involved with, with the same CS.  And the second

 4  one potentially might have terror implications to it.

 5       THE COURT:  Well, I think we need to -- I mean, if

 6  we're going to set this in February, I mean, we need to --

 7  which I think frankly makes it later in February if you're not

 8  going to be making a decision until sometime in January as to

 9  the superseding.  If you do it before the end of January, I

10  mean, it does make a difference if you're going to be doing

11  404(b).

12       You need to file something and we need to have an

13  opportunity to have an opposition if there's going to be one,

14  and for the Court to make some ruling.  And I certainly need

15  to at least look at it and discuss it beforehand, before we

16  start the trial, so that people are prepared.  To the extent

17  that I can rule on things, I will do it in advance.

18       And, for instance, exhibits, taking a look at them.

19  In this kind of case I would make sure everybody looks at the

20  exhibits early enough so that if there are actually objections

21  to them for some reason or another, we can take care of them

22  in the motions in limine.

23       I would like to set a date by which either there is

24  a superseding indictment and/or a 404(b) motion filed, so that

25  the Defendant knows what he's actually facing, and also we can

21

1   have a schedule that works.

2           So let me get back to, the suppression of statement

3   and evidence, Mr. Vanegas, what do you envision at this point

4   in terms of when you could file it?

5           MR. VANEGAS:  I think with the suppression of

6   statements I can get that in -- can I submit it on

7   January 7th, Your Honor, or is that too far in the future?

8           THE COURT:  No, I think that should be okay.  When

9   could you file an opposition, Mr. Stiglitz?

10          MS. STIGLITZ:  Yes.

11          THE COURT:  Can you do it in a week?

12          MS. STIGLITZ:  I'm afraid I wouldn't be able to do

13  it in a week, because I'll be traveling during some period of

14  time.

15          THE COURT:  How about the 21st?  That is two weeks

16  later.

17          MS. STIGLITZ:  I can have it done the 21st.

18          THE COURT:  You can or cannot?

19          MS. STIGLITZ:  I can.

20          THE COURT:  The answer is yes or no?

21          MS. STIGLITZ:  Yes, I can.

22          THE COURT:  I'm sorry.  We just had a little

23  trouble hearing.  So the statement would be, Mr. Vanegas would

24  file it January 7th, the opposition would be January 21st.  In

25  terms of the evidence, would you by then be able to -- can we

1    set that as a goal?  If it turns out you need to look at some

2    additional things, you can ask for an extension, I don't have

3    a problem.

4            MR. VANEGAS:  Yes, that's a good date.  I think I

5    can file that -- I will file it by then.

6            THE COURT:  All right.  So we'll set the same dates

7    for both the statement and the evidence in terms of

8    suppression.  What I would like is to set -- are the

9    superseding indictment and the 404(b) linked together, so if

10   we were going to set a deadline, that is what we're talking

11   about?

12           MS. STIGLITZ:  I think that's -- yes.

13           THE COURT:  Can you look at your calendar and tell

14   me when that is likely to happen?

15           MS. STIGLITZ:  I would say probably by the 28th of

16   January.

17           THE COURT:  Okay.  So you're either going to

18   file -- can you make a decision on the opium one without

19   having to -- let me backtrack.  On the opium, alleged opium

20   transaction, would that be part of your superseding

21   indictment, or is that strictly making a decision about

22   whether it's 404(b)?

23           MS. STIGLITZ:  That may also be part of the

24   superseding indictment.

25           THE COURT:  So, it would be based on two things,

1   this alleged opium transaction or some sort of terrorist

2   thing -- charge.  You said, what date did you say you could do

3   it?

4               MS. STIGLITZ:  I would expect by January the 28th.

5               THE COURT:  So by January 28th we would actually

6   have in hand either a 404(b) or you would have superseded the

7   indictment?

8               MS. STIGLITZ:  Yes.

9               THE COURT:  Okay.  What I would ask is, I don't

10  have a problem in terms of the filing, but if you would let

11  Mr. Vanegas know earlier than that.  I mean, you're obviously

12  going to have to prepare something.  As soon as he knows -- as

13  soon as you talk to the witness, you should let him know, or

14  if you know dates or anything else about this alleged opium

15  transaction, so he has some information about it.  Can you do

16  that at least?

17              MS. STIGLITZ:  I would expect to, yes.

18              THE COURT:  I mean ultimately you may not use it,

19  but at least he'd be aware of it.  Has any information been

20  provided to Mr. Vanegas about this alleged opium transaction?

21              MS. STIGLITZ:  Yes.  Actually, the N-23 video that

22  was provided to him on Monday is actually a videotape of that

23  transaction.  So I will be back in the office Monday and I

24  will get him a copy of that on Monday.

25              THE COURT:  All right.  Okay.  So if we're looking

1    at the motion to suppress January 7th, January 21st.  You

2    would file by the -- no later than the 28th whether you're

3    going to either do 404(b) evidence, superseding indictment, or

4    none of the above.  And we would need then an opportunity --

5    you don't think you could do it any earlier than that?

6         MS. STIGLITZ:  Well, for reasons I'd really rather

7    not discuss with the Defendant present, I don't think it's

8    realistic for me to expect that any earlier.

9         THE COURT:  Okay.

10        MS. STIGLITZ:  I'm not trying to be cryptic, but

11   there are certain security issues that I'm concerned with.

12        THE COURT:  Let me put it -- let me just look at

13   something.  The 28th is a Monday, so can you get it in by

14   February 4th?  If we're going to try and do a trial in

15   February, I would need to have it by the 4th.  Let me just --

16        MS. STIGLITZ:  Are you talking to --

17        THE COURT:  I'm talking to Mr. Vanegas.

18        MR. VANEGAS:  Your Honor, I missed something.  That

19   would be to file an opposition to --

20        THE COURT:  If he files a 404(b).  If he does the

21   superseding indictment, there's not an opposition to it, it's

22   more a matter of making sure you're prepared.  If he's giving

23   you all the discovery, then it seems to me the issue that you

24   would have would be, at least that I could see at this point,

25   would be just preparing for the additional charges.  If it's a

1  404(b), then I would set that as a date by which you could

2  file an opposition, if he's couching it in that term.

3           MR. VANEGAS:  That's fine, Your Honor,

4  February 4th.

5           THE COURT:  That would really be just if it's a

6  404(b).  Now, I think you need, prior to that time, to start

7  exchanging exhibits, at least from the Government's

8  perspective, so that, Mr. Vanegas, you would file some -- and

9  the Government for that matter, file motions in limine, so if

10  there's evidentiary issues about the exhibits in some form --

11  and I can't, I don't know what -- there may not be any, but

12  I'd like to get them early enough, since you're cutting this

13  pretty close for me and I'm going to be in trial during

14  February as well.

15           When do you think you could both figure out what

16  evidentiary issues potentially -- you would want to exclude

17  evidence of one sort or another, or raise issues about the

18  exhibits.  I'd ask that you talk to each other before you file

19  it, to make sure that you can't really, that there isn't a way

20  to resolve it before you actually put something down on paper.

21  Because on some of these evidentiary issues there's ways of

22  taking care of it.  But anyway, what timeframe would you see?

23  Mr. Vanegas, let me start with you.

24           MR. VANEGAS:  Well, this involves getting together

25  with Mr. Stiglitz and making some decisions.  I think that

1    sometime in the week of the following week, February 11th, I

2    think we should be able to get together and resolve these

3    issues, either jointly or we can tell Your Honor that the

4    Court needs to make decisions regarding our disagreements.

5            THE COURT:  Well, if you're going to do it in

6    February, if you do it the 11th, I'm assuming you're talking

7    about doing the trial February 25.  Otherwise you're not

8    giving much time for anything.  Look at your calendar.

9            My suggestion would be to do it that week.  If

10   you're going to be getting things in on the 4th, and if you

11   want to do motions in limine around the 11th, which is cutting

12   it somewhat short, but if you wanted to do it then, then I

13   would not have the trial start just the next week.  That is

14   not enough time for us to get everything done, frankly, for

15   you to know what rulings I might make.  If you're going to do

16   that, then I'd make the trial the 25th.

17           MR. VANEGAS:  That's fine, Your Honor.

18           THE COURT:  All right.  So February 11th will be

19   the motion in limine date, the outside date.  If you see

20   things earlier, you know, you can file these on a rolling

21   basis.  We don't have to wait and do them all at once.  So if

22   there are issues that come up as you review these that you

23   think are problems in terms of either their use or some other

24   aspect about it, or a particular kind of evidence you have

25   some question about.  Don't do the 404(b) business, because

1    that will be handled in a different context.  This is really

2    evidentiary issues of one sort, either evidence that would be

3    presented, and/or exhibits, is the way I would generally see

4    that.

5            So if you file it on the 11th, then the latest

6    response that I would be able to get would be the 18th -- I

7    mean the 19th, the 18th is a holiday.  As I said, I would hope

8    that you'd talk and narrow it down, because you may be able to

9    do that.

10           All right.  I think what I would do is

11   February 15th I should get the voir dire and a neutral

12   statement of the case that can be read to the jury.

13           MR. VANEGAS:  That's fine.

14           MS. STIGLITZ:  February 15th?

15           THE COURT:  Yes, February 15th.  So you'll have had

16   some discussions in here.  And, as I said, I handed Mr.

17   Vanegas my standard catch-all one.  When you get back in town

18   you can ask for one as well.  You can figure out which ones

19   obviously don't apply to it.  But I have specific ways of

20   asking questions, law enforcement, et cetera, and I'd like to

21   keep it --

22           The only thing you might do for me is to indicate

23   if there are particular law enforcement agencies that I don't

24   have included in my inclusive one, to make sure we add it,

25   since I won't know that.

 1          MS. STIGLITZ:  If I may, does the Court ever

 2  consider the use of --

 3          THE COURT:  All right.

 4          MS. STIGLITZ:  Sorry about that.  Sorry, Your

 5  Honor.

 6          THE COURT:  So what is it that you asked?

 7          MS. STIGLITZ:  Does the Court ever consider the use

 8  of jury questionnaires for voir dire?

 9          THE COURT:  I generally don't.  It takes a lot of

10  additional time, and frankly, as a practical matter you

11  usually wind up having to ask the questions anyway.  The only

12  one that I might give some thought to is the one on the

13  terrorism.  But otherwise, it also -- I'm not sure what it

14  would get at.  I mean, most of the standard questions that you

15  would ask in terms of drug cases, et cetera, there's no --

16  this Court has dealt with them and so have the juries.  So I

17  don't see there being something extra.  The only one that I

18  think potentially would be if you get -- I'll give some

19  consideration if there's -- if you wind up adding some

20  terrorism charge.

21          But what I find is that you still wind up having to

22  talk to people.  It's rare that counsel agree that someone can

23  be excused.  But we can discuss it closer in time.  Why don't

24  you talk to Mr. Vanegas about what it is that you're actually

25  thinking of.  But I have not found them particularly useful.

1  And I'm not sure this kind of case actually needs it.  I bring

2  people -- in essence, you wind up talking to all of the jurors

3  that you're going to consider.  I go through the questions,

4  they write down the number of the question that they have

5  answers to, and I bring them up one by one.  So you will in

6  essence get an individual voir dire.

7          MS. STIGLITZ:  Okay.

8          THE COURT:  So, it's not something that is done in

9  the courtroom, it's done at the bench for each of them.  But

10  what would you, just so I know, what would you consider as

11  being in the jury questionnaire?

12          MS. STIGLITZ:  Well, I don't have one in front of

13  me, but we have one that we've used in other cases.  But it's

14  a little more probing in terms of attitudes that potential

15  jurors have, and I've often found that it just makes it easier

16  to consider the jurors' answers, and you get a more complete

17  answer when they have to write down their answers on a piece

18  of paper.

19          THE COURT:  As I said, since I bring everybody up,

20  you'll have an opportunity to ask those questions directly

21  with them right in front of you.

22          MS. STIGLITZ:  Okay.

23          THE COURT:  Okay.  So we'll do February 15th, the

24  statement of the case and the voir dire.  The jury

25  instructions I would want probably by February 20th, and that

1   would be a laundry list of whatever red book instructions that

2   you generally think are applicable.  And, frankly, the

3   offenses are what I'm most concerned about in terms of making

4   sure that the elements of the offense -- that there is some

5   agreement, or before we go into it, if there isn't, that we've

6   had some opportunity to consider it and look at it.  As I

7   said, I think there are standard instructions that go to this.

8          Okay.  So the next thing we need to do is to set a

9   series of statuses.  And I think what I'm going to do is wait

10  until you have filed everything, and then I will set -- I have

11  the trial date.  I will then set a motions hearing date.  What

12  I'd like to do is to see when my other trial is set, and then

13  I'd be in a better position to frankly set the hearing date

14  for the motion for the statements -- to suppress the

15  statements.  I'm assuming it will require an evidentiary

16  hearing.  I don't know until I see it, but let's assume it

17  does.

18         Then I would like to see what my other schedule is

19  so I can do it, and set it in advance.  Depending on when the

20  other schedule is, I might start the voir dire on the 22nd, so

21  we can actually start the 25th.  But, again, I'd have to look.

22         One thing, Ms. Patterson, can you look and see when

23  we get new jurors.  Let me see whether we're with a group

24  that's sat before or they're new.  Because it sometimes makes

25  a difference in terms of how that works, although -- does it

1    sound right that about a week would be roughly accurate?

2          MR. VANEGAS:  Trial time, yes, Your Honor.

3          THE COURT:  Okay.  In terms of statuses then, do

4    you want to set -- let me just look -- we should probably set

5    one after you have filed the opposition and the motion to

6    suppress.  And at that point it's close enough in time -- I'll

7    at least have it filed so I know what's in it.  It will be

8    close enough in time to also have some sense of where -- so

9    I'd do it after the 21st.  I'm on my other court the week of

10   the 21st.

11         How about if we set it the 28th.  The 28th you'll

12   either be -- or the 29th -- you'll either -- at that point we

13   will have the motions to suppress statements and evidence

14   filed, with an opposition, and we'll know at that point

15   whether it's a 404(b) or whether it's a superseding

16   indictment, and I can either -- we'll have that information

17   in.  Do we need to do anything earlier?  I mean, I would if

18   you are concerned about discovery or anything else.

19         MR. VANEGAS:  No, Your Honor, I think that's fine.

20   I was also going to suggest that on that day -- whether prior

21   to that day the Court could order the probation office to do a

22   criminal history calculation in order for Mr. Mohammed to be

23   apprised of his exposure based on the plea, and then if he

24   goes to trial.  Then the Court I think suggested that -- what

25   he's facing can be put on the record, so that maybe we can use

1 | that status hearing also to put on the record that

2 | information.

3 | THE COURT:  Okay.  When do you want me to order --

4 | when would they have enough information to order it?  They

5 | usually like a couple of weeks, unless -- I mean, I don't know

6 | whether it's going to be strictly what the charges are that

7 | they need.  I assume that there aren't -- this isn't going to

8 | be an issue of calculation of criminal convictions.  Am I

9 | correct?

10 | MR. VANEGAS:  That's correct, Your Honor.

11 | THE COURT:  Mr. Stiglitz, would you agree?

12 | MS. STIGLITZ:  Yes.

13 | THE COURT:  So it's really what the charges are

14 | going to be.

15 | MR. VANEGAS:  Yes.  So we can get them two sets of

16 | charges, one without the superseding indictment and another

17 | set with the superseding indictment, and then --

18 | THE COURT:  It's really more the offense level that

19 | you're actually asking for than criminal history, isn't it?

20 | MR. VANEGAS:  That's right, Your Honor.

21 | THE COURT:  Okay.  What I could do is, why don't I

22 | do an order now.  I'll do the order and indicate -- and I'll

23 | talk to Mr. McCroson about what the two things are, and have

24 | them discuss it with you, and they can at least start to look

25 | at it, so we can get it turned around pretty quickly.

83

1          MR. VANEGAS:  Thank you, Your Honor.

2          THE COURT:  I think that will be helpful.  And that

3    way we can look at, on the status on the 29th, I can look at

4    the motions, et cetera.  We'll also know whether there is a

5    new indictment.  And let me set just a couple of other

6    statuses while I've got you here.  I have something at -- I

7    can do it at 9:00 on the 29th.  Does that work?

8          MR. VANEGAS:  That's fine, Your Honor.

9          THE COURT:  Mr. Stiglitz.

10          MS. STIGLITZ:  Yes, fine.

11          THE COURT:  Okay.  Then let me -- I think in terms

12    of setting another status, I may wait and bring you in on the

13    29th.  Nobody has trials in February, right?  Is that correct,

14    Mr. Vanegas?

15          MR. VANEGAS:  Yes, Your Honor.

16          THE COURT:  And you don't have a trial either,

17    Mr. Stiglitz?

18          MS. STIGLITZ:  Correct.

19          THE COURT:  But I will, so let me see when the

20    other trial is, and then I will definitely set at least one or

21    two other statuses in February.  One may be a combination of a

22    motions hearing/status, and then I'll do one certainly just

23    before we start trial to make sure that we've got everything

24    lined up, the voir dire, everything else that needs to be done

25    in it.  But since I'm not sure when the other trial is going

1   to be, I'll wait at this point.

2          I'll issue an order, but let me just go over what

3   the -- let me just get my own notes here.  Okay.  So we

4   have -- the trial is February 25th at 9:00 o'clock.  The

5   motion to suppress statements and perhaps evidence will be

6   January 7th, '08, and opposition the 21st.  Either a 404(b)

7   motion and/or a superseding indictment will be filed no later

8   than January 28th of '08.  And if it's a 404(b), then there

9   would be an opposition filed February 4th.

10          Motions in limine will be February 11th, any

11  response or oppositions February 19th.  And that's both

12  parties.  So that should be both the Government as well as the

13  Defense.  In terms of voir dire and the statement of the case,

14  you would be filing on a disk jointly by February 15th.  And

15  the jury instructions, particularly the offenses, again, joint

16  on a disk by February 20th.  And we would have a status on

17  January 29th at 9:00 o'clock, at which we would go over the

18  motions and set further statuses, as well as the motions

19  hearing -- and I'll be in a better position at that point --

20  as well as additional statuses.

21          I will go ahead and issue an order to probation to

22  do the offense level calculation.  You can have -- I'll

23  suggest to them that they have a discussion with both of you

24  to have them start considering, depending on which -- whether

25  it's the present indictment or a later indictment, so that we

1  would have that, since I'll put that on the record at some

2  point.

3          Now, the other thing that I do -- we'll issue an

4  order, is that I believe at this point that a further

5  continuance in the interest of justice should be put in place

6  now that we have other dates.  And in terms of making sure

7  that Mr. Vanegas has been provided everything that you need to

8  represent effectively Mr. Mohammed, since he's decided to go

9  to trial, is to make sure that you have all of the

10 information, the motions have been filed, and the Court has

11 made all of these rulings in advance of the trial.  But I'll

12 probably issue something, I'll do an addendum to what I've

13 already actually issued.

14          Anything else that I need to know from either

15 party?

16          MR. VANEGAS:  No, Your Honor.

17          THE COURT:  Anything from the Government at this

18 point?

19          MS. STIGLITZ:  The only thing that I would add is

20 with respect to any potential motions hearing on a motion to

21 suppress, as it would likely involve an Afghan witness, I

22 would just ask that any potential motions day be actually

23 right before the trial, so that way they only need to be

24 brought once, rather than back and forth.

25          THE COURT:  Okay.  Well, part of it -- that's why I

1  haven't set anything at this point.  Let me see the motions,

2  and then I'll have a better idea of my own schedule as well as

3  you'll know when witnesses are showing up, so that we can set

4  a date when they are around to actually testify.

5          MS. STIGLITZ:  Okay.

6          THE COURT:  All right.  Anything else?

7          MR. VANEGAS:  No, Your Honor.

8          THE COURT:  All right.  Then let me excuse you at

9  this point.  Mr. Saidi, I know you're working on these

10  translations.  Obviously, as expeditiously as you can do them,

11  that would be helpful.  And if you would mark on your

12  calendar, and we'll contact Ms. Salazar, we definitely will

13  need you for the status January 29th at 9:00, and for the

14  trial February 25th at 9:00.  You'll have to have some

15  discussions with her about that.  And then I'll set other

16  dates when you come back on the 29th, a motions hearing and

17  whatever other statuses we need.  Okay?

18          INTERPRETER:  Yes.

19          THE COURT:  Thank you.  Have a good day, everybody.

20          INTERPRETER:  Your Honor.

21          THE COURT:  Oh, you're not going to be available?

22          INTERPRETER:  It is in New York.

23          THE COURT:  That may be a problem.

24          INTERPRETER:  January the 25th, but it is

25  tentative, and it is a big case and takes about a month once

1    the trial starts.

2          THE COURT:  Have you been locked into it already or

3    not?

4          INTERPRETER:  Yeah, about three years now.

5          THE COURT:  Okay.  Well, that may be a problem.

6          INTERPRETER:  Also, on all three --

7          THE COURT:  At what point will you know for sure,

8    because if this -- if you cannot do it that week, then we need

9    to pick another week, unless there's somebody else that can

10   actually do the translations.

11         INTERPRETER:  I will know by the second week of

12   January certainly.  Right now we've just had a conference,

13   status conference last week, and the judge put February 25th

14   tentative date for trial.

15         THE COURT:  Can you translate for Mr. Mohammed what

16   you just said, so he knows what the problem is.

17         (Interpreter complies.)

18         THE COURT:  Have you finished?  I just wanted to

19   explain, Mr. Mohammed, that we may have a problem here.  Let

20   me call Ms. Salazar to see if we have anybody else available,

21   although I'm assuming that people would prefer to have Mr.

22   Saidi, since he's been involved.  But I can check and see.

23         My suggestion is that we set a backup date just in

24   case this doesn't work.  And the backup date I think should be

25   just the week afterwards.  I realize that, Mr. Stiglitz, that

1   puts you into March 3rd.  Well, no, if he starts then --

2   actually, we need to do it earlier then because he said if he

3   starts on the 25th -- it's a month trial, so he wouldn't be

4   available.  Is that correct?

5          INTERPRETER:  Yes, Your Honor.

6          THE COURT:  Are you going to be prepared earlier,

7   or do we actually need to get somebody?  I should have thought

8   to ask him.

9          MR. VANEGAS:  No, Your Honor.  I think we need to

10  get someone else.  If Mr. Saidi cannot do it on the 25th, then

11  I would prefer we find an alternative interpreter, because I

12  think there's a lot here to be able to digest and properly --

13         THE COURT:  Let me contact Ms. Salazar immediately

14  and see whether -- and I'll get back to you if we have some

15  problems with this.  But let's leave the present dates as

16  we've set them out.

17         MR. VANEGAS:  Yes, Your Honor.

18         THE COURT:  All right.  Parties are excused.

19         MS. STIGLITZ:  Thank you, Your Honor.

20         THE COURT:  Thank you.

21  END OF PROCEEDINGS AT 11:10 A.M.

22

23

24

25

C E R T I F I C A T E

I, Lisa M. Hand, RPR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.

_____

Lisa M. Hand, RPR