**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>KHAN MOHAMMED,<br><br>    Defendant. |

**Criminal No. 06-357 (CKK)**

**MEMORANDUM OPINION AND ORDER**
(July 18, 2022)

In December 2021, this Court granted Defendant's motion to vacate his narcoterrorism conviction and to resentence him.  *See* December 21, 2021 Order and Memorandum Opinion, ECF Nos. 208, 209.  Mr. Mohammed is scheduled for resentencing by this Court on July 19, 2022, on his remaining conviction for distribution of heroin.  The parties disagree as to whether a sentencing enhancement – based on commission of an offense that intended to promote a federal crime of terrorism – is applicable.  Upon consideration of the record in this case and the briefing by the parties on this issue, the Court finds that this sentencing enhancement is applicable.

I. Background[1]

On May 15, 2008, Khan Mohammed ("Defendant" or "Mr. Mohammed") was convicted by a jury in this Court of one count of distributing one kilogram or more of heroin intending or knowing that it will be unlawfully imported into the United States (Count I) and one count of distributing a controlled substance knowing or intending to provide anything of pecuniary value to a person or organization that has engaged in terrorism or terrorist activity ("narcoterrorism")

---

[1] Some of the "Background" information in this Memorandum Opinion is reiterated from this Court's [209] December 9, 2021 Memorandum Opinion.

(Count II).  *See* Verdict Form, ECF No. 62.  On December 22, 2008, this Court sentenced Mr. Mohammed to concurrent terms of life imprisonment on Counts I and II.  *See* Judgment in a Criminal Case, ECF No. 84, at 3.

Defendant filed a timely appeal and as part of that appeal, Mr. Mohammed argued that his trial counsel was ineffective for failing to adequately investigate certain evidence that Defendant asserts would have strengthened his defense.  *See generally United States v. Mohammed*, 693 F.3d 192, 202-204 (D.C. Cir. 2012) ("*Mohammed I*").  On September 4, 2012, the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") upheld Mr. Mohammed's conviction and sentence but remanded the case for this Court to conduct an evidentiary hearing on Defendant's claim of ineffective assistance of counsel to determine if Defendant was prejudiced as to the narcoterrorism charge because of his counsel's deficient performance.  *Id.* at 204-205.

After the matter was remanded to this Court, Mr. Mohammed filed his [118] Motion to Vacate his Conviction, or in the Alternative for Resentencing, which was premised on ineffective assistance of counsel claims, and this Court held an evidentiary hearing relating to Defendant's motion to vacate and denied subsequently that motion.  Defendant appealed from that decision, and the D.C. Circuit affirmed in part, vacated in part, and remanded to this Court for "further proceedings consistent with [their] opinion."  *See United States v. Mohammed*, 863 F.3d 885, 893-894 (D.C. Cir. 2017) ("*Mohammed II*") ("On the current record, and without additional district court findings, we cannot assess what a reasonable investigation in 2008 could have found.  . . . [and therefore,] [r]econstruction of what a reasonable investigation [by counsel] could have uncovered . . . [is a] step [that] must be taken on remand.")

More specifically, the D.C. Circuit determined that Mr. Mohammed's counsel was deficient because he had "failed to take the obligatory step of calling potential witnesses[,]" in Afghanistan, to try to impeach the credibility of the Government's witness [Jaweed, the Government informant] and demonstrate bias, *id.* at 890, and such "failure to place calls or otherwise reach out to potential witnesses [could] not be traced to any strategic decision." *Id.* at 891. The D.C. Circuit affirmed the Defendant's drug trafficking conviction, noting that Defendant was not prejudiced because he was "convicted based on [his] own words" on the drug trafficking charge. *Id.* at 892. In contrast, the D.C. Circuit indicated that "[o]n the existing record, [it] [could] not exclude the possibility of prejudice as to the narcoterrorism conviction [as] Jaweed's testimony was the only evidence that linked Mohammed to the Taliban [and] [i]t thus provided critical support for the narcoterrorism charge." *Id.* Accordingly, the D.C. Circuit concluded that "it is reasonably probable that the jury would not have convicted Mohammed [on the narcoterrorism charge] if Jaweed's testimony could have been effectively undermined." *Id.* While this Court focused previously on the four potential impeachment witnesses named by Mr. Mohammed, the D.C. Circuit found this was "too limited" and charged this Court with "reconstruct[ing] what an adequate investigation in 2008 could have uncovered and how counsel could have used that information at trial (as fodder for cross-examination as well as direct testimony)." *Id.* at 893.

Subsequent to that remand by the D.C. Circuit, the parties explored options regarding the "reconstruction" of a reasonable investigation, and eventually, defense counsel retained the services of a company in Afghanistan to "arrange for an Afghan court to take sworn testimony of Mr. Mohammed's witnesses, transcribe the testimony and provide it to counsel." May 6, 2019 Minute Order. Because there was a dispute regarding the Government's opportunity to cross-

examine the witnesses, the Court held a status conference on August 20, 2019, to try to resolve how to proceed.  The Defendant was ordered to provide to the Government a copy of any affidavits obtained, and "[u]pon review of the sixteen affidavits, the [G]overnment withdr[e]w its request for formal depositions of the defense witnesses" and "consent[ed] to the admissibility of the affidavits for the limited purpose of considering the merits of Defendant's ineffective assistance of counsel claim."  *See* Joint Status Report, ECF No. 196, at 2.[2]  Thereafter, the Court set a briefing schedule for the parties regarding Defendant's [200] Motion to Vacate, which was based on his claim of ineffective assistance of counsel.

Upon consideration of the briefing provided by the parties, this Court found that Mr. Mohammed was prejudiced by ineffective assistance of counsel regarding the narcoterrorism charge.  "In assessing prejudice, the ultimate question is whether Mohammed has shown a reasonable probability that adequate investigation would have enabled trial counsel to sow sufficient doubt about Jaweed's credibility to sway even one juror."  *Mohammed II*, 863 F.3d at 892 (internal quotation marks and citation omitted).  This Court concluded that "the impact of Jaweed's testimony could have been undermined, at least partially," by evidence of his alleged bias and that evidence "may have swayed at least one member of the jury to (at least partially) discredit Jaweed's testimony."  Mem. Op., ECF No. 209, at 25.   Accordingly, the Court granted the Defendant's motion to vacate the narcoterrorism conviction (Count Two) and resentence Mr. Mohammed on the drug trafficking charge.  *See* Order, ECF No. 208.  The Court established a

---

[2] The Court references the page numbers assigned through the Electronic Case Filing ("ECF") system.

4

briefing schedule for the parties to file memoranda in aid of resentencing and, as previously noted, Defendant's resentencing is set for July 19, 2022.

On April 8, 2022, the Probation Office filed its [215] Final Presentence Investigation Report ("PSR"). On June 3, 2022, the Government filed its [224] Memorandum in Aid of Resentencing ("Govt. Mem."), and the Defendant filed his [225] Sentencing Memorandum ("Def. Mem."). On June 17, 2022, Defendant filed his [226] Response to the Government's Sentencing Memorandum ("Def.'s Response"), and the Government filed its [227] Response to Defendant's Sentencing Memorandum ("Govt. Response"). The Court has considered the briefing by both parties as well as the PSR filed by the Probation Office.

The parties disagree on the application of a "Victim Related Adjustment" (applicable where "the offense is a felony that involved, or was intended to promote, a federal crime of terrorism" ) (hereinafter referred to as "terrorism enhancement"). This terrorism enhancement adds 12 levels to Defendant's base offense level of 30 on Count One (Distribution of One Kilogram or More of Heroin Knowing that the Substance Would Be Unlawfully Imported into the United States), resulting in an offense level of 42 and a Guideline sentencing range of 360 months to life. *See* PSR, ECF No. 215, at 9-10, 13.[3] Defendant explains that the "U.S. Probation Office recommends a sentence of 348 months' imprisonment and 60 months of supervised release with the special condition that [Defendant] comply with deportation proceedings [,] . . . [while] [t]he government seeks a life sentence." Def.'s Mem., ECF No. 225, at 3 (internal citations omitted).

---

[3] Pursuant to the statutory provisions, "[t]he minimum term of imprisonment is 10 years and the maximum term is life for this Class A Felony. 21 USC §§§ 959(a)(1), (a)(2) and 960(b)(1)(A)." PSR, ECF No. 215, at 13.

Defendant asserts however that without the 12-level terrorism enhancement, "the proper Guideline range is 97 to 121 months." *Id.* at 23.

The Government contends that the terrorism enhancement is applicable because: "[f]irst, the defendant's own admissions, recorded on audio and video and admitted into evidence at trial, support the application of the terrorism enhancement [and] [s]econd, the Court should credit Jaweed's testimony at trial to further support the application of the terrorism enhancement." Govt. Mem., ECF No. 224, at 1. In contrast, Defendant argues that:

> [F]irst, the post-conviction history of this case found that Mr. Mohammed was not afforded effective assistance of counsel in challenging Jaweed's testimony, which was central to the government's case. Second, the only link between Mr. Mohammed and a crime of terrorism was that established by Jaweed's testimony. Third, counsel for Mr. Mohammed established that an adequate investigation in 2008 would have provided numerous grounds on which to impeach Jaweed's testimony, including extensive evidence of bias and motive to lie. Because of the considerable infirmities in Mr. Mohammed's representation at trial, the only fair — and procedurally constitutional — result is to sentence Mr. Mohammed without relying on Jaweed's testimony.

Def.'s Mem., ECF No. 225, at 1. The parties' arguments relevant to application of the terrorism enhancement are addressed herein.

II. Legal Standard

A. Resentencing

This Circuit has set out procedures for courts to follow when resentencing a defendant convicted on multiple counts, following the vacating of a single count upon which the defendant was convicted. The District Court "should begin by determining whether that count affected the overall sentence and, if so, should reconsider the original sentence it imposed." *United States v. Blackson*, 709 F.3d 36, 40 (D.C. Cir. 2013). Next, the district court may also consider "such new arguments or new facts as are made newly relevant by the [remanding court's] decision — whether

by the reasoning or by the result." *Id.* (quoting *United States v. Whren*, 111 F.3d 956, 960 (D.C. Cir. 1997)). Finally, the district court may "consider facts that did not exist at the time of the original sentencing[.]" *Id.* The district court does not however generally have authority to consider other objections at resentencing unless it was expressly directed to do so by the remanding court. *Id.*

"Long-standing precedents of the Supreme Court and the D.C. Circuit establish that a sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proved by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction." *United States v. Edwards*, 994 F. Supp. 2d 11, 15-16 (D.C. Cir. 2014) (alterations omitted) (quoting *United States v. Settles*, 530 F. 3d 920, 923 (D.C. Cir. 2008)); *see United States v. Watts,* 519 U.S. 148 (1997) (noting that every Circuit other than the Ninth has held that a sentencing court can consider acquitted conduct that the government proves by a preponderance of the evidence and affirming that standard as appropriate)*; see also United States v. Settles*, 530 F.3d at 923 (noting that uncharged and acquitted conduct can also be considered by the sentencing judge if proven by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction).[4] This applies even when the facts found at sentencing multiply "a defendant's sentence severalfold." *United States v. Jones*, 744 F.3d 1362, 1369-1370 (D.C. Cir. 2014)

---

[4] The Government contends that because it opted not to retry Mr. Mohammed on the narcoterrorism count, the evidence admitted at trial on that charge is now "uncharged conduct," and it may be considered by the Court if proved by a preponderance of the evidence. Govt. Mem., ECF No. 224, at 10; *see United States v. Dorcely*, 454 F.3d 366, 372 (D.C. Cir. 2006) (finding that the court may consider uncharged and acquitted conduct proved by a preponderance of the evidence).

(rejecting the defendants' claim that the court's fact-finding at sentencing, which resulted in "severalfold" increases in their sentences, violated the Sixth Amendment on an as-applied theory of "substantive reasonableness" and concluding that such claims were foreclosed by D.C. Circuit precedent).

Applying the legal standard above, this Court determined previously that the vacating of the narcoterrorism count affects the overall sentence and accordingly, a resentencing date was set. In connection with such resentencing, this Court may consider new arguments and/or facts made newly relevant by the D.C. Circuit's decision as well as facts that did not exist at the time of the original sentencing. The Court may consider also uncharged or acquitted conduct, by the Defendant, if such conduct is proven by a preponderance of the evidence and where the sentence imposed does not exceed the statutory maximum for the crime of conviction.

B. Terrorism Enhancement

Sentencing enhancements need only be proven by a preponderance of the evidence. *See United States v. Lam Kwong-Wah*, 966 F.2d 682, 685-86 (D.C. Cir. 1992), *overruled on other grounds* ("[I]t is now well-settled that factual determinations upon which the judge bases a Guidelines sentence may normally be found by a preponderance of the evidence."); *see also United States v. Vega*, 826 F.3d 514, 538 (D.C. Cir. 2016), *cert. den.*, 137 S. Ct. 1238 (2017) ("The Government must demonstrate that a sentencing enhancement is warranted by a fair preponderance of the evidence, . . . , though that evidence may be circumstantial.") (citations omitted); *United States v. Keleta*, 552 F.3d 861, 866 (D.C. Cir. 2009) ("[T]he government bears the burden of proof in seeking sentencing enhancements under the Guidelines, but the defendant bears the burden in seeking sentence reductions.") Defendant acknowledges that the "D.C. Circuit has to date declined

8

to *require* more than a preponderance at sentencing" but asserts that no "categorical approach" has been adopted; instead, there is a "careful weigh[ing] whether a given case warrants a heightened standard of proof." Def.'s Mem., ECF No. 225, at 14; *see United States v. Long*, 328 F.3d 655, 670-71 (D.C. Cir. 2003) (concluding that an eight-level increase in Defendant's base offense level did not constitute extraordinary circumstances warranting a heightened standard proof). Defendant cites several cases from the Ninth Circuit applying a clear and convincing standard of proof, but those cases are not authoritative as there is contrary law from this Circuit.

Pursuant to United States Sentencing Commission Guidelines Manual, the terrorism enhancement applies "[i]f the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, [and, as a result, the offense level is] increase[d] by 12 levels. . . ." United States Sentencing Guidelines (U.S.S.G.") § 3A1.4 (a).  The Application Notes indicate that a "federal crime of terrorism" is defined consistent with 18 U.S.C. § 2332b (Acts of Terrorism Transcending National Boundaries), whereby a "federal crime of terrorism" is an offense that:

> (A) "is calculated to influence or affect the conduct of government by intimidation or coercion,  or to retaliate against government conduct; and (B) is a violation of (i) section 32 (relating to destruction of aircraft or aircraft facilities) . . . 1114 (relating to killing or attempted killing of officers and employees of the United States). . . 2332 (relating to certain homicides and other violence against United States nationals occurring outside of the United States), . . . 2332a (relating to use of weapons of mass destruction), 2332f (relating to bombing of public places and facilities), . . . 2339A (relating to providing material support to terrorist organizations), . . .

18 U.S.C. Section 2332b (g)(5).

III.  Analysis

The Government contends and the Court adopts the same position that the "majority of Circuits have held that application of the terrorism enhancement is appropriate even where the

defendant's crime of conviction was not, itself, a federal crime of terrorism." Govt. Mem., ECF No. 224, at 11-12; *see, e.g., United States v. Aswan*, 607 F.3d 306, 315 (2d Cir. 2010) (applying the terrorism enhancement to a conviction for conspiracy to commit murder, kidnapping, or maiming outside the United States and explaining that a narrow reading of Section 3A1.4 "would defy common sense," as it would not be applicable to defendants who intended to promote crimes of terrorism that were committed by others); *United States v. Mandhai*, 375 F.3d 1243, 1247-48 (11th Cir. 2004) (applying the enhancement to a conspiracy conviction, explaining that the U.S.S.G. drafters "unambiguously cast a broader net" by including the "intended to promote" prong and not limiting the enhancement only to crimes that "involved" a crime of terrorism); *United States v. Kobito*, 994 F.3d 696, 702-703 (4th Cir. 2021) (reasoning that the "intended to promote" prong applies where a defendant acts with a purpose or goal to bring about a federal crime of terrorism, even if that defendant has not conspired or attempted to commit the crime); *United States v. Haipe*, 769 F.3d 1189, 1193 (D.C. Cir. 2014) (upholding the application of the terrorism enhancement in a hostage taking case).

A. Proceeding under the "Intended to Promote" Prong

When the enhancement is based on the "intended to promote" prong, "several circuits require that the court identify which enumerated crime the defendant intended to promote and support its conclusions by a preponderance of the evidence based upon facts from the record." Govt. Mem., ECF No. 224, at 13; *see, e.g., United States v. Fidse*, 862 F.3d 516, 523 (5th Cir. 2017); *United States v. Arnaout*, 431 F.3d 994, 1002 (7th Cir. 2005); *United States v. Graham*, 275 F.3d 490, 517 (6th Cir. 2001). Furthermore, in addition to showing that the defendant intended to promote one of the enumerated crimes, the government must also prove that the offense being

promoted was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. §2332b(g)(5). This does not require a determination that the defendant was "personally motivated by a desire to influence or affect the conduct of government," but instead, the government must demonstrate that it is more likely than not that defendant "intended to promote a crime calculated to have such an effect . . . whatever his reason for committing [the crime]." *United States v. Abu Khatallah*, 314 F. Supp. 3d 179, 199 (D.D.C. 2018) (citation omitted).

1. Evidence to be Considered by the Court

In the context of Mr. Mohammed's resentencing, the Government argues that:

> The Court should consider the evidence introduced at trial, which demonstrates that the defendant engaged in drug trafficking intending to promote a crime of terrorism. First, setting aside Jaweed's testimony, the defendant's own words support the application of the terrorism enhancement pursuant to U.S.S.G. § 3A1.4. Second, this Court heard Jaweed's testimony, observed him on the stand, and is in the best position to assess the credibility of his testimony. The Court can and should consider Jaweed's testimony for sentencing purposes, specifically to support the application of the terrorism enhancement.

Govt. Mem., ECF No. 224, at 9. Defendant contests any reliance by this Court on Jaweed's testimony and proffers little argument to counter Mr. Mohammed's own words. Below, this Court will discuss Defendant's own recorded statements and Jaweed's statements and testimony, but the Court begins by reviewing its prior findings relevant to the terrorism enhancement.

a. Prior Findings by this Court

During Defendant's initial sentencing, while discussing application of the terrorist enhancement, the Court noted that the jury verdict did not necessarily address whether "Defendant's specific motivation for engaging in this drug trafficking was to influence or affect conduct of government by intimidation or coercion or to retaliate against government conduct or

11

civilian populations." Ex. 11 [December 22, 2008 Sentencing Transcript], ECF No. 224-11, at 13:16-24. Accordingly, the Court looked to recorded statements of the Defendant "where the Defendant indicate[d] specifically his inten[ded] motivation for engaging in the drug trafficking offense," and the Court credited "Jaweed's testimony and his recorded statements and the Defendant's statements[.]" Ex. 11 at 14:15-22. This Court found that Mr. Mohammed specifically intended to use the commission from the drug sale of opium to buy a car, to transport missiles in the car, to be used to attack either the Afghani police station, which would affect the conduct of the Afghan government, or the Jalalabad airport, "[which] would affect conduct of the U.S. Government" as it "involved both U.S. soldiers and foreign military forces that were stationed at that base" and would be in "retaliate[ion] for their presence in Afghanistan." *See* Ex. 11 at 14-16 (internal citations to the record omitted).

The Court concluded that, based upon "Defendant's own statements," he (1) "specifically intend[ed] to use the commission from the drug sales to purchase a car to facilitate attacks against U.S. and foreign forces in Afghanistan and the Afghani government," and (2) "specifically intend[ed] and [was] motivated by the drugs' destructive powers on U.S. civilian populations as a means of violent jihad against Americans who have fighting forces in Afghanistan against the Taliban." *Id.* at 18:2-15; *see Mohammed I*, 693 F.3d at 201-202 & n.3 (concluding that the first basis was not clearly erroneous and declining to address the second).[5]

---

[5] With regard to this Court's finding that Mr. Mohammed wanted to use the car he was going to buy to transport missiles, the D.C. Circuit indicated that this Court "pointed to specific statements in the record — which Mohammed does not dispute he made — from which it drew plausible inferences." *Mohammed I*, 693 F. 3d at 202. "That Mohammed may have intended the car for personal use does not mean he could not also have planned to use the car in the attack, and he identifies no evidence directly contradicting the district court's conclusion that he did." *Id.*

Because Mr. Mohammed's narcoterrorism conviction has been vacated and this case is in a different posture, Defendant challenges this Court's prior interpretation of Defendant's intent. More specifically, Defendant argues that "[t]he factual findings about Mr. Mohammed's intent are heavily —if not completely — reliant on Jaweed's flawed trial testimony and his improper interpretation of the intended meaning of Mr. Mohammed's recorded statements played at trial. Def.'s Mem., ECF No. 225, at 16; *see Mohammed II*, 863 F.3d at 892 ("Jaweed's testimony was the only evidence that linked Mohammed to the Taliban.  It thus provided critical support for the narcoterrorism charge.")

Defendant's argument focuses on this Court's vacating the narcoterrorism charge on the basis that at least one juror may have concluded that – without Jaweed's testimony – there was no clear link between Defendant and the Taliban.  The Court accepts the Government's explanation however that Defendant's plan "to explode bombs and missiles at 'the airport' specifically targeting the American 'infidels'" supports the terrorism enhancement, regardless of whether Defendant had any "Taliban involvement or connection" and "without any reliance upon Jaweed's interpretations at trial."  Govt. Mem., ECF No. 224, at 14.

b. Defendant's Own Words

In the instant case, Defendant was recorded as stating:

> We can place and explode bombs and fire missiles toward the airport. . . The Americans are infidels and Jihad is allowed against them.  If we have to fire [the missiles] toward the airport, we will do it, and if not the airport, wherever they are stationed we will fire at their base too.  I mean, we have to use the mines too.  God willing, we and you will keep doing our Jihad.

Govt. Ex. 2 [Trial Ex. 2A, Transcript of Recorded Statements], ECF No. 224-2, at 4:26-5:30; *see also* Govt. Ex. 8 [Trial Ex. 2C, Transcript of Recorded Statements], ECF No. 224-8, at 7:48 (where

Defendant stated "[t]he infidels need to be killed").  In his Sentencing Memorandum, ECF No. 225, at 17, Defendant challenges the idea that the term "infidels" would be interpreted to mean Americans without the aid of Jaweed's testimony, but as noted above, Defendant characterized the Americans as infidels.

The Government argues and the Court accepts that these recorded admissions demonstrate that Defendant's offense "intended to promote" several crimes, including  destruction of aircraft or aircraft facilities; homicide of U.S. Nationals outside the United States, with intent to retaliate against a government; using weapons of mass destruction against U.S. Nationals outside of the United States; and providing material support or resources (missiles, transportation) knowing or intending that those resources would be used to carry out a federal crime of terrorism.  Govt. Mem., ECF No. 224, at 14-15; *see* 18 U.S.C. §§32, 2332, 2332a, 2339A.

Furthermore, the Government contends and the Court agrees that Defendant's admissions demonstrate that he "intended to commit the crime of providing something of value to any other person or organization that has engaged or engages in terrorist activity or terrorism, in violation of 21 U.S.C. Section 960a." Govt. Mem., ECF No. 224, at 15.  The Government presents two grounds in support of this proposition, first, that upon his own admissions, Defendant was working with two or more individuals to plan a terrorist attack and second, that Defendant himself "was planning to engage in terrorist activity, which in and of itself satisfies the elements of 21 U.S.C. § 960a."[6] Govt. Mem., ECF No. 224, at 15; s*ee Mohammed I*, 693 F.3d 192, 199 (D.C. Cir. 2012)

---

[6] The jury instructions in this case defined a terrorist organization as "a group of two or more individuals whether organized or not, which engages in or has a subgroup which engages in terrorist activity."  Govt. Ex. 9 [Jury Instructions] at 107.

14

("Mohammed need not have planned for his drug proceeds to fund terrorist ends.  It is sufficient that the proceeds went to a terrorist – him.")

Finally, pursuant to U.S.S.G. § 3A1.4, and 18 U.S.C. § 2332b(g)(5), which define a federal crime of terrorism, the Government must establish also that the defendant's intent in promoting any of the aforementioned enumerated offenses was to influence or affect the conduct of government or to retaliate against government conduct.  In this case, Defendant stated that he intended to "get out the infidels from [Afghanistan]" and that "[t]he infidels need[ed] to be killed" so that the country could be "take[n] back."  Govt. Ex. 2 at 10:73-11:80; Ex. 8 at 7:48-50.

Instead of addressing the Government's reference to the Defendant's own words, Defendant appears to conflate the vacating of the narcoterrorism conviction with a proposed wholesale disregard by this Court of Defendant's statements because of Jaweed's role in interpreting them.  The Court notes however that the issue of the possible prejudicial effect of Jaweed's unrebutted testimony has been resolved in the context of the vacating of the narcoterrorism conviction – which was based on a more stringent standard applied by the jury than the preponderance of the evidence standard applied herein.  Even if this Court were to disregard Jaweed's testimony, that leaves standing Defendant's own words, which make it clear to this Court that Mr. Mohammed's drug trafficking offense was intended to promote a federal crime of terrorism (*e.g.*, bombing of public places, destruction of aircraft facilities, and attempted killing of officers of the United States or violence against nationals of the United States outside the United States).  Furthermore, Defendant's own words indicate that his offense was calculated to influence or affect the conduct or retaliate against government conduct.

15

c. Jaweed's Statements[7]

This Court need not rely solely on Defendant's words, as it may also look to Jaweed's testimony, as observed by this Court during trial. *See Mohammed I,* 693 F. 3d at 202 (acknowledging that the district court has a "superior vantage point to make credibility determinations and glean 'insights not conveyed by the record.'") (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).  While this Court vacated the narcoterrorism conviction on grounds of ineffective assistance of counsel insofar as Jaweed's testimony should have been subject to impeachment, this does not change the fact that the Court found Jaweed to be a credible witness.

Defendant argues that, in *United States v. Abu Khatallah*, a court in this district held that it could not credit the testimony of an unreliable witness who provided inculpatory statements about the defendant's connection to terrorism.  *United States v. Abu Khatallah*, 314 F. Supp. 3d 179, 198-99 (D.D.C. 2018). But because that testimony "[did] not stand alone as evidence of [the defendant's] intentions" and there was additional evidence that spoke to the defendant's terrorist connections, including his "choice of target for the attack," the court applied the enhancement.  *Id.* Defendant asserts accurately that Jaweed's evidence in this matter is the "sole evidence connecting Mr. Mohammed to the Taliban," Def.'s Mem., ECF No. 225, at 17, *see Mohammed II*, 863 F. 3d at 892 (observing that "Jaweed's testimony provided the only unambiguous link between

---

[7] The Government notes that "[i]nformation from Haji Latif [that after he testified, the Taliban offered his friends and associates money to turn him over to them] is sufficient to support the conclusion that the defendant was acting in concert with the Taliban."  Govt. Mem., ECF No. 224, at 16.  The Government notes further that Jaweed was "killed by the defendant's sympathizers."  Defendant argues that this information is hearsay that should not be considered by the Court.  Def.'s Response, ECF No. 226, at 3-4.  The Court does not rely on this information in making its determination herein.

Mohammed and the Taliban").  But, it is not the sole evidence connecting Defendant to terrorism. Here, there is evidence of Mr. Mohammed's intentions both through his own words, as discussed above, and through the testimony of Jaweed.  *See, e.g.,* Ex. 2 at 4:25-5:28 (where Jaweed indicates that the Taliban told him to "work together with Khan Mohammed" and Defendant states that "[w]e can place and explode bombs and fire missiles at the airport . . . this will be our Jihad").

This Court previously found that Defendant intended to use drug proceeds to purchase a car to transport missiles to fire at the airport.  This was a plan to engage in terrorist activity, and Jaweed's testimony indicates that the plan was set in motion by the Taliban.  The Government argues that "the Court can, and should, base its sentencing decision on its own factual findings made at sentencing."  Govt. Mem., ECF No. 224, at 18, *see Abu Khatallah*, 314 F. Supp. 3d 179, 197 (D.D.C. 2018) (rejecting the defendant's argument that the application of the terrorism enhancement must be supported by a jury finding and stating "[s]o long as a defendant's sentence is within the range prescribed by statute, the use of judge-found facts to arrive at the sentence does not implicate the Sixth Amendment . . . [n]or does that practice violate the Due Process Clause of the Fifth Amendment." (internal quotation marks omitted) (citing *United States v. Jones*, 744 F3d 1362, 1370 (D.C. Cir. 2014) and *United States v. Dorcely*, 454 F, 3d 366, 372-373 (D.C. Cir. 2006)).  This Circuit has recognized that a trial judge makes credibility determinations and gives "the greatest deference" to such findings on a review for clear error.  *United States v. Delaney*, 651 F.3d 15, 18 (D.C. Cir. 2011).

In the instant case, Jaweed's testimony provides additional context as to the Defendant's own statements, bolstering the evidence against Mr. Mohammed that his plan to fire missiles at the Jalalabad airport was an attempt to influence or affect the conduct of government and/or to

17

retaliate against government conduct.  The Court has noted previously its "impression of Jaweed as a credible witness at trial."  December 9, 2021 Mem. Op., ECF No. 209, at 13; *see United States v. Bell*, 795 F.3d 88, 106 (D.C. Cir. 2015) (acknowledging that a sentencing judge may credit parts of a witness's testimony, even where evidence of a witness's "disreputable character" generally undercuts his credibility); *United States v. Toms*, 136 F.3d 176, 187 (D.C. Cir. 1998) (holding that despite evidence that a cooperator who testified at trial had incentives to cooperate, had some inconsistencies in his testimony, and had lied in other contexts, the appellate court was not in a position to decide whether he was generally believable but rather, credibility could be assessed by the factfinder judging witness demeanor on the stand).  Accordingly, based upon the entirety of the record in this case, the Court concludes that Defendant's drug trafficking offense was done with the intent to promote several crimes that fall within the definition of a federal crime of terrorism, based on Defendant's statements alone and as bolstered by Jaweed's statements and testimony.

d. The 18 U.S.C. Section 3553(a) Factors

In determining a sentence, the Court must consider, *inter alia*, the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (2) afford adequate deterrence; (3) protect the public from future crimes of the defendant; and (4) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  *See* 18 U.S.C. § 3553(a). As previously noted, the advisory Guideline range for Mr. Mohammed's drug trafficking offense is 97 to 121 months without the terrorism enhancement and 360 months to life, with the terrorism enhancement.

i. Nature and Circumstances of the Offense and Need for Sentence to Reflect Severity of the Offense

With regard to the nature and circumstances of the offense, the Defendant asserts that his conduct favors a sentence of 97 to 121 months because [a]t worst, Mr. Mohammed stands convicted on a drug-trafficking charge and has made violent statements." Def.'s Mem., ECF No. 225, at 19. Defendant contends further that "[t]he only reason Mr. Mohammed is before this Court is because a DEA sting operation recorded a conversation between Mr. Mohammed and Jawed discussing the drugs potentially being imported into the United States." *Id.* This Court notes that Defendant's characterization of his criminal activity discounts the quantity and value of the drugs involved and minimizes almost to the point of the absurd the extensiveness and violent nature of Defendant's statements relating to plans to engage in terrorist activity by using missiles at an airport where service members and others were stationed.[8] Defendant identified Americans as infidels (Ex. 2); indicated an intent to use mines and fire missiles towards the airport or "wherever they're stationed" (Ex. 2); and reiterates that the infidels need to be killed (Exs. 2 & 8). Mr. Mohammed conducted meetings with Jaweed to plan an attack; namely, he said he had bullets and "rounds of rockets" as well as mines (Ex. 2 & 12 [Trial Ex. 2B, ECF No. 224-12]); he noted he had a "source" for a warhead (Ex. 12) and that he had buried a big mortar or was going to bury it at the police station (Ex. 12); and further, that he had weapons and was trying to get more weapons (Ex. 2). In light of the record in this case, this Court finds that the "nature and circumstances of

---

[8] Defendant equates his statements to those being made by other Afghanis who were aggrieved by the American military after the military caused a deadly traffic accident and who engaged in anti-American rioting, *see* Def. Mem., ECF No. 225, at 19-20, but Defendant's statements and drug trafficking activities did not occur as an isolated event.

the offense" disfavors Defendant.

With regard to the need for the sentence to reflect the severity of the offense, Defendant indicates that he has "served approximately 175 months, without consideration for any good conduct time earned while in the BOP," and this time served is "nearly 1.5 times the top of the guideline range for the drug-trafficking offense (97 to 121 months) [.]" Def.'s Mem., ECF No. 225, at 21 (internal citation omitted). Defendant contends further that life imprisonment sentences are "rare in the federal criminal justice system." Def.'s Mem., ECF No. 226, at 6 (citation omitted). Defendant indicates also that imposition of a shorter sentence avoids "sentence disparities among defendant with similar records who have been found guilty of similar conduct," noting that "the median sentence in this District for drug trafficking was 25 months in 2021, and the mean sentence was 53 months." Def.'s Mem., ECF No. 225, at 22 (citations omitted). The Court finds that Defendant's focus solely on a generic drug trafficking charge provides no meaningful comparison of his drug trafficking (based on the amount and type of drugs and date of his conviction/sentence) with other defendants who have been similarly convicted of drug trafficking. Nor does Defendant address the imposition of a terrorism enhancement.

The Government highlights the number of civilian casualties in Afghanistan in 2006, when Defendant was there and the fact that Afghanistan was the "single greatest producer of opium in the world at the time of defendant's criminal conduct." Govt. Mem., ECF No. 224, at 21-22. During Defendant's original sentencing, this Court noted that Defendant was not a small time drug trafficker because of the significant amount and street value of the heroin he was trafficking, and the Court discussed the significant toll such trafficking takes on United States' communities. Ex. 11, at 50-52. Besides threatening the lives of Americans in the United States, it reflects that

Defendant's conduct threatened the lives of American service members, and foreign service members, as well as Drug Enforcement Agency agents stationed at Jalalabad Airport. Accordingly, the "need for the sentence to reflect the severity of the offense" factor weighs against Defendant's argument for a shorter sentence.

ii. History and Characteristics of the Defendant

Defendant asserts that this factor favors Mr. Mohammed, as he would "quietly reintegrate into Afghan society" and because he was a former farmer, without a criminal history, and is married with seven children as well as being a leader in his local community. Def.'s Mem., ECF No. 225, at 20 (citations to Affidavits by his fellow villagers omitted). Furthermore, Defendant notes that he has used his time productively while incarcerated insofar as he has learned English as a Second Language (3,152 hours of study) and completed 131 hours of other coursework, and he has no history of violence while incarcerated. *Id.* at 21.

In its Memorandum, the Government counters Defendant's assertion that he has no criminal history by highlighting Defendant's previous experience with "opium and heroin trafficking" as demonstrated by "his offers and promises to obtain, at various times, "50 seyrs" (kilograms) [ ] , a "thousand seyrs" [ ], or '[w]hatever quantity you want, we have the source, as much as you need.'" Govt. Mem., ECF No. 224, at 6 (referencing Ex. 3 [Trial Ex. 2E, Transcript of Recorded Statements] at 6:39; Ex. 4 [Trial Ex. 2D, Transcript of Recorded Statements] at 20:208; Ex. 5 [Trial Ex. 2H, Transcript of Recorded Statements] at 9:70). Accordingly, because of Defendant's familiarity and experience with large quantities of drugs, the Court finds that this factor stands in equipoise.

iii.  Need for Adequate Deterrence and Protection of the Public

The Government argues that deterrence is warranted here because the Taliban to date "has historically played a significant role in the trafficking of illegal substances to the United States and throughout the world."  Govt. Mem., ECF No. 224, at 23. The Court credits the Government's references to Agent Follis's unrebutted testimony regarding the Taliban's role in the opium/heroin drug trade.  *Id.*  The Government concludes and the Court agrees that the "need for deterrence against drug traffickers, especially those who fund terrorism, is as real as ever" and imposing a life sentence will convey that "the punishment for sending narcotics to the United States from abroad, and using the proceeds from drug trafficking to promote terrorist activity, is significant."  Govt. Mem., ECF No. 224, at 24.  Furthermore, with regard to the protection of the public, the Defendant's own words indicate that he was "intent on causing as much harm to Americans and others as possible." *Id.*  Additionally, the Government alleges and the Court accepts that Defendant "purposefully use[ed] his position as a village elder and a Non-Governmental Organization (NGO) employee as a cover to allay suspicion."  *Id.; see* Ex. 12 at 8:66 (Defendant stating "[i]t is good for my credibility to be with NGO, I mean not to be suspected.")

Defendant contends that because Mr. Mohammed is "an excludable alien subject to immediate deportation," he will "not be remaining in the United States or ever returning" once his sentence has been served.  Def.'s Mem., ECF No. 225, at 21.  Defendant downplays the danger to Americans based on the fact that the Taliban is now in power in Afghanistan (as opposed to the previous government that Defendant allegedly opposed) and the "United States and its military no longer have any presence in the country."  *Id.*  Defendant concludes that there is "little risk that Mr. Mohammed's life in Afghanistan will impact the United States."  Def.'s Mem., ECF No. 225,

22

at 22.  In contrast, the Government argues that the recent rise of the Taliban to power and its substantial involvement in the drug trade means that there is a "significant risk that the defendant will have the opportunity and the support to resume his criminal conduct upon return to Afghanistan."  Govt. Mem., ECF No. 224, at 25.  Taking into account the Taliban's role in Afghanistan and the flourishing drug trade there, the Court finds that there is a need to protect the public and provide adequate deterrence, and these factors weigh against Defendant. In sum, the Court finds that the balance of Section 3553(a) factors weigh in favor of the enhancement being applied.

IV. CONCLUSION

Pursuant to U.S.S.G., the terrorism enhancement applies "[i]f the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, [and, as a result, the offense level is] increase[d] by 12 levels. . . ."  United States Sentencing Guidelines (U.S.S.G.") § 3A1.4 (a).  Proceeding under the "intended to promote" prong,  the Government has identified several crimes (*e.g.*, bombing of public places, destruction of aircraft facilities, and attempted killing of officers of the United States or violence against nationals of the United States outside the United States) that Mr. Mohammed intended to promote through engaging in drug trafficking and using drug commissions to buy a car to transport missiles to attack the Jalalabad airport, where U.S. soldiers and others were stationed.  Mr. Mohammed's offense was calculated to influence or affect the conduct or retaliate against government conduct, demonstrated in part by his choice of target (government property where foreign service members were stationed) and his statements about Jihad against Americans and getting infidels out of Afghanistan.  This Court's conclusions are supported by a preponderance of the evidence based solely upon Defendant's own statements, and

they are strengthened by the testimony and statements made by Jaweed, who was deemed by this Court to be a credible witness. Furthermore, the balance of the Section 3553(a) factors — nature and circumstances of the offense, need for a sentence to reflect the severity of the offense, and need for adequate deterrence and protection of the public — weigh in favor of the enhancement being applied.  Accordingly, it is this 18th day of July 2022,

ORDERED that the Court finds that the terrorism enhancement is both applicable and appropriate.


_____/s/_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE